## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RENEE ROBINSON, RICHARD MYERS, ANNETTE FIRST, CASEY GADDY, STEVEN GOUISIE, ROBERT PLUNKETT, FRANCOIS STEIGER, James Ulrich, GABRIEL VOILES, JOHN WAUDBY, and LAKESHA WELLS, on behalf of themselves and all others similarly situated, | Case No. |
| | |
| Plaintiffs, | **CLASS ACTION COMPLAINT**<br>**Demand for Jury Trial** |
| | |
| v. | |
| | |
| HP, INC., a Delaware corporation, | |
| | |
| Defendant. | |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

JURISDICTION AND VENUE ......................................................................................... 1

PARTIES ............................................................................................................................ 2

FACTUAL ALLEGATIONS .............................................................................................. 5

    Restrictions ..................................................................................................................... 5

    End User License Agreement ....................................................................................... 10

    Warranty ....................................................................................................................... 11

    The Aftermarket for Replacement Ink Cartridges ...................................................... 11

CLASS ACTION ALLEGATIONS .................................................................................. 12

    Class Definition ........................................................................................................... 12

    Factual Allegations Supporting Class Treatment ........................................................ 14

    Notice of Claims to HP Would be Futile and is Therefore Excused ........................... 16

COUNT I .......................................................................................................................... 16

    COMPUTER FRAUD AND ABUSE ACT .................................................................. 16

COUNT II ......................................................................................................................... 17

    SECTION 2 OF THE SHERMAN ACT, 15 U.S.C. § 2 .............................................. 17

COUNT III ........................................................................................................................ 19

    SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1 .............................................. 19

COUNT IV ........................................................................................................................ 20

    UNJUST ENRICHMENT ............................................................................................ 20

COUNT V .......................................................................................................................... 21

    ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT ................ 21

COUNT VI ........................................................................................................................ 22

    ALABAMA CODE §§ 8–10–1 ET SEQ., § 6-5-60 ................................................... 22

COUNT VII ....................................................................................................................... 24

    ALASKA STAT. §§ 45.50.471 ET SEQ. ................................................................... 24

COUNT VIII ..................................................................................................................... 25

    ARIZONA UNIFORM STATE ANTITRUST ACT .................................................... 25

COUNT IX ........................................................................................................................ 26

    ARIZONA CONSUMER FRAUD ACT ..................................................................... 26

COUNT X .......................................................................................................................... 26

i

ARKANSAS DECEPTIVE TRADE PRACTICES ACT ............................................................. 26

COUNT XI ......................................................................................................................... 27

CALIFORNIA'S CARTWRIGHT ACT ...................................................................... 27

COUNT XII ........................................................................................................................ 29

CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ...................................... 29

COUNT XIII ...................................................................................................................... 30

CALIFORNIA'S UNFAIR COMPETITION LAW .................................................. 30

COUNT XIV ...................................................................................................................... 31

COLORADO ANTITRUST ACT .............................................................................. 31

COUNT XV ....................................................................................................................... 32

COLORADO CONSUMER PROTECTION ACT .................................................... 32

COUNT XVI ...................................................................................................................... 33

CONNECTICUT ANTITRUST ACT ....................................................................... 33

COUNT XVII ..................................................................................................................... 34

CONNECTICUT UNFAIR TRADE PRACTICES ACT .......................................... 34

COUNT XVIII .................................................................................................................... 35

DELAWARE CONSUMER FRAUD ACT ............................................................... 35

COUNT XIX ...................................................................................................................... 36

DISTRICT OF COLUMBIA ANTITRUST ACT ..................................................... 36

COUNT XX ....................................................................................................................... 37

DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT .............. 37

COUNT XXI ...................................................................................................................... 38

FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ..................... 38

COUNT XXII ..................................................................................................................... 39

GEORGIA FAIR BUSINESS PRACTICES ACT .................................................... 39

COUNT XXIII .................................................................................................................... 40

HAWAII ANTITRUST ACT ..................................................................................... 40

COUNT XXIV .................................................................................................................... 41

IDAHO CONSUMER PROTECTION ACT .............................................................. 41

COUNT XXV ..................................................................................................................... 42

INDIANA DECEPTIVE CONSUMER SALES ACT ............................................... 42

COUNT XXVI .................................................................................................................... 44

IOWA COMPETITION LAW ................................................................................... 44

COUNT XXVII ........................................................................................................... 45

   IOWA CONSUMER FRAUDS ACT .................................................................. 45

COUNT XXVIII ......................................................................................................... 46

   KANSAS RESTRAINT OF TRADE ACT ......................................................... 46

COUNT XXIX ........................................................................................................... 47

   KANSAS CONSUMER PROTECTION ACT...................................................... 47

COUNT XXX.............................................................................................................. 48

   KENTUCKY CONSUMER PROTECTION ACT ............................................... 48

COUNT XXXI ............................................................................................................ 50

   LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT...... 50

COUNT XXXII ........................................................................................................... 51

   MAINE MONOPOLIES AND PROFITEERING LAW ..................................... 51

COUNT XXXIII .......................................................................................................... 52

   MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT ......................... 52

COUNT XXXIV........................................................................................................... 53

   MARYLAND ANTITRUST ACT........................................................................ 53

COUNT XXXV............................................................................................................ 54

   MARYLAND CONSUMER PROTECTION ACT .............................................. 54

COUNT XXXVI ......................................................................................................... 55

   MASSACHUSETTS CONSUMER PROTECTION LAW ................................. 55

COUNT XXXVII ....................................................................................................... 57

   MICHIGAN CONSUMER PROTECTION ACT ................................................ 57

COUNT XXXVIII ...................................................................................................... 58

   MICHIGAN ANTITRUST REFORM ACT ........................................................ 58

COUNT XXXIX........................................................................................................... 59

   MINNESOTA ANTITRUST LAW ..................................................................... 59

COUNT XL.................................................................................................................. 60

   MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT ................. 60

COUNT XLI................................................................................................................ 61

   MINNESOTA CONSUMER FRAUD ACT ........................................................ 61

COUNT XLII .............................................................................................................. 63

   MISSISSIPPI CONSUMER PROTECTION ACT .............................................. 63

COUNT XLIII ............................................................................................................. 63

MISSOURI MERCHANDISING PRACTICES ACT ................................................................ 64

COUNT XLIV ................................................................................................................. 65

MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT ....... 65

COUNT XLV ................................................................................................................. 66

NEBRASKA JUNKIN ACT ............................................................................................ 66

COUNT XLVI ................................................................................................................. 67

NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT .................................... 67

COUNT XLVII ................................................................................................................. 69

NEVADA UNFAIR TRADE PRACTICES ACT ............................................................... 69

COUNT XLVIII ................................................................................................................. 70

NEW HAMPSHIRE ANTITRUST LAW ......................................................................... 70

COUNT XLIX ................................................................................................................. 71

NEW HAMPSHIRE CONSUMER PROTECTION ACT .................................................... 71

COUNT L ................................................................................................................. 72

NEW JERSEY CONSUMER FRAUD ACT ..................................................................... 72

COUNT LI ................................................................................................................. 73

NEW MEXICO ANTITRUST ACT ................................................................................. 73

COUNT LII ................................................................................................................. 74

NEW MEXICO UNFAIR TRADE PRACTICES ACT ....................................................... 74

COUNT LIII ................................................................................................................. 75

NEW YORK GEN. BUS. L. §§ 340 ET SEQ. ................................................................. 76

COUNT LIV ................................................................................................................. 76

NEW YORK GEN. BUS. L. §§ 349 ET SEQ. ................................................................. 77

COUNT LV ................................................................................................................. 78

NORTH CAROLINA ANTITRUST ACT ......................................................................... 78

COUNT LVI ................................................................................................................. 79

NORTH DAKOTA UNIFORM STATE ANTITRUST ACT ................................................ 79

COUNT LVII ................................................................................................................. 80

NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES ACT ............. 80

COUNT LVIII ................................................................................................................. 81

OHIO UNIFORM DECEPTIVE TRADE PRACTICES ACT .............................................. 81

COUNT LIX ................................................................................................................. 82

OKLAHOMA CONSUMER PROTECTION ACT ............................................................. 82

COUNT LX...................................................................................................................... 84

    OKLAHOMA DECEPTIVE TRADE PRACTICES ACT ..................................... 84

COUNT LXI.................................................................................................................... 85

    OREGON UNFAIR TRADE PRACTICES LAW ................................................... 85

COUNT LXII .................................................................................................................. 87

    OREGON ANTITRUST LAW ................................................................................. 87

COUNT LXIII ................................................................................................................. 88

    PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ...................................................................................................... 88

COUNT LXIV ................................................................................................................. 90

    RHODE ISLAND ANTITRUST ACT ..................................................................... 90

COUNT LXV .................................................................................................................. 91

    RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT ...................................................................................................... 91

COUNT LXVI ................................................................................................................. 92

    SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT ................................. 92

COUNT LXVIII............................................................................................................... 93

    SOUTH DAKOTA ANTITRUST LAW ................................................................. 93

COUNT LXIX ................................................................................................................. 94

    SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION STATUTE ............................................................................................... 94

COUNT LXX .................................................................................................................. 95

    TENNESSEE CODE §§ 47-25-101 ET SEQ. ......................................................... 95

COUNT LXXI ................................................................................................................. 96

    TENNESSEE CODE §§ 47-18-101 ET SEQ. ......................................................... 96

COUNT LXXII................................................................................................................ 97

    TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW ...... 97

COUNT LXXIII............................................................................................................... 99

    UTAH CONSUMER SALES PRACTICES ACT UTAH CODE §§ 13-11-1 ET SEQ............ 99

COUNT LXXIV .............................................................................................................. 100

    VERMONT CONSUMER PROTECTION ACT ................................................... 100

COUNT LXXV ............................................................................................................... 101

    VIRGINIA CONSUMER PROTECTION ACT...................................................... 101

COUNT LXXVI............................................................................................................... 102

WASHINGTON CONSUMER PROTECTION ACT .............................................................. 102

COUNT LXXVII .................................................................................................................. 104

    WEST VIRGINIA ANTITRUST ACT .................................................................................. 104

COUNT LXXVIII ................................................................................................................. 105

    WISCONSIN DECEPTIVE TRADE PRACTICES ACT ..................................................... 105

COUNT LXXIX ................................................................................................................... 106

    WISCONSIN ANTITRUST LAW ....................................................................................... 106

COUNT LXXX .................................................................................................................... 107

    WYOMING CONSUMER PROTECTION ACT .................................................................. 107

RELIEF DEMANDED .......................................................................................................... 109

JURY TRIAL DEMANDED .................................................................................................. 110

Plaintiffs Renee Robinson, Richard Myers, Annette First, Casey Gaddy, Steven Gousie, Robert Plunkett, Francois Steiger, James Ulrich, Gabriel Voiles, John Waudby, and Lakesha Wells ("Plaintiffs"), acting on behalf of themselves and all other similarly situated persons ("Class Members"), bring this action for damages and equitable relief against HP, Inc., d/b/a HP Computing and Printing, Inc.

## INTRODUCTION

1.      This is a class action brought against HP, Inc., for requiring consumers who had purchased certain brands of printers to use only HP-branded replacement ink cartridges, rather than purchasing ink replacements from its competitors. HP accomplished this through firmware updates it distributed electronically to all registered owners of the printers at issue in this case in late 2022 and early 2023, which effectively disabled the printer if the user installed a replacement ink cartridge that was not HP-branded. In the same time period, HP raised prices on the HP-branded replacement ink cartridges. In effect, HP used the software update to create a monopoly in the aftermarket for replacement cartridges, permitting it to raise prices without fear of being undercut by competitors.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from Defendant HP, Inc.

3.      This Court also has jurisdiction over this action under 28 U.S.C. § 1331, and 15 U.S.C. § 4, as this action arises under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, and 2.

1

This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1267 over the claims brought under state law.

4.      HP has sufficient minimum contacts with this District to be subject to this Court's personal jurisdiction. HP intentionally avails itself of the markets within this District and this state through the promotion, sale, marketing, and distribution of their printers, software and software updates and replacement cartridges, which renders this Court's exercise of jurisdiction necessary and proper. It also has an office at 100 North Riverside Plaza, Suite 1525, Chicago IL 60606.

5.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this case occurred in this district. Plaintiffs Robinson and Myers reside in this District and purchased HP printers, and received firmware updates directly from HP that were delivered to her printer located in Chicago. Thousands of other Class Members also reside in and received firmware and software updates in this District.

## PARTIES

6.      Plaintiff Renee Robinson is a citizen of Illinois residing in Chicago in this district. She purchased an HP Envy Inspire 7255 printer in 2021 that received software and firmware updates directly from HP. She purchased ink from a non-HP source in 2022, at which point the printer stopped working. When she switched to an HP-branded replacement ink cartridge, the printer functioned again.

7.      Plaintiff Richard Myers is a citizen of Illinois residing in Elgin in this district. He purchased an HP Office Jet Pro 6978 in March 2022 that received software and firmware updates directly from HP. He purchased a non-HP branded replacement ink cartridge in November 2023, at which point the printer stopped working. When he switched to an HP-branded replacement ink cartridge, the printer functioned again.

8.     Plaintiff Annette First is a citizen of Missouri residing in St. Louis. She purchased an Inkjet 6500 Printer in 2020 that received software and firmware updates directly from HP. First purchased ink for use in this printer in November 2022. The printer received a software update directly from HP. After that date, the printer no longer functioned until the ink cartridge was replaced with an otherwise identical cartridge branded by HP.

9.     Plaintiff Casey Gaddy is a citizen of Pennsylvania residing in Philadelphia. He purchased OfficeJet 6500 and OfficeJet 8022 Printers in 2021 and 2022 for use in his office that received software and firmware updates directly from HP. Leaver purchased replacement ink cartridges for use in these printers in 2022. The printers no longer functioned until the ink cartridge was replaced with an otherwise identical cartridge branded by HP. Plaintiff Leaver directly purchased his HP-branded ink from HP, through its Instant Ink Program, beginning in June 2021.

10.     Plaintiff Steven Gousie is a citizen of Massachusetts residing in Rehobeth. He purchased an Inkjet 8020 Printer in April 2022 which received software and firmware updates directly from HP. Gousie purchased a replacement ink cartridge from a non-HP source for use in this printer in 2023. The printer worked normally for a few weeks, but then stopped functioning with the replacement ink cartridge. Gousie replaced it with an HP-branded replacement ink cartridge, and the printer worked.

11.     Plaintiff Robert Plunkett is a citizen of Michigan residing in Grand Ledge. He purchased an Office Jet Pro 6968 Printer in October 2021 that received software and firmware updates directly from HP. Plunkett purchased replacement ink cartridges from a non-HP source for use in this printer.

12.     Plaintiff Francois Steiger is a citizen of Massachusetts residing in Cambridge. He purchased an Office Jet Pro 0835 Printer in 2019. Steiger purchased ink from a non-HP source for

use in this printer in 2022. The printer received software and firmware updates directly from HP. In late 2022, the printer no longer functioned until the ink cartridge was replaced with an otherwise identical cartridge branded by HP. Plaintiff Steiger purchased HP-branded ink directly from HP, through its Instant Ink program.

13.     Plaintiff James Ulrich is a citizen of New Jersey residing in Beach Haven. He purchased an Office Jet Pro Inkjet 6968 Printer in July 2016. The printer received software and firmware updates directly from HP. Ulrich purchased a replacement ink cartridge from a non-HP source for use in this printer in 2020. After receiving firmware updates, the printer no longer functioned until the ink cartridge was replaced with an otherwise identical cartridge branded by HP.

14.     Plaintiff Gariel Voiles is a citizen of New York residing in the Bronx. He purchased an HP Desk Jet 8250 All-In-One Printer in July 2016. The printer received software and firmware updates directly from HP. Voiles purchased a replacement ink cartridge from a non-HP source for use in this printer in May 2023. The printer no longer functioned until the ink cartridge was replaced with an otherwise identical cartridge branded by HP.

15.     Plaintiff John Waudby is a citizen of Nevada residing in Las Vegas. He purchased an Office Jet 7740 Printer in March 2023. The printer received a software update directly from HP. Waudby purchased a replacement ink cartridge from a non-HP source for use in this printer, most recently on July 7, 2023. The printer no longer functioned until the ink cartridge was replaced with an otherwise identical cartridge branded by HP.

16.     Plaintiff Lakesha Wells is a citizen of Tennessee residing in Memphis. She purchased an Office Jet Pro 8028 Printer in 2020 that received software and firmware updates directly from HP. Wells purchased an ink cartridge from a non-HP source for use in this printer in

4

September 2022. The printer stopped functioning until the ink cartridge was replaced with an otherwise identical cartridge branded by HP.

17.     Defendant HP is a global Fortune 500 company and one of the world's largest manufacturers and sellers of computers. It is incorporated in the State of Delaware and its principal place of business is located at 1501 Page Mill Road in Palo Alto, California 94304.

## FACTUAL ALLEGATIONS

### Restrictions

18.     HP derives substantial profits from the sale of HP printer ink cartridges. Color printers typically require four cartridges, and a full HP-branded replacement set may cost of $100 for many models, while competitors' cartridges may cost half as much.[1] The costs of ink for the All-in-One Printers is not trivial or fleeting as "[t]he industry figured out years ago that once people buy a printer they are committed to it, so you can sell the printer at or below cost knowing they will buy the cartridges."[2]

---

[1] https://www.amazon.com/HP-N9K27AN-140-Original-Cartridges/dp/B01AV8PPOQ/?_encoding=UTF8&pd_rd_w=OSWeS&content-id=amzn1.sym.35cab78c-35e3-4fc1-aab0-27eaa6c86063%3Aamzn1.symc.e5c80209-769f-4ade-a325-2eaec14b8e0e&pf_rd_p=35cab78c-35e3-4fc1-aab0-27eaa6c86063&pf_rd_r=CA3HMVH9WGSJYNP5WVC1&pd_rd_wg=M9Fgt&pd_rd_r=f39cbae9-8498-4388-a7c8-849c17e1a42f&ref_=pd_gw_ci_mcx_mr_hp_atf_m&th=1 (last visited December 11, 2023).

1 Charles LeCompte as quoted in Printer ink: Tired of feeding the cash cow?, Lamont Wood, COMPUTERWORLD (Mar 28, 2012 6:00 am PST), https://www.computerworld.com/article/2503134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Dec. 3, 2021); see also Jack Houston and Irene Anna Kim, Why printer ink is so expensive, INSIDER (Updated Mar 2, 2021, 12:09 PM) https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 ("companies do everything they can to keep you buying official ink cartridges") (last visited on Dec. 6, 2021).

19.     HP currently holds about 34.7% of the global market share for printers.[3] Based on information derived from sources no longer publicly available without a subscription, Plaintiffs allege that HP's share of the U.S. market for printers is roughly equivalent to its global market share.

20.     HP had a long history of using software to prevent owners of its printers from using competitors' ink cartridges. In the 2010-2105 time period, HP used software it called "Dynamic Security" that functionally prevented the use on any non-HP replacement ink cartridge in some printer models. In 2019, it entered into a class action settlement in which it paid $1.5 million to a class of aggrieved consumers,and agreed not to use "Dynamic Security" on specified models of printers in the future.[4]

21.     Shortly after that settlement, HP settled similar claims for its practices in Europe: "HP printer owners forced to use HP ink and toner cartridges in Europe will receive compensation from the vendor for not adequately informing them about the limitations of the devices they bought. The problem stems from the introduction of a system called 'Dynamic Security,' which HP promoted to its customers as a way to upgrade their experience and maintain the integrity of its printing systems."[5]

---

[3]     https://www.statista.com/statistics/269057/global-hardcopy-peripherals-market-share-since-2009-by-vendor/#:~:text=In%20the%20fourth%20quarter%20of,the%20fourth%20quarter%20of%202022 (last visited Nov. 11, 2023).

[4] Settlement Agreement, *In re HP Printer Firmware Update Litig.*, N.D. Cal. 5:16-cv-05820-EJD-SVK, Dkt. No. 110-2, filed Sept. 18, 2018, at § 2.3 ("HP has released firmware that disables Dynamic Security for the Class Printers. HP will not at any time take any action to employ Dynamic Security on the Class Printers, including by releasing or otherwise making available firmware that enables Dynamic Security.").

[5] https://www.bleepingcomputer.com/news/hardware/hp-will-pay-customers-for-blocking-non-hp-ink-cartridges-in-eu/ (last visited Nov. 11, 2023).

22.    Online sources also reported that these "Dynamic Security" firmware updates led to HP being fined by competition authorities in Italy. The Italian Competition Authority found:

> HP has failed to adequately inform consumers - at the time of purchase - about the presence of this relevant and significant limitation [Dynamic Security], leading them to believe that they need replacing non-original ink/toner cartridges due to shortages or defects thereof and hence to use only original HP cartridges.
>
> These limitations have been renewed and modified through subsequent printer firmware updates, proposed by HP to consumers, once again without properly informing them of the consequences of these updates, neither at the time of their dissemination, nor on its website, nor at the when information was requested to the assistance centres.
>
> The Authority also found that, without informing consumers, HP records the consumption data relating to the cartridges employed, either original or not, through the firmware present on many printers: these data are then used both to create a database useful for formulating its commercial strategies and to deny assistance to printers that have used non-original cartridges, thus hindering the provision of the legal guarantee of conformity.[6]

23.    Nonetheless, in late 2022, HP reinstated a feature that had the same functionality as in many of its printer models. The purpose was the same as in the earlier time period: To force all purchasers of HP printers to also purchase only HP-branded ink, effectively monopolizing the aftermarket for replacement ink cartridges and permitting HP to charge supracompetitive prices.

24.    HP utilizes the website https://www.hp.com/us-en/home.html and its related webpages (collectively, the "HP Site"), as well as third party resellers, to market and to sell personal computers, printers and related products directly to consumers throughout the United States. HP entered into software licensing agreements with each of the plaintiffs through which is agreed to distribute software and firmware updates to their printers for the purposes of improving

---

[6] Autorità Garante della Concorrenza e del Mercato (Italian Competition Authority), Press Release: "PS11444 – ICA: HP fined 10 million Euros for misleading and aggressive commercial practices," *available online at*: https://en.agcm.it/en/media/press-releases/2020/12/PS11444 (last visited Nov. 11, 2023).

printer performance and security. The software and firmware updates were licensed to the recipients, but remained the property of HP, and could not be modified by users.

25.     In marketing materials contained in the boxes in which printers are sold, HP requests that all purchasers of its printers register their computers online, so that they can receive any software updates. The information provided by HP explains that some updates may enhance performance, and correct any security problems that have arisen over time. There is no indication in HP's manuals that agreeing to accept software and firmware updates could damage any features of the printer. HP intended for consumers to rely on this silence.

26.     Consumers do not have a choice to opt out of specific software or firmware updates. If a printer is connected to the internet, the update downloads automatically. Typically, consumers do not know when updates occur.

27.     In 2022 and 2023, HP distributed updates to many of its registered customers that featured the functionality of "Dynamic Security" previously discontinued: it disabled the printer if the customer replaced the existing cartridge with a non-HP cartridge. There was no notification of any kind at the time of this firmware update that might inform customers that the update would reduce the printer's functionality. Even if a customer were able to discern that the update would impede the printer's functionality with other cartridges, there was no means of opting out of the update.

28.     Unaware of this, many of the Plaintiffs purchased replacement cartridges non-that were not HP-branded after they received the firmware update. When they attempted to print, the printer did not work. Each received the following error message (or an equivalent message):



29.     Since the non-HP branded replacement ink cartridges had been opened, they could not be returned, even though they were rendered useless by HP's firmware update.

30.     Faced with non-functional printers, the Plaintiffs were forced to purchase HP-branded ink that they would not otherwise have purchased.

31.     None of the plaintiffs had received any warning at the time of the firmware update or at the time of the purchase of a printer, or at any other time, that by registering their printers to receive regular updates, might lose the ability to use non-HP replacement ink cartridges.

32.     On the contrary, HP's End User License Agreement indicates that use of other companies' ink does not impact its Limited Warranty with users: "The use of a non-HP or refilled cartridge does not affect either the HP Limited Warranty to the end-user customer or any HP support contract with the end-user customer for the printer. However, if printer or print head failure or damage is attributable to the use of a non-HP or refilled cartridge, HP will charge its standard

9

time and materials charges to service the printer for the particular failure or damage or for the cost to replace the print head."[7]

33. In the same time period as it distributed this firmware update, HP raised prices on all of its replacement ink cartridges.

34. In the same time period, HP also increased the price for its "Instant Ink" subscription program.

35. The plaintiffs suffered monetary losses from the firmware update in two ways: first, they had to pay higher prices for HP-branded replacement ink cartridges in order to use the printers they had previously purchased, and second, they lost the value of the non-HP branded replacement ink cartridges they had purchased.

<u>**End User License Agreement**</u>

36. The End User License Agreement for all HP software and firmware provided to owners of HP products such as printers, makes clear that software updates, including firmware updates, are not sold or given to consumers, but rather licensed for specific uses.

> 1. GRANT OF LICENSE. HP grants you the following rights provided you comply with all terms and conditions of this EULA:
>
> a. Use. You may use the Software Product on a single HP Product. If the Software Product is provided to you via the internet and was originally licensed for use on more than one HP Product, you may install and use the Software Product only on those HP Products. You may not separate component parts of the Software Product for use on more than one HP Product. You do not have the right to distribute the Software Product. You may load the Software Product into your HP Product's temporary memory (RAM) for purposes of using the Software Product.
>
> b. Storage. You may copy the Software Product into the local memory or storage device of the HP Product.

---

[7] https://www.hp.com/us-en/privacy/limited_warranty.html.

c. Copying. You may make archival or back-up copies of the Software Product, provided the copy contains all of the original Software Product's proprietary notices and that it is used only for back-up purposes.

d. Reservation of Rights. To the maximum extent permitted by applicable law, HP and its suppliers reserve all rights not expressly granted to you in this EULA.[8]

37.    Thus, HP remains the owner of the firmware update even after it has been installed into consumers' printers, regardless of whether the printer was purchased directly from HP or from an independent retailer.

## Warranty

38.    While some statements in the marketing materials for HP recommend the use of HP replacement ink cartridges, the Limited Warranty available on HP's website indicates that it is possible to use non-HP replacement cartridges.

39.    The Warranty for all HP products, including the printers at issue in this case states that the use of non-HP replacement cartridges does *not* affect the warranty on the printer, unless the replacement cartridge itself causes damage:

> The use of a non-HP or refilled cartridge does not affect either the HP Limited Warranty to the end-user customer or any HP support contract with the end-user customer for the printer. However, if printer or print head failure or damage is attributable to the use of a non-HP or refilled cartridge, HP will charge its standard time and materials charges to service the printer for the particular failure or damage or for the cost to replace the print head.[9]

## The Aftermarket for Replacement Ink Cartridges

40.    The HP Replacement Ink Market is the aftermarket for Replacement Ink cartridges that will work in HP Printers in the United States. Because replacement ink cartridges are available

---

[8] https://support.hp.com/us-en/document/ish_4416646-4390016-16

[9] https://www.hp.com/us-en/privacy/limited_warranty.html

from numerous online sources, there is affectively a single nationwide market.

41.     Since the firmware update, consumers who own the affected HP printers have no viable substitute for HP replacement ink cartridges. Since printers cost several hundred dollars, while replacement ink cartridges cost about $30-50, it is not practical or economically rational to purchase a new printer in order to avoid purchasing HP replacement ink cartridges. Therefore, once consumers purchase their printers, the Dynamic Security firmware updates lock them into purchasing HP-branded ink. The existence of independent sellers of ink cartridges would promote competition and lead to lower prices.

42.     However, because of the anticompetitive course of conduct described in this Complaint, HP restrains consumers' ability to purchase third party ink that would work in their printers if not for the Dynamic Security updates. Absent the conduct complained of herein, the replacement ink cartridge aftermarket would include a greater selection of usable ink cartridges sold by independent third parties. As a result, consumers in the HP Replacement Ink aftermarket suffer from supracompetitive prices.

43.     Having created a monopoly for itself through the firmware update, HP is able to charge supracompetitive prices for replacement ink cartridges.

## CLASS ACTION ALLEGATIONS

### Class Definition

44.     Plaintiffs bring this action on behalf of themselves and the members of the following class (the "HP Ink Purchaser Class"):

> All persons who purchased an HP-branded replacement ink cartridge for any of the below-listed models of HP printers ("Class Models") between September 2022 and the present;

Plaintiffs also bring this action on behalf of members of the following class (the "Firmware Update Class"):

12

All persons who purchased a non HP-branded replacement ink cartridge for use in any of the Class Models of HP Printers between September 2022 and the present, which they were unable to use because of the effects of the series of firmware update.

Except where otherwise specified, both classes are described collectively as the "Class" Both the

HP Purchaser Class and the Firmware Update Class are limited to owners of the Class Printers,

which were affected by HP's firmware updates occurring in 2022 and 2023. Plaintiffs'

investigation has indicated that the Class Models include:

- OfficeJetPro 0835
- XP 310
- PageWide 377dw
- OfficeJet 6000
- OfficeJet 6500
- LaserJet Pro M4040DN, M404DW, M404N
- LaserJet Pro MFP M438DW, M428FDN, M428FDW
- LaserJet Enterprise M406DN
- LaserJet M430F
- DeskJet 2700
- LaserJet Pro MFP 4101dw
- DeskJet 4133e
- OfficeJet 5200
- OfficeJet 6950
- OfficeJet Pro 6960
- OfficeJet Pro 6968
- OfficeJet Pro 6970
- OfficeJet Pro 6978
- OfficeJet Pro 6979
- OfficeJet 6979
- Envy Inspire 7255
- Envy Photo 7855
- OfficeJet 7600
- OfficeJet 7740
- OfficeJetPro 7740
- OfficeJet 8020
- OfficeJetPro 8020
- OfficeJetPro 8025
- OfficeJetPro 8028
- OfficeJet 8030
- OfficeJetPro 8034E

- OfficeJetPro 8035e
- OfficeJet 8500
- OfficeJet 8620
- OfficeJet 9600 Pro Plus
- OfficeJet 8710
- OfficeJetPro 8710
- OfficeJet Pro 9015
- OfficeJet 161600

45.     Claims based on state law are applicable only to Class Members who reside in, or received firmware updates in, the specified state.

46.     Plaintiffs reserve the right to amend the Class definitions as necessary.

**Factual Allegations Supporting Class Treatment**

47.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. Although the precise number of impacted users and models cannot be discerned without discovery, tens of millions of printers are sold each year, HP is the market leader, and its Dynamic Security updates are confirmed to have impacted dozens of computer models.

48.     Typicality: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, received a Firmware update that rendered their printers unable to function with non-HP ink cartridges, and were forced to pay higher prices for HP-branded cartridges if they wished to continue using their printers.

49.     Commonality: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

a)     Whether the firmware update prevented HP printers from functioning with non- HP - branded replacement ink cartridges;

14

b) Whether disabling printers from functioning with non-HP branded replacement ink cartridges reduced competition in the replacement ink cartridge aftermarket;

c) Whether the firmware update created an effective monopoly in the aftermarket for replacement ink cartridges;

d) Whether disabling printers from functioning with non-HP branded replacement ink cartridges permitted HP to charge supracompetitive prices for replacement ink cartridges;

e) Whether HP adequately informed consumers, before they bought their printers, that HP be distributing s firmware update that had the effect of preventing the use of non-HP branded replacement ink cartridges;

f) Whether the firmware update damaged consumers who owned the specified HP printer models;

g) Whether HP was unjustly enriched by the actions listed above; and

h) Whether HP should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

50. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of consumer and antitrust class actions, and intend to prosecute this action vigorously.

51. <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of HP's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the

relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for HP's misconduct. Absent a class action, Class Members will continue to incur damages, and HP's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

52.     Further, HP has acted on grounds generally applicable to the Classes, thereby making appropriate final relief with respect to the Classes as a whole.

### Notice of Claims to HP Would be Futile and is Therefore Excused

53.     As to any claims where Notice to HP may be required, Notice is excused as futile. HP has been put on notice of the legal issues associated with its Limited Warranties by media reports, prior lawsuits discussed above, and numerous comments and requests to HP helplines. HP has not offered restitution or any other remedy to its customers who were adversely affected in the past by having paid supracompetitive prices for branded replacement ink.

### COUNT I
### COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030)
### (ON BEHALF OF ALL CLASS MEMBERS)

54.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

55.     Plaintiffs bring this count on behalf of themselves and the Classes and repeat and re-allege all previous paragraphs, as if fully included herein.

56.     The CFAA, 18 U.S.C. § 1030(a)(2)(C) creates liability for anyone who "intentionally accesses a computer without authorization or without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer."

16

57.     18 U.S.C. § 1030(a)(4) creates liability for persons who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value."

58.     Violations of the CFAA give rise to private rights of action for economic loss, where aggregate damage exceeds $5,000. 18 U.S.C. § 1030(g) and (c)(4)(A)(i).

59.     The HP printers at issue in this case meet the definition of "computer" within the CFAA, since they are "electronic, . . . data processing device performing . . . storage functions," and are "data storage facility[ies] or communications facility[ies] directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(1).

60.     HP intentionally accessed Plaintiffs' printers and the Class Printers "without authorization or exceed[ing] authorized access . . . and thereby obtain[ed] . . . information" in violation of 18 U.S.C. § 1030(a)(2)(C), as none of the authorizations they had received from any Class Members permitted HP to degrade performance of printers tithed previously through distribution of updates.

61.     As a consequence of HP's violations of the CFAA, Plaintiffs and Class Members have been damaged in two ways:

(i)     They suffered economic injury when they purchased replacement ink cartridges that were not HP branded, which proved to be unusable for their intended purposes due to HP's distribution of malware; and

(ii)    They paid supracompetitive prices to purchase HP branded ink cartridges, which they would not have needed and would not have purchased, absent HP's distribution of malware.

**COUNT II**
**SECTION 2 OF THE SHERMAN ACT, 15 U.S.C. § 2**

17

## MONOPOLIZATION OF THE AFTERMARKET FOR
## REPLACEMENT INK CARTRIDGE FOR HP PRINTERS
## (ON BEHALF OF HP INK PURCHSER CLASS MEMBERS)

62.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

63.     This cause of action is brought under Section 2 of the Sherman Act, 15 U.S.C. § 2, which prohibits "monopoliz[ation of] any part of the trade or commerce among the several states, or with foreign nations."

64.     HP has monopoly power in the HP Replacement Ink Cartridge aftermarket for all registered users after the firmware, including the ability to control prices and exclude competition in those aftermarkets.

65.     HP willfully and intentionally engaged in predatory, exclusionary, and anticompetitive conduct with the purpose, and effect of unlawfully creating and maintaining a monopoly in the HP replacement ink cartridge aftermarket.

66.     The anticompetitive conduct, of implementing a firmware update to prevent owners of HP printers from using any competitor's replacement ink cartridges, has unreasonably restrained and threatens to continue unreasonably restraining competition in the HP replacement ink cartridge aftermarket.

67.     As a direct and proximate result of HP's anticompetitive and monopolistic conduct, Plaintiffs and the proposed Class have suffered, and will continue to suffer, injuries of the type the antitrust laws were intended to prevent, including, among other things, paying supracompetitive prices for replacement ink cartridges, and being generally deprived of the competitive benefits which otherwise would have resulted from the option of ink cartridges from sources other than HP.

68. All Plaintiffs bring this count on behalf of the Firmware Update Class, and seek damages stemming from the lost value of non-HP ink due to HP's illegal tying scheme, as well as consequential damages to printers caused by HP's firmware updates.

69. Plaintiffs Gaddy and Gousie bring this count on behalf of the HP Ink Purchaser Class.

70. All Plaintiffs seek injunctive relief to prevent HP from continuing to engage in its illegal tying scheme, which uses firmware updates to retroactively impair the ability of printers to accept third-party replacement ink cartridges.

**COUNT III**
**SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**
**UNLAWFUL TYING**
**(ON BEHALF OF ALL HP INK PURCHASER CLASS MEMBERS)**

71. The allegations in paragraphs 1-53 are incorporated as if fully stated.

72. An unlawful tying arrangement exists, and constitutes a per se violation of Section 1 of the Sherman Act, where a seller conditions the sale of a good or service in one market in which the seller has market power (the "tying" product) upon the buyer's agreement to (a) buy a second good or service (the "tied" product) from the seller or (b) refrain from buying that same good or service from a competing seller.

73. HP printers and replacement ink cartridges are separate and distinct products. The firmware update gives HP monopoly power in the aftermarket for replacement ink cartridges.

74. By virtue of the anticompetitive conduct consisting of the firmware update alleged herein, HP has engaged in tying arrangements.

75. HP leverages the fact that its customers have previously purchased HP printers at substantial cost, and have received the firmware update so that they cannot use any other brand of replacement ink cartridge, to force Plaintiffs and the proposed Class into purchasing HP ink

19

cartridges. This scheme restrains competition in the aftermarket for replacement ink cartridges by excluding other sellers of the tied products and services.

76.     HP implemented these firmware updates through its direct relationship with printer owners, who were subject to HP's end user license agreement. HP exploited this purported contractual relationship to send the updates. In this way, HP used the end user license agreement to unreasonably restrain consumers' choices in the aftermarket for ink cartridges.

77.     This tying arrangement affected a substantial amount of interstate commerce, and HP has a substantial economic interest in sales of replacement ink cartridges.

78.     There are no legitimate procompetitive business justifications for HP's unlawful tying arrangement.

79.     All Plaintiffs bring this count on behalf of the Firmware Update Class, and seek damages stemming from the lost value of non-HP ink due to HP's illegal tying scheme, as well as consequential damages to printers caused by HP's firmware updates.

80.     Plaintiffs Gaddy and Gousie bring this count on behalf of the HP Ink Purchaser Class.

81.     All Plaintiffs seek injunctive relief to prevent HP from continuing to engage in its illegal tying scheme, which uses firmware updates to retroactively impair the ability of printers to accept third-party replacement ink cartridges.

**COUNT IV**
**UNJUST ENRICHMENT**
**(ON BEHALF OF ALL CLASS MEMBERS)**

82.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

83.     Plaintiffs conferred benefits on HP by purchasing HP replacement ink cartridges at supercompetitive prices.

84.     HP has knowledge of receipt of such benefits.

85.     HP has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of replacement ink cartridges.

86.     HP has injured Plaintiffs and Class Members because they would not have paid a price premium for HP replacement ink cartridges they would not have paid absent HP's misconduct.

87.     Because it is unjust and inequitable for HP to retain such non-gratuitous benefits conferred on it by Plaintiff and Class Members, HP must pay restitution to Plaintiff and Class Members, as ordered by the Court. Plaintiff and the Class have no adequate remedy at law.

## COUNT V
### ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT
### (815 ILCS 505/1 ET SEQ.)
### (ON BEHALF OF ILLINOIS CLASS MEMBERS)

88.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

89.     HP has engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of 815 ILCS §§ 505/1, et seq. with respect to distribution of firmware updates in Illinois to Class Members, including Plaintiffs Robinson and Myers.

90.     As alleged above, at the time Class Members purchased their printer, HP did not inform them of its intent to use firmware updates to disable third-party ink cartridges, either in its packaging, its End User License Agreement, or its Limited Warranty. On the contrary, HP's Warranty represents that it will still apply even if third-party ink is used. There is no indication in HP's manuals that agreeing to accept software and firmware updates could damage any features of the printer.

91.     HP intended for consumers to rely on this silence.

21

92. HP's failure to disclose this tying scheme was deceptive and amounted to an unreasonable restraint of trade in the aftermarket for replacement ink cartridges.

93. HP's firmware distribution therefore violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Illinois; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

94. HP's conduct had a substantial effect on Illinois commerce.

95. As a direct and proximate result of HP's unlawful conduct, members of the Illinois Class have been injured in their business and property and are threatened with further injury.

96. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.


**COUNT VI**
**ALABAMA CODE §§ 8–10–1 ET SEQ., § 6-5-60**
**(ON BEHALF OF ALABAMA CLASS MEMBERS)**

97. The allegations in paragraphs 1-53 are incorporated as if fully stated.

98.     Sections 8–10–1 through § 8–10–3 of the Alabama Code prohibits unreasonable restraints in trade or commerce. In turn, Section 6-5-60 of the Alabama Code provides a private cause of action to enforce the Alabama antitrust laws.

99.     HP's acts violated these statutes and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Alabama; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alabama; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

100.     During the Class Period, HP's illegal conduct had a substantial effect on Alabama commerce.

101.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

102.     Through its unlawful tying scheme, HP unfairly monopolized trade or commerce in the aftermarket for ink cartridges.

103.     Plaintiffs and the Class therefore seek all damages and remedies available under the Alabama antitrust statutes.

## COUNT VII
## ALASKA STAT. §§ 45.50.471 ET SEQ.
## (ON BEHALF OF ALASKA CLASS MEMBERS)

104.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

105.    The Alaska Statutes prohibit unfair methods of competition and any unfair or deceptive trade practices. AS §45.40.471.

106.    HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Alaska; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alaska; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

107.    During the Class Period, HP's illegal conduct had a substantial effect on Alaska commerce.

108.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

109.    Through their unlawful tying scheme, HP unfairly monopolized trade or commerce in the aftermarket for ink cartridges.

110.    HP has engaged in unfair competition or unfair or deceptive acts or practices in violation of AS § 45.40.471 including, but not limited to AS §45.40.471(b)(4), (6), (11), (12), (14), (15), and, accordingly, members of the Class seek all relief available under that statute.

111.     Plaintiffs and the Class therefore seek all damages and remedies available under the Alaska antitrust statutes.

## COUNT VIII
## ARIZONA UNIFORM STATE ANTITRUST ACT
## ARIZONA REV. STAT. §§ 44-1401 *ET SEQ*.
## (ON BEHALF OF ARIZONA CLASS MEMBERS)

112.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

113.     HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Arizona; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

114.     During the Class Period, HP's illegal conduct had a substantial effect on Arizona commerce.

115.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

116.     Through their unlawful tying scheme, HP unfairly monopolized trade or commerce in the aftermarket for ink cartridges.

117.     HP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Revised Statute § 44-1401, et seq. Class Members seek all relief available under that statute.

**COUNT IX**
**ARIZONA CONSUMER FRAUD ACT**
**(ARIZ. REV. STAT. § 44-1521, ET SEQ.)**
**(ON BEHALF OF ARIZONA CLASS MEMBERS)**

118.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

119.    HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Arizona; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

120.    During the Class Period, HP's illegal conduct had a substantial effect on Arizona commerce.

121.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

122.    Through its unlawful tying scheme, HP unfairly monopolized trade or commerce in the aftermarket for ink cartridges.

123.    HP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Revised Statute § 44-1451, et seq. Class Members seek all relief available under that statute.

**COUNT X**
**ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**ARK. CODE ANNOTATED §§4-88-101 *ET SEQ.***
**(ON BEHALF OF ARKANSAS CLASS MEMBERS)**

124.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

125.    The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits any unconscionable trade conduct as well as a false or deceptive action or practice in business, commerce, or trade. Ark. Code Ann. § 4-88-107(a)(10).

126.    HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

127.    During the Class Period, HP's illegal conduct had a substantial effect on Arkansas commerce.

128.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

129.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XI**
**CALIFORNIA'S CARTWRIGHT ACT**
**CAL. BUS. & PROF. CODE §§ 16700, *ET SEQ.***
**(ON BEHALF OF CALIFORNIA CLASS MEMBERS)**

130.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

131.    The California Business & Professions Code generally governs conduct of corporate entities. The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, governs antitrust violations in California.

132.    California public policy provides that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

133.    Under the Cartwright Act, indirect purchasers have standing to maintain an action based on the facts alleged in this complaint. Cal. Bus. & Prof. Code § 16750(a).

134.    Through its unlawful tying scheme, HP acted in restraint of, or to monopolize, trade or commerce in replacement ink cartridges aftermarket, a substantial part of which occurred within California.

135.    HP's unlawful conduct substantially affected intrastate trade and commerce in California.

136.    As a direct and proximate result of HP's unlawful conduct, members of the California Class have been injured in their business or property.

137.    As described above, HP's tying scheme violates the Cartwright Effect and, through that violation, has had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout California; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers'

ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

138.    Plaintiffs and the Class Members therefore seek all damages and other remedies available under the Cartwright Act.

**COUNT XII**
**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**CAL. CIV. CODE §§ 1750, *ET SEQ.***
**(ON BEHALF OF CALIFORNIA CLASS MEMBERS)**

139.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

140.    HP's deceptive tying scheme violates California's Consumer Legal Remedies Act ("CLRA") because its acts extend to transactions intended to result, or which have resulted, in the sale or lease of goods and services to consumers.

141.    HP is a "person" under Cal. Civ. Code § 1761.

142.     California Class Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

143.    The printers and ink that California Class Members purchased from HP were "goods" within the meaning of California Civil Code § 1761(a).

144.    HP's deceptive tying scheme was intended to result in the sale and use of the printers and ink described herein to and by the consuming public. This scheme violates § 1770(a)(5), § 1770(a)(8), § 1770(a)(9), § 1770(a)(14), and § 1770(a)(15) of the CLRA.

145.    In violating these statutes, HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout California; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink

29

cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

146.    Plaintiff and the Class Members therefore seek all damages and other remedies available under the CLRA.

**COUNT XIII**
**CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***
**(ON BEHALF OF CALIFORNIA CLASS MEMBERS)**

147.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

148.    HP's conduct violates the California Unfair Competition Law ("UCL"), both by deceiving customers and by engaging in a tying scheme to eliminate competition in the aftermarket for replacement inks.

149.    In violating the UCL, HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout California; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

150.     Plaintiff and the Class Members therefore seek restitution and other remedies available under the UCL.

## COUNT XIV
## COLORADO ANTITRUST ACT
## COLO. REV. STAT. §§ 6-4-101, ET SEQ.
## (ON BEHALF OF COLORADO CLASS MEMBERS)

151.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

152.     HP's acts also violate the Colorado State Antitrust Act of 2023 ("ADTPA"). Colo. Rev. Stat. §§ 6-4-101-120.

153.     HP's illegal acts had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Colorado; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

154.     During the Class Period, HP's illegal conduct had a substantial effect on Colorado commerce.

155.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

156.    Members of the Colorado Class were injured and will continue to be injured with respect to purchases of branded ink cartridges in Colorado in that they paid and will pay supra-competitive prices for branded ink cartridges due to HP's unlawful conduct.

157.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XV**
**COLORADO CONSUMER PROTECTION ACT**
**COLO. REV. STAT. ANN. §§6-1-101 *ET SEQ.***
**(ON BEHALF OF COLORADO CLASS MEMBERS)**

158.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

159.    HP's acts violate the Colorado Consumer Protection Act ("CCPA") Colorado Rev. Stat. Ann. §§6-1-101, et seq. through its unfair and/or deceptive practices.

160.    HP's illegal acts had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Colorado; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

161.    During the Class Period, HP's illegal conduct had a substantial effect on Colorado commerce.

162.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

163.    Members of the Colorado Class were injured and will continue to be injured with respect to purchases of branded ink cartridges in Colorado in that they paid and will pay supra-competitive prices for branded ink cartridges due to HP's unlawful conduct.

164.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XVI
## CONNECTICUT ANTITRUST ACT
### C.G.S. §§ 35-26, *ET SEQ.*
### (ON BEHALF OF CONNECTICUT CLASS MEMBERS)

165.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

166.    HP's acts violate the C.G.S. §§ 35-46a(1), due to its tying scheme and deception of printer purchasers.

167.    HP's illegal acts had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Connecticut; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Connecticut; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially

inflated prices for HP's replacement ink cartridges.

168.    During the Class Period, HP's illegal conduct had a substantial effect on Connecticut commerce.

169.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

170.    Members of the Connecticut Class were injured and will continue to be injured with respect to purchases of branded ink cartridges in Connecticut in that they paid and will pay supra-competitive prices for branded ink cartridges due to HP's unlawful conduct.

171.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XVII**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**C.G.S. §§ 42-110A, ET SEQ.**
**(ON BEHALF OF CONNECTICUT CLASS MEMBERS)**

172.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

173.    HP's acts violate the C.G.S. §§42-110A, et seq., due to its tying scheme and deception of printer purchasers.

174.    HP's illegal acts had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Connecticut; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Connecticut; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without

being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

175.     During the Class Period, HP's illegal conduct had a substantial effect on Connecticut commerce.

176.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

177.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XVIII**
**DELAWARE CONSUMER FRAUD ACT**
**6 DEL. CODE §§ 2511 *ET SEQ.***
**(ON BEHALF OF DELAWARE CLASS MEMBERS)**

178.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

179.     HP's acts violate 6 Del. Code §§ 2511 et seq., due to its tying scheme and deception of printer purchasers.

180.     HP's illegal acts had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Delaware; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Delaware; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink

cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

181.    During the Class Period, HP's illegal conduct had a substantial effect on Delaware commerce.

182.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

183.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XIX**
**DISTRICT OF COLUMBIA ANTITRUST ACT**
**D.C. CODE §§ 28-4501 ET SEQ.**
**(ON BEHALF OF DISTRICT OF COLUMBIA CLASS MEMBERS)**

184.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

185.    HP's acts violate D.C. Code §§ 28-4501 et seq., due to its tying scheme and deception of printer purchasers.

186.    HP's illegal acts had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying

supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

187.     During the Class Period, HP's illegal conduct had a substantial effect on District of Colombia commerce.

188.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

189.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.


## COUNT XX
## DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT
## D.C. CODE § § 28-3901, ET SEQ.
## (ON BEHALF OF DISTRICT OF COLUMBIA CLASS MEMBERS)

190.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

191.     HP's acts violate D.C. Code §§ 28-3901, et seq., due to its tying scheme and deception of printer purchasers.

192.     HP's illegal acts had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying

supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

193.    During the Class Period, HP's illegal conduct had a substantial effect on District of Colombia commerce.

194.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

195.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.


## COUNT XXI
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## FLA. STAT. §§ 501.201(2) ET SEQ.
## (ON BEHALF OF FLORIDA CLASS MEMBERS)

196.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

197.    The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, et seq. (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

198.    Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint. Fla. Stat. § 501.211(a) ("anyone aggrieved by a violation of this [statute] may bring an action . . .").

199.    HP's illegal acts violated FDUTPA and had the following effects: HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Florida; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) members of the

Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

200.    During the Class Period, HP's illegal conduct had a substantial effect on Florida commerce.

201.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

202.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XXII
## GEORGIA FAIR BUSINESS PRACTICES ACT
## GA. CODE §§10-1-390 ET SEQ.
## (ON BEHALF OF GEORGIA CLASS MEMBERS)

203.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

204.    The Georgia Fair Business Practices Act prohibits and unfair or deceptive acts or practices in the conduct of consumer transactions. Ga. Code § 10-1-393.

205.    HP's illegal acts violated the Georgia Fair Business Practices Act and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Georgia; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Georgia; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of

non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

206.     During the Class Period, HP's illegal conduct had a substantial effect on Georgia commerce.

207.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

208.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XXIII
## HAWAII ANTITRUST ACT
## HAW. REV. STAT. §§ 480-1, ET SEQ.
## (ON BEHALF OF HAWAII CLASS MEMBERS)

209.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

210.     HP has engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480- 1, et seq.

211.     HP's illegal acts violated the Hawaii Antitrust Act and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for

40

HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

212. During the Class Period, HP's illegal conduct had a substantial effect on Hawaii commerce.

213. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

214. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

### COUNT XXIV
### IDAHO CONSUMER PROTECTION ACT
### IDAHO CODE §§48-601 ET SEQ.
### (ON BEHALF OF IDAHO CLASS MEMBERS)

215. The allegations in paragraphs 1-53 are incorporated as if fully stated.

216. The Idaho Consumer Protection Act was enacted to protected consumers against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce. I.C. §48-601, et seq.

217. Through its unlawful conduct, HP has violated I.C. §48-601, et seq., including, but not limited to, I.C. §48-603(5), (13), (16), (17), (18), and I.C. §48-603C.

218. HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Idaho; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Idaho; (3) members of the Class were deprived of free and open competition; (4) members of the

Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

219.    During the Class Period, HP's illegal conduct had a substantial effect on Idaho commerce.

220.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

221.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XXV**
**INDIANA DECEPTIVE CONSUMER SALES ACT**
**IND. CODE §§ 24-5-0.5-1 ET SEQ.**
**(ON BEHALF OF INDIANA CLASS MEMBERS)**

222.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

223.    HP is a "person" as defined by Ind. Code §§ 24-5-0.5-2.

224.    HP is a "supplier" as defined by Ind. Code §§ 24-5-0.5-2.

225.    The printer and ink cartridge sales and associated software services are "consumer transactions," under Ind. Code §§ 24-5-0.5-2.

226.    Plaintiffs and Class Members purchased HP printers and used related services for personal purposes.

227.    HP's printer and ink sales, coupled with the firmware updates, are "uncured deceptive acts," under Ind. Code §§ 24-5-0.5-2.

42

228.     Under Ind. Code §§ 24-5-0.5-3(a), a "supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." HP's acts and practices described herein were intended to result in the sale of HP's printers followed by coercive sales of HP's replacement ink cartridges, in a manner that violates Ind. Code §§ 24-5-0.5-3(b)(1), -(2), (6), -(8), and -(17) of the Indiana Deceptive Consumer Sales Act.

229.     HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Indiana; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Indiana; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

230.     During the Class Period, HP's illegal conduct had a substantial effect on Indiana commerce.

231.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

232.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive

relief available.

## COUNT XXVI
## IOWA COMPETITION LAW
## IOWA CODE §§ 553.1 ET SEQ.
## (ON BEHALF OF IOWA CLASS MEMBERS)

233.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

234.     The Iowa Competition Law aims to "prohibit[] restraint of economic activity and monopolistic practices." Iowa Code § 553.2.

235.     HP's tying scheme violated the Iowa Competition Law and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Iowa; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

236.     During the Class Period, HP's illegal conduct had a substantial effect on Iowa commerce.

237.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

238.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XXVII**
**IOWA CONSUMER FRAUDS ACT**
**IOWA CODE §§ 714H.1 ET SEQ.**
**(ON BEHALF OF IOWA CLASS MEMBERS)**

239.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

240.    The Iowa Private Right of Action for Consumer Frauds Act ("IPRACFA") makes unlawful "a practice or act [a] person knows or reasonably should know is an unfair practice . . . with the intent that others rely upon [the practice or act]." Iowa Code § 714H.3(1).

241.    "Unfair practice" means an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces. Iowa Code § 714.16.

242.    HP is a person within the meaning of this statute.

243.    HP knew or reasonably should have known that its misconduct was an unfair practice.

244.    HP acted with the intent that the Iowa Class rely upon its misconduct.

245.    HP's violations of this law had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Iowa; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

246. During the Class Period, HP's illegal conduct had a substantial effect on Iowa commerce.

247. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

248. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XXVIII
## KANSAS RESTRAINT OF TRADE ACT
## KAN. STAT. §§ 50-101 ET SEQ.
## (ON BEHALF OF KANSAS CLASS MEMBERS)

249. The allegations in paragraphs 1-53 are incorporated as if fully stated.

250. The Kansas Restraint of Trade Act aims to prohibit practices which, inter alia, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. § 50-112.

251. Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. § 50-161(b).

252. HP's tying scheme violated the Kansas Restraint of Trade Act and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Kansas; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without

46

being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

253. During the Class Period, HP's illegal conduct had a substantial effect on Kansas commerce.

254. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

255. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XXIX
## KANSAS CONSUMER PROTECTION ACT
## KAN. STAT. §§ 50-623 ET SEQ.
## (ON BEHALF OF THE KANSAS CLASS MEMBERS)

256. The allegations in paragraphs 1-53 are incorporated as if fully stated.

257. By the acts and conduct alleged herein, HP committed deceptive acts and practices, using fraudulent omissions in the market for printers to coerce consumers into buying only HP-branded ink in the aftermarket for ink cartridges.

258. Plaintiffs are "consumers" as defined by Kansas Stat. § 50-624.

259. HP is a "person" as defined by Kansas Stat. § 50-624.

260. HP is a "supplier" as defined by Kansas Stat. Ann. § 50-624.

261. The printers, ink cartridges, and associated firmware updates are "consumer transactions" and "services," respectively, under Kansas Stat. Ann. § 50-624.

262. Class members purchased these products and related services for personal purposes.

263.     Under Kansas Stat. § 50-626(a), "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." HP's acts and practices were intended to result in the sale of printers and coerced sale of its ink cartridges, and involved violations of §§ 50-626(b)(1)(A), -(D), and -(F), and 50-626(b)(4), -(5), and -(8) of the Kansas Consumer Protection Act.

264.     HP's acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Kansas; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

265.     During the Class Period, HP's illegal conduct had a substantial effect on Kansas commerce.

266.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

267.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.


**COUNT XXX**
**KENTUCKY CONSUMER PROTECTION ACT**

**KY. REV. STAT. §§ 367.110, ET SEQ.**
**(ON BEHALF OF KENTUCKY CLASS MEMBERS)**

268.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

269.     By the acts and conduct alleged herein, HP committed deceptive acts and practices, using fraudulent omissions in the market for printers to coerce consumers into buying only HP-branded ink in the aftermarket for ink cartridges.

270.     HP is a "person" as defined by Ky. Rev. Stat. § 367.110.

271.     Class members purchased the Products and related services for personal purposes.

272.     Under Ky. Rev. Stat. § 367.170, "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

273.     HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Kentucky; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kentucky; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

274.     During the Class Period, HP's illegal conduct had a substantial effect on Kentucky commerce.

275.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

276.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all

49

damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XXXI
## LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
## LA. REV. STAT. TIT. § 51:1401 ET SEQ.
## (ON BEHALF OF LOUISIANA CLASS MEMBERS)

277. The allegations in paragraphs 1-53 are incorporated as if fully stated.

278. By the acts and conduct alleged herein, HP committed deceptive acts and practices, using fraudulent omissions in the market for printers to coerce consumers into buying only HP-branded ink in the aftermarket for ink cartridges.

279. HP is a "person" as defined by La. Rev. Stat. tit. § 51:1402.

280. Class members are :"consumers" as defined by La. Rev. Stat. tit. § 51:1402.

281. Class members purchased HP's printers and ink cartridges for personal purposes.

282. Under La. Rev. Stat. tit. § 51:1405, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

283. HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Louisiana; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Louisiana; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

50

284. During the Class Period, HP's illegal conduct had a substantial effect on Louisiana commerce.

285. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

286. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XXXII
## MAINE MONOPOLIES AND PROFITEERING LAW
## ME. REV. STAT. TIT. 10, § 1101 ET SEQ.
## (ON BEHALF OF MAINE CLASS MEMBERS )

287. The allegations in paragraphs 1-53 are incorporated as if fully stated.

288. Part 3 of Title 10 the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Tit. 10, §§ 1101-02.

289. Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Me. Rev. Stat. Tit. 10, § 1104(1).

290. HP's tying scheme violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Maine; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to

51

reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

291. During the Class Period, HP's illegal conduct had a substantial effect on Maine commerce.

292. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

293. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XXXIII**
**MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**ME. REV. STAT. TIT. 10 § 1211 ET SEQ.**
**(ON BEHALF OF MAINE CLASS MEMBERS )**

294. The allegations in paragraphs 1-53 are incorporated as if fully stated.

295. HP is a "person" as defined by 10 M.R.S.A. § 1211.

296. Class members purchased HP's printers, ink cartridges, and related services for personal purposes.

297. HP's acts and practices described herein were intended to result in the sale and use of the printers, ink cartridges, and related services to and by the consuming public and these acts violated §§ 1211.1.E, -.G, -.I, and -.L of the Maine Uniform Deceptive Trade Practices Act.

298. HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Maine; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Class were deprived of free and open competition; (4) members of the

Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

299. During the Class Period, HP's illegal conduct had a substantial effect on Maine commerce.

300. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

301. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XXXIV**
**MARYLAND ANTITRUST ACT**
**MD. CODE ANN. COMM. LAW §§ 11-201 ET SEQ.**
**(ON BEHALF MARYLAND CLASS MEMBERS)**

302. The allegations in paragraphs 1-53 are incorporated as if fully stated.

303. Maryland Class members purchased HP printers and ink cartridges, and were impacted by the firmware updates described herein.

304. Under Md. Code Ann. Comm. Law § 11-209, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint.

305. HP's typing scheme violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Maryland; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maryland; (3) members of the Class were deprived of free and

open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

306.    HP's illegal conduct had a substantial effect on Maryland commerce.

307.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

308.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XXXV**
**MARYLAND CONSUMER PROTECTION ACT**
**MD. CODE ANN.COMM. LAW §§ 13-101 ET SEQ.**
**(ON BEHALF OF MARYLAND CLASS MEMBERS )**

309.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

310.    Maryland Class members purchased HP printers and ink cartridges, and were impacted by the firmware updates described herein.

311.    Maryland Class Members are "consumers" as defined by Md. Code Ann. Com. Law § 13-101.

312.    HP is a "person" as defined by Md. Code Ann. Com. Law § 13-101.

313.    Class members purchased HP's printers and ink cartridges, and used its related services for personal purposes.

314.    HP's acts and practices described herein were intended to result in the sale and

use of the Product and related services to and by the consuming public and have violated, and continue to violate, §§ 13-301(1), -(2), -(3), -(4), -(5), and -(9), of the Maryland Consumer Protection Act. In violation of Md. Code Ann. Com. Law § 13-301(1),.

315.    HP's deceptive acts violated these statutory sections and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Maryland; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maryland; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

316.    HP's illegal conduct had a substantial effect on Maryland commerce.

317.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

318.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XXXVI**
**MASSACHUSETTS CONSUMER PROTECTION LAW**
**MASS. GEN. LAWS CHAPTER 93A**
**(ON BEHALF OF MASSACHUSETTS CLASS MEMBERS )**

319.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

320.     HP has engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Mass. Gen. Laws, ch. 93A, § 2 with respect to in Massachusetts by Class members and/or purchases by Massachusetts residents, including Plaintiffs Gousie and Steiger.

321.     HP was engaged in trade or commerce as defined by Mass. Gen. Laws ch. 93A.

322.     HP acted in restraint of trade or commerce in a market which includes Massachusetts, by transmission of the firmware updates that prevented printers from functioning with non-HP branded ink cartridges.

323.     HP's deceptive and anti-competitive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

324.     HP has or will be served with a demand letter in accordance with Mass. Gen. Laws ch. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to HP not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. In addition, a demand letter would be futile due to HP's pattern of reinstituting its firmware updates to block third-party ink cartridges in an ever-expanding

56

list of HP printer models, despite having been fined for the same behavior and having given past assurances that this behavior would cease.

325.    By reason of the foregoing, HP engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. HP's violations of Chapter 93A were knowing or willful, entitling members of the Class to multiple damages.

326.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XXXVII**
**MICHIGAN CONSUMER PROTECTION ACT**
**MICH. STAT. §§ 445.901 ET SEQ.**
**(ON BEHALF OF MICHIGAN CLASS MEMBERS)**

327.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

328.    HP has engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Mich. Stat. §§ 445.901, et seq. with respect to firmware distribution in Michigan.

329.    HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Michigan; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

57

330. During the Class Period, HP's illegal conduct had a substantial effect on Michigan commerce.

331. As a direct and proximate result of HP's unlawful conduct, members of the Michigan Class, including Plaintiff Plunkett, have been injured in their business and property and are threatened with further injury.

332. HP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. §§ 445.901, et seq., and, accordingly, members of the Class seek all relief available under that statute.

**COUNT XXXVIII**
**MICHIGAN ANTITRUST REFORM ACT**
**MICH. STAT. §§ 445.772 ET SEQ.**
**(ON BEHALF OF MICHIGAN CLASS MEMBERS)**

333. The allegations in paragraphs 1-53 are incorporated as if fully stated.

334. HP has engaged in illegal acts in restraint of trade in violation of Mich. Comp. Laws §§ 445.772, et seq., with respect to distribution of firmware updates in Michigan by Class members and/or purchases by Michigan residents, including Plaintiff Plunkett.

335. HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Michigan; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

58

336.    During the Class Period, HP's illegal conduct substantially affected Michigan commerce.

337.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

338.    By reason of the foregoing, HP has acted in restraint of trade in violation of Michigan Comp. Laws §§ 445.772, et seq. Accordingly, members of the Class seek all relief available under Michigan Comp. Laws §§ 445.772, et seq.

**COUNT XXXIX**
**MINNESOTA ANTITRUST LAW**
**MINN. STAT. §§ 325D.49, ET SEQ.**
**(ON BEHALF OF MINNESOTA CLASS MEMBERS)**

339.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

340.    The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of these affect Minnesota trade or commerce.

341.    Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

342.    HP's tying scheme violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Class were deprived of free and

59

open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

343.    HP's illegal conduct had a substantial effect on Minnesota commerce.

344.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

345.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XL
## MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
## MINN. STAT. §§ 325F.44, ET SEQ.
## (ON BEHALF OF MINNESOTA CLASS MEMBERS)

346.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

347.    HP's actions, representations, omissions and conduct have violated, and continue to violate, the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods and services to consumers.

348.    HP is a "person" under Minn. Stat. § 325F.43.

349.    Minnesota Class Members are "consumers" as that term is defined by the MUDTPA in Minn. Stat. § 325F.43.

350.    The printers and ink cartridges that Minnesota Class Members purchased from HP

were "goods" within the meaning of Minn. Stat. § 325F.43.

351.     HP's acts and practices described herein were intended to result in the sale and use of its printers, ink cartridges, and related software services to and by the consuming public and have violated, and continue to violate, § 325F.44(1)(5), § 325F.44(1)(8), § 325F.44(1)(9), § 325F.44(1)(14), and § 325F.44(1)(15) of the MUDTPA.

352.     HP's deceptive acts violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

353.     HP's illegal conduct had a substantial effect on Minnesota commerce.

354.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

355.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XLI**
**MINNESOTA CONSUMER FRAUD ACT**
**MINN. STAT. §§ 325F.68, ET SEQ.**
**(ON BEHALF OF MINNESOTA CLASS MEMBERS)**

356. The allegations in paragraphs 1-53 are incorporated as if fully stated.

357. This cause of action is brought pursuant to Minnesota's Private Attorney General Statute, Minn. Stat. § 8.31, subd. 3a.

358. This cause of action will benefit the public because HP's unfair and deceptive conduct is aimed generally at HP printer owners and consumers throughout the state. By reason of the conduct alleged herein, HP has violated Minn. Stat. § 325F.68, et seq.

359. HP's conduct was unfair, unconscionable, or deceptive within the conduct of commerce within Minnesota.

360. HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

361. HP's illegal conduct had a substantial effect on Minnesota commerce.

362. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

363. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

62

**COUNT XLII**
**MISSISSIPPI CONSUMER PROTECTION ACT**
**MISS. CODE §§ 75-24-1 ET SEQ.**
**(ON BEHALF OF MISSISSIPPI CLASS MEMBERS)**

364.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

365.     Mississippi Class members purchased HP's printers and, after receiving the firmware updates as part of HP's tying scheme, were coerced into purchasing HP's aftermarket ink cartridges.

366.     HP's tying scheme acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

367.     HP's illegal conduct had a substantial effect on Minnesota commerce.

368.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

369.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XLIII**

63

**MISSOURI MERCHANDISING PRACTICES ACT**
**MO. STAT. §§ 407.010 ET SEQ.**
**(ON BEHALF OF MISSOURI CLASS MEMBERS)**

370.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

371.    HP has engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Mo. Stat. §§ 407.010, et seq., with respect to distribution of firmware updates in Missouri.

372.    Plaintiff First and the Missouri Class purchased HP printers and replacement ink cartridges for personal, family, or household purposes.

373.    HP engaged in the conduct described herein in connection with the sale of replacement ink cartridges in trade or commerce in a market that includes Missouri.

374.    HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Missouri; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

375.    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

376.    As a direct and proximate result of the above-described unlawful practices, members of the Class suffered ascertainable loss of money or property.

377.    Accordingly, members of the Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, et seq., 15 CSR 60-8.010, et seq., and 15 CSR 60-9.010, et seq., and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

## COUNT XLIV
## MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
## MONTANA CODE ANN. §§30-14-101 ET SEQ.
## (ON BEHALF OF MONTANA CLASS MEMBERS)

378.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

379.    The Montana Unfair Trade Practices and Consumer Protection Act of 1973 ("MUTPCPA") prohibits any unfair methods of competition and unfair or deceptive acts or practices in business, commerce, or trade. MCA 30-14-103.

380.    HP violated MUTPCPA through its unfair and/or deceptive practices.

381.    Montana Class Members are consumers within the plain meaning of the MUTPCPA, having bought their HP printers for personal, family, or household use.

382.    HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Montana; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which

would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

383.     HP's illegal conduct had a substantial effect on Montana commerce.

384.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

385.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT XLV**
**NEBRASKA JUNKIN ACT**
**NEB. REV. STAT. §§59-801 ET SEQ.**
**<u>(ON BEHALF OF NEBRASKA CLASS MEMBERS)</u>**

386.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

387.     Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

388.     Nebraska Class members purchased branded HP printers and replacement ink cartridges within the State of Nebraska.

389.     Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev. Stat. § 59-821.

390.     HP's tying scheme had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

Nebraska; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

391.    HP's illegal conduct had a substantial effect on Nebraska commerce.

392.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

393.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.


## COUNT XLVI
## NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT
## NEB. REV. STAT. §§87-301 ET SEQ.
## (ON BEHALF OF NEBRASKA CLASS MEMBERS)

394.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

395.    HP, Plaintiffs, and Nebraska Class members are "persons" under the statute. Neb. Rev. Stat. § 87-301(19).

396.    The HP printers, ink cartridges, and software support services at issue are goods and services under the statute. Neb. Rev. Stat. §§ 87-301(10), (15).

397.    Under Neb. Rev. Stat. § 87-302, a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she" "(10) Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner

calculated or tending to mislead or in any way deceive a person;" and "(16) Uses any scheme or device to defraud by means of: (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or (ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme[.]"

398.     Neb. Rev. Stat. § 87-303.01 further states "(1) An unconscionable act or practice by a supplier in connection with a consumer transaction shall be a violation of the Uniform Deceptive Trade Practices Act. (2) The unconscionability of an act or practice shall be a question of law for the court. If it is claimed or appears to the court that an act or practice may be unconscionable, the parties shall be given a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making its determination."

399.     HP's deceptive acts violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

400.     HP's illegal conduct had a substantial effect on Nebraska commerce.

401.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

68

402.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XLVII
## NEVADA UNFAIR TRADE PRACTICES ACT
## NEV. REV. STAT. §§ 598A.010 ET SEQ.
## (ON BEHALF OF NEVADA CLASS MEMBERS)

403.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

404.     HP acted illegally in restraint of trade in violation of Nev. Rev. Stat. §§ 598A.010 et seq. with respect to distribution of firmware updates in Nevada by Class members, including Plaintiff Waudby.

405.     HP's actions had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Nevada; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

406.     During the Class Period, HP's illegal conduct had a substantial effect on Nevada commerce.

407.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

408. By reason of the foregoing, HP has taken actions in restraint of trade in violation of Nev. Rev. Stat. 598A.010 et seq. Accordingly, members of the Class seek all relief available under Nev. Rev. Stat. 598A.010 et seq.

**COUNT XLVIII**
**NEW HAMPSHIRE ANTITRUST LAW**
**N.H. REV. STAT. §§ 356:1 ET SEQ.**
**(ON BEHALF OF NEW HAMPSHIRE CLASS MEMBERS)**

409. The allegations in paragraphs 1-53 are incorporated as if fully stated.

410. Title XXXI, Chapter 356 of the New Hampshire Statutes deems unlawful every "contract, combination, or conspiracy in restraint of trade." N.H. Rev. Stat. Ann. § 356:2.

411. Title XXXI, Chapter 356 of the New Hampshire Statutes also deems "the establishment, maintenance or use of monopoly power, or any attempt to establish, maintain or use monopoly power over trade or commerce for the purpose of affecting competition or controlling, fixing or maintaining prices" as unlawful. N.H. Rev. Stat. Ann. § 356:3.

412. New Hampshire Class members purchased HP branded printers and ink cartridges within the State of New Hampshire during the Class Period.

413. Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

414. HP's illegal tying scheme violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement

70

ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

415.     HP's illegal conduct had a substantial effect on New Hampshire commerce.

416.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

417.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT XLIX
### NEW HAMPSHIRE CONSUMER PROTECTION ACT
### N.H. REV. STAT. ANN. §§358-A:1 ET SEQ.
### (ON BEHALF OF NEW HAMPSHIRE CLASS MEMBERS)

418.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

419.     Title XXXI, Chapter 356 of the New Hampshire Statutes deems unlawful every "contract, combination, or conspiracy in restraint of trade." N.H. Rev. Stat. Ann. § 356:2.

420.     Title XXXI, Chapter 356 of the New Hampshire Statutes also deems "the establishment, maintenance or use of monopoly power, or any attempt to establish, maintain or use monopoly power over trade or commerce for the purpose of affecting competition or controlling, fixing or maintaining prices" as unlawful. N.H. Rev. Stat. Ann. § 356:3.

421.     New Hampshire Class members purchased HP branded printers and ink cartridges within the State of New Hampshire during the Class Period.

422.     Under New Hampshire law, indirect purchasers have standing to maintain an

71

action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

423.     HP's illegal tying scheme violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

424.     HP's illegal conduct had a substantial effect on New Hampshire commerce.

425.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

426.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT L**
**NEW JERSEY CONSUMER FRAUD ACT**
**N.J. STAT. §§56:8-1 ET SEQ.**
**(ON BEHALF OF NEW JERSEY CLASS MEMBERS)**

427.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

428.     N.J.S. §§ 56:8-2, et seq., prohibits any person from engaging in unconscionable or abusive deception, fraud, false pretense, false promise, misrepresentation, or the concealment,

suppression, or omission of any material fact in connection with the sale or lease of any merchandise.

429.    HP violated this statute through the deceptive conduct described above.

430.    Plaintiff Ullrich and the New Jersey Class are victims of the consumer fraud perpetuated by HP, resulting in reduced functionality of their HP printers and their inability to use previously-compatible third party ink due to HP's firmware updates.

431.    HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout New Jersey; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Jersey; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

432.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LI**
**NEW MEXICO ANTITRUST ACT**
**N.M. STAT. ANN. §§57-1-1 ET SEQ.**
**(ON BEHALF OF NEW MEXICO CLASS MEMBERS)**

433.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

434.    The New Mexico Antitrust Act aims to prohibit restraints of trade and monopolistic practices. N.M. Stat. Ann. § 57-1-15.

435.    New Mexico Class members purchased branded HP prinkers and ink cartridges within the State of New Mexico.

436.    Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

437.    HP's illegal tying scheme violated this statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

438.    HP's illegal conduct had a substantial effect on New Mexico commerce.

439.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

440.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LII
## NEW MEXICO UNFAIR TRADE PRACTICES ACT

## N.M. STAT. ANN. §§57-12-1 ET SEQ.
## (ON BEHALF OF NEW MEXICO CLASS MEMBERS)

441.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

442.    The New Mexico Unfair Trade Practices Act ("NMUPA") prohibits any unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce. N.M. Stat. Ann. § 57-12-3.

443.    HP violated NMUPA through its unfair and/or unconscionable trade practices.

444.    HP's deceptive and unfair acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

445.    HP's illegal conduct had a substantial effect on New Mexico commerce.

446.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

447.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

### COUNT LIII

**NEW YORK GEN. BUS. L. §§ 340 ET SEQ.**
**(ON BEHALF OF NEW YORK CLASS MEMBERS)**

448.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

449.     HP illegally acted in restraint of trade in violation of N.Y. Gen. Bus. L. §§ 340, et seq. with respect to transmission of firmware updates to Class members who were New York residents, including Plaintiff Voiles.

450.     HP's actions had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout New York; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

451.     During the Class Period, HP's illegal conduct substantially affected New York commerce.

452.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

453.     By reason of the foregoing, HP has committed unlawful acts in restraint of trade in violation of the New York Donnelly Act, §§ 340, et seq. The conduct set forth above is a per se violation of the Act. Accordingly, members of the Class seek all relief available under New York Gen. Bus. Law §§ 340, et seq.

**COUNT LIV**

## NEW YORK GEN. BUS. L. §§ 349 ET SEQ.
## (ON BEHALF OF NEW YORK CLASS MEMBERS)

454.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

455.    HP illegally acted in restraint of trade in violation of N.Y. Gen. Bus. L. §§ 340, et seq. with respect to transmission of firmware updates to Class members who were New York residents, including Plaintiff Voiles.

456.    HP's actions had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout New York; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

457.    During the Class Period, HP's illegal conduct substantially affected New York commerce.

458.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

459.    By reason of the foregoing, HP has committed unlawful acts in restraint of trade in violation of the New York Donnelly Act, §§ 340, et seq. The conduct set forth above is a per se violation of the Act. Accordingly, members of the Class seek all relief available under New York Gen. Bus. Law §§ 340, et seq.

**COUNT LV**
**NORTH CAROLINA ANTITRUST ACT**
**N.C. GEN. STAT. ANN. §§75-1 ET SEQ.**
**(ON BEHALF OF NORTH CAROLINA CLASS MEMBERS)**

460. The allegations in paragraphs 1-53 are incorporated as if fully stated.

461. By reason of the conduct alleged herein, HP violated N.C. Gen. Stat. §§75-1, et seq.

462. North Carolina Class members purchased HP's printers and ink cartridges within the State of North Carolina.

463. HP's illegal tying scheme had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

464. HP's illegal conduct had a substantial effect on North Carolina commerce.

465. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

466. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LVI
## NORTH DAKOTA UNIFORM STATE ANTITRUST ACT
## N.D. CENTURY CODE §§51-08.1 ET SEQ.
## (ON BEHALF OF NORTH DAKOTA CLASS MEMBERS)

467.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

468.    The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. N.D. Cent. Code §§ 51-08.1, et seq.

469.    North Dakota Class members purchased HP printers and ink cartridges.

470.    Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code § 51-08.1-08.

471.    HP's illegal tying scheme had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

472.    HP's illegal conduct had a substantial effect on North Dakota commerce.

473.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

474.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all

damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

### COUNT LVII
### NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES ACT
### N.D. CENTURY CODE §§51-15-01 ET SEQ.
### (ON BEHALF OF NORTH DAKOTA CLASS MEMBERS)

475.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

476.    The North Dakota Unlawful Sales or Advertising Practices Act prohibits any person from engaging in deceptive acts, including misrepresentation with the intent that others rely on that misrepresentation in connection with the sale or advertisement or any merchandise, and prohibits the use or employment of any unconscionable practice in connection with such a sale. NDDC, 51-15-02.

477.    HP violated the North Dakota Unlawful Sales or Advertising Practices Act through its deceptive and/or unconscionable sales practices.

478.    HP's deceptive and unfair acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

479.    HP's illegal conduct had a substantial effect on North Dakota commerce.

480.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

481.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LVIII**
**OHIO UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**O.R.C. §§ 4165.01 ET SEQ.**
**(ON BEHALF OF OHIO CLASS MEMBERS)**

482.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

483.     Ohio Revised Code § 4165.02 states "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:" "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(3) Causes likelihood of confusionor misunderstanding as to a ffiliation, connection, or association with, or certification by, another;" "(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" and "(11) Advertises goods or services with intent not to sell them as advertised[.]"

484.     HP, Plaintiffs, and Class members are "persons" under the statute. O.R.C. § 4165.01.

485.     HP's deceptive acts violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Ohio; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Ohio; (3) members of the Class were deprived

of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

486.    HP's illegal conduct had a substantial effect on Ohio commerce.

487.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

488.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LIX**
**OKLAHOMA CONSUMER PROTECTION ACT**
**OKLA. STAT. TIT. 15, §§ 751 ET SEQ.**
**(ON BEHALF OF OKLAHOMA CLASS MEMBERS)**

489.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

490.    HP, Plaintiffs, and Class Members are "persons" under the Act. Okla. Stat. tit. 15, § 752.

491.    Oklahoma Statutory Title 15, § 752, states a "'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral[.]"

492.    Oklahoma Statutory Title 15, § 752, states a "Unfair trade practice" means any

practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

493.     Oklahoma Statutory Title 15, § 753, states: "A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person's business, the person" "2. Makes a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;" "3. Makes a false or misleading representation, knowingly or with reason to know, as to affiliation, connection, association with, or certification by another;" "5. Makes a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "8. Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" "12. Employs 'bait and switch' advertising, which consists of an offer to sell the subject of a consumer transaction which the seller does not intend to sell" "20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title[.]"

494.     Within four years preceding the filing of this lawsuit, HP has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in Oklahoma by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

495.     HP's deceptive acts violated the Act and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Oklahoma; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oklahoma; (3) members of the Class were

deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

496.    HP's illegal conduct had a substantial effect on Oklahoma commerce.

497.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

498.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LX**
**OKLAHOMA DECEPTIVE TRADE PRACTICES ACT**
**OKLA. STAT. TIT. 78, §§ 51, ET SEQ.**
**(ON BEHALF OF OKLAHOMA CLASS MEMBERS)**

499.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

500.    Class members are persons who purchased HP printers for personal purposes.

501.    HP, Plaintiffs, and Class members are "persons" under the statute. Okla. Stat. tit. 78, § 52(8).

502.    Oklahoma Statute Title 78, § 53 states "[a] person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person:" "2. Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods or services;" "3. Knowingly makes a false representation as to affiliation, connection, association with, or certification by another;" and "5. Knowingly makes a false representation

as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith[.]"

503.    HP's deceptive acts violated the Act and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Oklahoma; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oklahoma; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

504.    HP's illegal conduct had a substantial effect on Oklahoma commerce.

505.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

506.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

### COUNT LXI
### OREGON UNFAIR PRACTICES LAW
### OREGON REV. STAT. §§646.605 ET SEQ.
### (ON BEHALF OF OREGON CLASS MEMBERS )

507.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

508.    HP, Plaintiffs, and Class Members are "persons" under the law. Or. Rev. Stat.

Ann. § 646.605(4).

509.    Oregon Revised Statute §§ 646.608 states "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:" "(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have." "(s) Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." "(u) Engages in any other unfair or deceptive conduct in trade or commerce."

510.    Oregon Revised Statute §§ 646.638 states "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater."

511.    Within four (4) years preceding the filing of this lawsuit, HP has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in Oregon by engaging in the unlawful, unfair, and deceptive business practices outlined in this Complaint.

512.    HP's deceptive acts violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Oregon; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of

non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

513. HP's illegal conduct had a substantial effect on Oregon commerce.

514. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

515. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

### COUNT LXII
### OREGON ANTITRUST LAW
### OREGON REV. STAT. §§ 646.705 ET SEQ.
### (ON BEHALF OF OREGON CLASS MEMBERS)

516. The allegations in paragraphs 1-53 are incorporated as if fully stated.

517. Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

518. Oregon Class members purchased branded HP printers and ink cartridges within the State of Oregon.

519. Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in

this Complaint. Or. Rev. Stat. § 646.780(1)(a).

520.    HP's illegal tying scheme violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Oregon; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

521.    HP's illegal conduct had a substantial effect on Oregon commerce.

522.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

523.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LXIII
## PENNSYLVANIA UNFAIR TRADE PRACTICES AND
## CONSUMER PROTECTION LAW
## 73 PA. STAT. ANN. § 201-2 ET SEQ.
## (ON BEHALF OF PENNSYLVANIA CLASS MEMBERS)

524.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

525.    Pennsylvania Statute § 201-2 states "'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean any one or more of the following:" "(v) Representing that

goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" "(ix) Advertising goods or services with intent not to sell them as advertised;" and "(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

526.    "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater." 73 Pa. Stat. Ann. § 201-9.2.

527.    HP, Plaintiff Gaddy, and Pennsylvania Class Members are "persons" under the law. 73 Pa. Stat. § 201-2(2), (11).

528.    HP violated the law through the acts described herein, thereby causing damages to the Pennsylvania Class Members, including Plaintiff Leaver.

529.    HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Pennsylvania; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Pennsylvania; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to

reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

530.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

531.

## COUNT LXIV
## RHODE ISLAND ANTITRUST ACT
## R.I. GEN LAWS §§ 6-36-1 ET SEQ.
## (ON BEHALF OF RHODE ISLAND CLASS MEMBERS)

532.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

533.     The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent, or decrease competition. R.I. Gen. Laws § 6-36- 2(a)(2).

534.     Rhode Island Class members purchased HP printers and ink cartridges within the State of Rhode Island.

535.     Under the Rhode Island Antitrust Act, as of July 15, 2013, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws §§ 6-36-7(d), 6-36-11(a).

536.     HP's illegal tying scheme violated the Act and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Class

were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

537. HP's illegal conduct had a substantial effect on Rhode Island commerce.

538. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

539. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LXV**
**RHODE ISLAND UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION ACT**
**R.I. GEN LAWS §§ 6-13.1-1 ET SEQ.**
**(ON BEHALF OF THE RHODE ISLAND CLASS)**

540. The allegations in paragraphs 1-53 are incorporated as if fully stated.

541. HP violated the Rhode Island Unfair Trade Practices and Consumer Protection Act ("UTPCPA"), R.I. Gen. Laws §§6-13.1-1, et seq. through its unfair and/or deceptive practices.

542. Rhode Island Class members purchased HP printers and ink cartridges within Rhode Island during the Class Period.

543. HP's deceptive and unfair acts violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and

91

eliminated throughout Rhode Island; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

544.     HP's illegal conduct had a substantial effect on Rhode Island commerce.

545.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

546.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LXVI
## SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### S.C. CODE ANN. §§ 39-5-10 ET SEQ.
### (ON BEHALF OF THE SOUTH CAROLINA CLASS)

547.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

548.     The South Carolina Unfair Trade Practices Act ("SCUTPA") prohibits any unfair methods of competition and unfair or deceptive trade practices in the conduct of any trade or commerce. S.C. Code Ann. § 39-5-20(a).

549.     South Carolina Class members purchased branded HP printers and ink cartridges within South Carolina.

550.     HP's tying scheme violated the statute and had the following effects: (1)

replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

551.    HP's illegal conduct had a substantial effect on South Carolina commerce.

552.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

553.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LXVIII**
**SOUTH DAKOTA ANTITRUST LAW**
**S.D. CODIFIED LAWS §§ 37-1-3.1 ET SEQ.**
**(ON BEHALF OF SOUTH DAKOTA CLASS MEMBERS)**

554.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

555.    Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade, monopolies, and discriminatory trade practices. S.D. Codified Laws §§ 37-1-3.1, 3.2.

556.    South Dakota Class members purchased HP printers and ink cartridges within the State of South Dakota.

557.    Under South Dakota law, indirect purchasers have standing under the antitrust

93

provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. S.D. Codified Laws § 37-1-33.

558.    HP's tying scheme violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

559.    HP's illegal conduct had a substantial effect on South Dakota commerce.

560.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

561.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LXIX**
**SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND**
**CONSUMER PROTECTION STATUTE**
**S.D. CODIFIED LAWS §§ 37-24-1 ET SEQ.**
**(ON BEHALF OF SOUTH DAKOTA CLASS MEMBERS)**

562.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

563.    HP violated the South Dakota Deceptive Trade Practices and Consumer

94

Protection Statute, S.D. Codified Laws § 37-24-1, et seq., which prohibits "any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby."

564. HP's unlawful, unfair, and/or deceptive trade and business practices were a direct and proximate cause of actual injury to members of the South Dakota Class.

565. HP's deceptive acts violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

566. HP's illegal conduct had a substantial effect on South Dakota commerce.

567. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

568. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LXX**
**TENNESSEE CODE §§ 47-25-101 ET SEQ.**

**(ON BEHALF OF TENNESSEE CLASS MEMBERS)**

569.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

570.    HP has entered into an unlawful acts in restraint of trade in violation of Tenn. Code §§ 47-25-101, et seq. with respect to purchases of HP replacement ink cartridges in Tennessee by Class members and/or purchases by Tennessee residents, including plaintiff Waudby.

571.    HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

572.    During the Class Period, HP's illegal conduct had a substantial effect on Tennessee commerce.

573.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

574.    By reason of the foregoing, HP has taken actions in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, et seq. Accordingly, members of the Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, et seq.

**COUNT LXXI**
**TENNESSEE CODE §§ 47-18-101 ET SEQ.**
**(ON BEHALF OF TENNESSEE CLASS MEMBERS)**

96

575. The allegations in paragraphs 1-53 are incorporated as if fully stated.

576. HP has engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Tenn. Code §§ 47-18-101, et seq. with respect to distribution of firmware updates to Class members.

577. HP's illegal acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

578. During the Class Period, HP's illegal conduct had a substantial effect on Tennessee commerce.

579. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

580. HP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code §§ 47-18-101, et seq., and, accordingly, members of the Class seek all relief available under that statute.

**COUNT LXXII**
**TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**TEX. BUS. & COM. CODE §§ 17.41 ET SEQ.**
**(ON BEHALF OF TEXAS CLASS MEMBERS)**

581.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

582.     HP, Plaintiffs, and Texas Class Members are "persons" under the law. Tex. Bus. & Com. Code § 17.41(3).

583.     Texas Business & Commercial Code § 17.46(a) states "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." 1063. Texas Business & Commercial Code § 17.46(b) further states "'false, misleading, or deceptive acts or practices' includes, but is not limited to" "(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;" "(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertising goods or services with intent not to sell them as advertised;" "(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;" and "(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[.]"

584.     HP's deceptive acts violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Texas; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Texas; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP

98

replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

585. HP's illegal conduct had a substantial effect on Texas commerce.

586. As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

587. Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LXXIII**
**UTAH CONSUMER SALES PRACTICES ACT UTAH CODE §§ 13-11-1 ET SEQ.**
**(ON BEHALF OF UTAH CLASS MEMBERS)**

588. The allegations in paragraphs 1-53 are incorporated as if fully stated.

589. By reason of the conduct alleged herein, HP harmed Utah Class members and violated the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, et seq.

590. HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Utah; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being

99

informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

591.     HP's illegal conduct had a substantial effect on Utah commerce.

592.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

593.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LXXIV**
**VERMONT CONSUMER PROTECTION ACT**
**9 V.S.A. §§ 2451 ET SEQ.**
**(ON BEHALF OF VERMONT CLASS MEMBERS)**

594.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

595.     By reason of the conduct alleged herein, HP violated the Vermont Statutes Annotated 9, §§ 2453 et seq., which prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

596.     Vermont Class members are expressly permitted to recover from HP, even where they have "not dealt directly with the defendant" under 9 V.S.A. §§ 2465.

597.     Vermont Class members purchased HP printers and ink cartridges within the State of Vermont.

598.     HP's deceptive acts violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Vermont; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Class were

deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

599.    HP's illegal conduct had a substantial effect on Vermont commerce.

600.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

601.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LXXV
## VIRGINIA CONSUMER PROTECTION ACT
## VA. CODE ANN. §§ 59.1-196 ET SEQ.
## (ON BEHALF OF THE VIRGINIA CLASS)

602.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

603.    By reason of the conduct alleged herein, HP violated the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 et seq., through its unfair and/or deceptive practices.

604.    The Virginia Class members purchased HP printers and ink cartridges within the State of Virginia, and were injured by HP's violations of the statute.

605.    HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Virginia; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially

high levels throughout Virginia; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

606.    HP's illegal conduct had a substantial effect on Virginia commerce.

607.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

608.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

### COUNT LXXVI
### WASHINGTON CONSUMER PROTECTION ACT
### WASH. REV. CODE ANN. §§ 19.86.010 ET SEQ.
### (ON BEHALF OF WASHINGTON CLASS MEMBERS)

609.    The allegations in paragraphs 1-53 are incorporated as if fully stated.

610.    Under Washington Revised Code §§ 19.86.90, "[a]ny person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee. In addition, the court

may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars: PROVIDED FURTHER, That such person may bring a civil action in the district court to recover his or her actual damages, except for damages which exceed the amount specified in RCW 3.66.020, and the costs of the suit, including reasonable attorney's fees. The district court may, in its discretion, increase the award of damages to an amount not more than three times the actual damages sustained, but such increased damage award shall not exceed twenty-five thousand dollars."

611.    By reason of the conduct alleged herein, HP violated this statute and harmed Washington Class members.

612.    The Washington Class members purchased HP printers and ink cartridges within the State of Washington.

613.    HP's deceptive acts had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Washington; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Washington; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

614.     HP's illegal conduct had a substantial effect on Washington commerce.

615.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

616.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

**COUNT LXXVII**
**WEST VIRGINIA ANTITRUST ACT**
**W. VA. CODE §§ 47-18-1 & W. VA. CSR §§ 142-9-1, 2 ET SEQ.**
**(ON BEHALF OF WEST VIRGINIA CLASS MEMBERS)**

617.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

618.     The violations of federal antitrust law set forth above also constitute violations of section 47-18-1 of the West Virginia Code.

619.     West Virginia Class members purchased HP printers and ink cartridges within the State of West Virginia, and were harmed by HP's tying scheme.

620.     HP's illegal tying scheme violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

621.     HP's illegal conduct had a substantial effect on West Virginia commerce.

622.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

623.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LXXVIII
## WISCONSIN DECEPTIVE TRADE PRACTICES ACT
## WISCONSIN STAT. §§ 100.18 ET SEQ.
## (ON BEHALF OF WISCONSIN CLASS MEMBERS)

624.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

625.     Under Wisconsin Statute § 100.18(1), "[n]o person, firm, corporation or association, or agent or employee thereof" may sell goods or services based on any "advertisement, announcement, statement or representation" that "contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

626.     Wisconsin Class members purchased HP printers and ink cartridges within the State of Wisconsin, and were harmed by HP's tying scheme.

627.     HP's deceptive acts, as described herein, violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been

compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

628.     HP's illegal conduct had a substantial effect on Wisconsin commerce.

629.     As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

630.     Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LXXIX
## WISCONSIN ANTITRUST LAW
## WISCONSIN STAT. §§ 133.01 ET SEQ.
## (ON BEHALF OF WISCONSIN CLASS MEMBERS)

631.     The allegations in paragraphs 1-53 are incorporated as if fully stated.

632.     The violations of federal antitrust law set forth above also constitute violations of section 133.01 of the Wisconsin Statutes.

633.     Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

634.     Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

635.     Wisconsin Class members purchased HP printers and ink cartridges within the

State of Wisconsin, and were harmed by HP's tying scheme.

636.   HP's illegal tying scheme violated the statute and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

637.   HP's illegal conduct had a substantial effect on Wisconsin commerce.

638.   As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

639.   Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## COUNT LXXX
## WYOMING CONSUMER PROTECTION ACT
## WYOMING STAT. §§ 40-12-101 ET SEQ.
## (ON BEHALF OF WYOMING CLASS MEMBERS)

640.   The allegations in paragraphs 1-53 are incorporated as if fully stated.

641.   Wyoming Class Members are "persons" under the Wyoming Consumer Protection Act. Wyo. Stat. § 40-12-102.

642.   Under Wyoming Statute § 40-12-105, "A person engages in a deceptive trade

practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly:" "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;" "(iv) Represents that merchandise is available to the consumer for a reason that does not exist;" "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not; except that this subsection does not apply to merchandise supplied to the recipient by mistake or merchandise of equal or greater value supplied as a reasonably equivalent substitute for unavailable merchandise previously ordered by the recipient;" "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false;" "(x) Advertises merchandise with intent not to sell it as advertised;" or "(xv) Engages in unfair or deceptive acts or practices[.]"

643.    "A person relying upon an uncured unlawful deceptive trade practice may bring an action under this act for the damages he has actually suffered as a consumer as a result of such unlawful deceptive trade practice." Wyo. Stat. § 40-12-108.

644.    Wyoming Class members purchased HP printers and ink cartridges within the State of Wyoming, and were harmed by HP's tying scheme.

645.    HP's deceptive acts violated the Act and had the following effects: (1) replacement ink cartridge price competition was restrained, suppressed, and eliminated throughout Wyoming; (2) replacement ink cartridge prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wyoming; (3) members of the Class were deprived of free and open competition; (4) members of the Class unfairly lost the value of non-HP replacement ink cartridges they purchased and which would have been compatible with their printers but for HP's firmware updates; (5) members of the Class bought HP's

printers without being informed of HP's intent to reduce or eliminate the printers' ability to use third-party ink cartridges; (6) members of the Class were coerced into paying supracompetitive, artificially inflated prices for HP's replacement ink cartridges.

646.    HP's illegal conduct had a substantial effect on Wyoming commerce.

647.    As a direct and proximate result of HP's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

648.    Accordingly, Plaintiffs and the Class seek all forms of relief, including all damages available under the statute, as well as reasonable attorneys' fees, costs, and injunctive relief available.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of the Class of all others similarly situated, seeks a judgment against HP, as follows:

a.    For an order certifying the Classes described above under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

b.    For an order declaring that HP's conduct violates the statutes referenced herein;

c.    For an injunction requiring HP to disable the firmware updates to the extent they precluded the use of non-HP branded replacement ink cartridges in HP printers;

d.    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

e.    For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

f.    For prejudgment interest on all amounts awarded;

g.    For an order of restitution and all other forms of equitable monetary relief;

h.    For injunctive relief as pleaded or as the Court may deem proper; and

i.    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses and costs incurred in bringing and prosecuting this lawsuit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: January 5, 2024.

Respectfully submitted,

*/s/ S. Jarret Raab*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

S. Jarret Raab
IL ARDC No.: 6294632
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
jraab@milberg.com
ralves@milberg.com

Peggy J. Wedgworth**
100 Garden City Pl – Ste 500
Garden City, NY 11530
Tel: 212-594-5300
pwedgworth@milberg.com
ralves@milberg.com

Arthur Stock**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
astock@milberg.com
ralves@milberg.com

Jimmy W. Mintz**
Milberg Coleman Bryson Phillips Grossman, PLLC
201 Sevilla Avenue, Suite 200
Coral Gables, FL 33134
Tel.: (786) 879-8200
Fax: (786) 879-7572
jmintz@milberg.com
ralves@milberg.com

*\*\*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Proposed Class*