## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RENEE ROBINSON, RICHARD MYERS, ANNETTE FIRST, CASEY GADDY, STEVEN GOUISIE, ROBERT PLUNKETT, FRANCOIS STEIGER, JAMES ULRICH, GABRIEL VOILES, JOHN WAUDBY, and LAKESHA WELLS, on behalf of themselves and all others similarly situated, | Case No. 1:24-cv-00164 |
| *Plaintiffs*, | Judge Martha M. Pacold |
| v. | |
| HP INC., a Delaware corporation, | |
| *Defendant*. | |

## HP'S MEMORANDUM IN SUPPORT OF
## <u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. PLAINTIFFS' ALLEGATIONS ........................................................................... 4

III. LEGAL STANDARD ........................................................................................... 6

IV. ARGUMENT ........................................................................................................ 6

    A. Plaintiffs' Antitrust Claims Should Be Dismissed For Failure To Plausibly Plead The Existence Of A Relevant Aftermarket. ................................. 6

        1. Legal Standard For Pleading The Existence Of A Single-brand Aftermarket. .................................................................................. 7

        2. Plaintiffs Have Not Plausibly Alleged A Relevant Aftermarket. ............... 9

    B. Plaintiffs' Antitrust Claims Should Be Dismissed For Numerous Additional Reasons. ........................................................................................ 15

        1. Plaintiffs Fail To Plausibly Allege Tying Under Section 1 Of The Sherman Act And Analogous State Statutes. ............................................. 15

        2. Plaintiffs Fail To Plead Exclusionary Conduct Under Section 2 Of The Sherman Act And Analogous State Statutes. .................................... 19

        3. Plaintiffs Cannot Recover Damages For Alleged Overcharges Under The Federal Antitrust Laws Because They Are Not Direct Purchasers. ................................................................................. 20

    C. Plaintiffs' CFAA Claim Should Be Dismissed For Failure To State A Claim. ............................................................................................................... 21

        1. Plaintiffs Have Not Plausibly Alleged That HP Acted "Without Authorization" Or "Exceed[ed] Authorized Access." ............................. 21

        2. Plaintiffs Have Not Plausibly Alleged That HP Obtained Information From Their Printers. ............................................................... 23

        3. Plaintiffs Have Not Plausibly Alleged A Loss Of $5,000 Or More. ........ 24

    D. Plaintiffs' Claims Under The Laws Of States In Which They Do Not Live And For Printer Models They Did Not Purchase Should Be Dismissed For Lack Of Standing. ...................................................................................... 25

        1. Plaintiffs Lack Standing To Bring Claims Under The Laws Of States To Which They Have No Connection. ............................................ 26

        2. Plaintiffs Lack Standing To Represent Purchasers Of Printer Models They Did Not Purchase. ................................................................ 27

    E. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. ............................... 29

    F. Plaintiffs Have Not Stated A Claim Under Any Of The 75 State Statutes

Asserted In Their Complaint.................................................................. 31

    1.    Plaintiffs Have Not Plausibly Alleged a Violation Of Any State Antitrust Laws............................................................................. 31

    2.    Plaintiffs Have Not Plausibly Alleged That HP Violated Consumer Protection Statutes. .................................................................. 33

V.    CONCLUSION ........................................................................................ 40

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.O. Smith Corp. v. Lewis, Overbeck & Furman*,
  979 F.2d 546 (7th Cir. 1992) ....................................................................18

*Abbot Labs., Inc. (Ross Labs. Div.) v. Segura*,
  907 S.W.2d 503 (Tex. 1995) .....................................................................39

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  4 F. Supp. 3d 1123 (D. Ariz. 2014) ...........................................................32

*In re Aftermarket Filters Antitrust Litig.*,
  2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ...............................................29

*In re Aggrenox Antitrust Litig.*,
  2016 WL 4204478 (D. Conn. Aug. 9, 2016) ...............................................39

*In re Aggrenox Antitrust Litig.*,
  94 F. Supp. 3d 224 (D. Conn. 2015) ..........................................................35

*In re Aluminum Warehousing Antitrust Litig.*,
  2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014).....................................34, 38

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric
  Surgery, Inc.*,
  185 F.3d 606 (6th Cir. 1999) .....................................................................32

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019).............................................................................20

*Appraisers Coal. v. Appraisal Inst.*,
  845 F. Supp. 592 (N.D. Ill. 1994) ..............................................................16

*In re Aqua Dots Prod. Liab. Litig.*,
  270 F.R.D. 377 (N.D. Ill. 2010)...........................................................29, 30

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*,
  171 F. Supp. 3d 1092 (D. Colo. 2016) .......................................................32

*Arnold v. Microsoft Corp.*,
  2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001) ......................................39

*Arreola v. Godinez*,
  546 F.3d 788 (7th Cir. 2008) .....................................................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................6, 34

*Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*,
    2020 WL 5642941 (N.D. Ill. Sept. 22, 2020) ........................................................7

*Auburn News Co. v. Providence J. Co.*,
    659 F.2d 273 (1st Cir. 1981) ...................................................................................32

*Bakopoulos v. Mars Petcare US, Inc.*,
    2021 WL 2915215 (N.D. Ill. July 12, 2021) .................................................3, 27, 28

*Ball Mem. Hosp., Inc. v. Mutual Hosp. Ins., Inc.*,
    784 F.2d 1325 (7th Cir. 1986) ...............................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................6, 34

*Bell v. City of Chi.*,
    835 F.3d 736 (7th Cir. 2016) .................................................................................34

*Boulware v. State of Nev., Dep't of Hum. Res.*,
    960 F.2d 793 (9th Cir. 1992) .................................................................................32

*Brodsky v. Aldi Inc.*,
    2021 WL 4439304 (N.D. Ill. Sept. 28, 2021) ........................................................28

*In re Broiler Chicken Antitrust Litig.*,
    2020 WL 4032932 (N.D. Ill. July 15, 2020) ..........................................................31

*Brown v. Auto-Owners Ins. Co.*,
    2022 WL 2442548 (N.D. Ill. June 1, 2022) .....................................................25, 26

*Byre v. City of Chamberlain*,
    362 N.W.2d 69 (S.D. 1985) ..................................................................................32

*Cardin v. NewRez LLC*,
    637 F. Supp. 3d 581 (N.D. Ill. 2022) ....................................................................30

*Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.*,
    758 F.2d 203 (7th Cir. 1985) ...............................................................3, 16, 18, 20

*City of Tuscaloosa v. Harcros Chems. Inc.*,
    158 F.3d 548 (11th Cir. 1998) ...............................................................................32

*Cohen v. Am. Sec. Ins. Co.*,
    735 F.3d 601 (7th Cir. 2013) .................................................................................30

*Condesa Del Mar, Inc. v. White Way Sign & Maint. Co.*,
    1987 WL 17474 (N.D. Ill. Sept. 24, 1987) ...........................................................16

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) .................................................................................36

*Coronavirus Reporter v. Apple Inc.*,
    85 F.4th 948 (9th Cir. 2023) ...................................................................................9

*Cowen v. Lenny & Larry's, Inc.*,
  2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)......................................................................28

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*,
  828 N.W.2d 147 (Neb. 2013)..........................................................................................32

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ...................................................................26

*Davric Maine Corp. v. Rancourt*,
  216 F.3d 143 (1st Cir. 2000)............................................................................................32

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  313 F. Supp. 3d 931 (N.D. Ill. 2018)..............................................................2, 8, 9, 11

*Dial A Car, Inc. v. Transp., Inc.*,
  884 F. Supp. 584 (D.D.C. 1995)......................................................................................32

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.*,
  73 F.3d 756 (7th Cir. 1996)..........................................................................................8, 12

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
  504 U.S. 451 (1992)..........................................................................2, 8, 9, 10, 11, 19

*In re Elec. Books Antitrust Litig.*,
  2014 WL 2535112 (S.D.N.Y. June 5, 2014) ...................................................................32

*Emergency One, Inc. v. Waterous Co.*,
  23 F. Supp. 2d 959 (E.D. Wis. 1998)...............................................................................33

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) .......................................................2, 9, 10, 13, 14, 16

*Evans v. Ameriquest Mortg. Co.*,
  2003 WL 734169 (Mich. Ct. App. Mar. 4, 2003).............................................................37

*Feitler v. Animation Celection, Inc.*,
  170 Or. App. 702 (2000)..................................................................................................38

*Finstad v. Washburn Univ. of Topeka*,
  845 P.2d 685 (Kan. 1993)................................................................................................37

*Fishman v. Est. of Wirtz*,
  807 F.2d 520 (7th Cir. 1986) .............................................................................................7

*Flaherty v. Clinique Labs. LLC*,
  2021 WL 5299773 (N.D. Ill. Nov. 15, 2021) ..................................................................28

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
  703 F.2d 534 (9th Cir. 1983) ...........................................................................................16

*Furlough v. Spherion Atl. Workforce LLC*,
  397 S.W.3d 114 (Tenn. 2013)..........................................................................................30

*Goldwasser v. Ameritech Corp.*,
    222 F.3d 390 (7th Cir. 2000) ...................................................................................19

*Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*,
    850 N.W.2d 682 (Minn. 2014)..................................................................................37

*Halperin v. Int'l Web Servs., LLC*,
    70 F. Supp. 3d 893 (N.D. Ill. 2014) .........................................................................24

*Hinkleman v. Shell Oil Co.*,
    962 F.2d 372 (4th Cir. 1992), *as amended* (July 21, 1992) ....................................32

*Hoffman v. Stamper*,
    843 A.2d 153 (Md. Ct. Spec. App. 2004) .................................................................37

*Hooked Media Grp., Inc. v. Apple Inc.*,
    55 Cal. App. 5th 323 (2020) .....................................................................................30

*Hughes v. Northwestern Univ.*,
    63 F.4th 615 (7th Cir. 2023) ...................................................................................1, 6

*Ibarolla v. Nutrex Research., Inc.*,
    2013 WL 672508 (N.D. Ill. Feb. 25, 2013) ..............................................................34

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)..................................................................................................21

*Jackson v. Dole Packaged Foods, LLC*,
    648 F. Supp. 3d 1039 (S.D. Ill. 2022) ......................................................................27

*Jensen v. Cablevision Sys. Corp.*,
    2017 WL 4325829 (E.D.N.Y. Sept. 27, 2017) .........................................................24

*Jones v. City of McMinnville*,
    244 Fed. App'x 755 (9th Cir. 2007) .........................................................................32

*Kaminski v. Elite Staffing, Inc.*,
    23 F.4th 774 (7th Cir. 2022) .....................................................................................23

*Kerns v. Range Res.—Appalachia, LLC*,
    2011 WL 3753117 (N.D.W. Va. Aug. 23, 2011)......................................................33

*Kuehn v. Stanley*,
    91 P.3d 346 (Ariz. Ct. App. 2004) ...........................................................................37

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ..............................................................................................37

*Lambrix v. Tesla, Inc.*,
    2023 WL 8265916 (N.D. Cal. Nov. 17, 2023) ...........................................................9

*Lantz v. Am. Honda Motor Co.*,
    2007 WL 1424614 (N.D. Ill. May 14, 2007).............................................................27

*State ex rel. Leech v. Levi Strauss & Co.*,
   1980 WL 4696 (Tenn. Ch. Sept. 25, 1980).............................................................32

*Leeder v. Nat'l Ass'n of Realtors*,
   601 F. Supp. 3d 301 (N.D. Ill. 2022) ....................................................................31

*Link v. Mercedes-Benz of North America, Inc.*,
   788 F.2d 918 (3d Cir. 1986)..................................................................................21

*Little Caesar Enters., Inc. v. Smith*,
   34 F. Supp. 2d 459 (E.D. Mich. 1998)............................................................10, 12

*In re Loestrin 24 FE Antitrust Litig.*,
   410 F. Supp. 3d 352 (D.R.I. 2019).........................................................................30

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................25

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ........................................................................21, 25

*Major v. Microsoft Corp.*,
   60 P.3d 511 (Okla. Civ. App. 2002) ......................................................................39

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
   29 F.4th 337 (7th Cir. 2022) ..................................................................................18

*Mayberry v. Bristol-Myers Squibb Co.*,
   2009 WL 5216968 (D.N.J. Dec. 30, 2009) ...........................................................37

*Mich. Division-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
   524 F.3d 726 (6th Cir. 2008) ..................................................................................9

*Midwest Com. Banking Co. v. Elkhart City Ctr.*,
   4 F.3d 521 (7th Cir. 1993) .....................................................................................36

*Minuteman, LLC v. Microsoft Corp.*,
   795 A.2d 833 (N.H. 2002) .....................................................................................32

*Mobile Emergency Hous. Corp. v. HP, Inc.*,
   2021 WL 9867952 (N.D. Cal. Oct. 15, 2021)........................................................23

*Mount v. PulsePoint, Inc.*,
   2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) .......................................................24

*N. Pac. R. Co. v. United States*,
   356 U.S. 1 (1958) ..................................................................................................15

*N.C. Steel, Inc. v. Nat'l Council on Comp. Ins.*,
   472 S.E.2d 578 (N.C. Ct. App. 1996) ...................................................................32

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ...............................................................................32

*In re Namenda Indirect Purchaser Antitrust Litig.*,
2021 WL 2403727 (S.D.N.Y June 11, 2021) ...........................................32

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
513 F.3d 1038 (9th Cir. 2008) ...........................................................8

*Novell v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013) .........................................................19

*Nucap Indus., Inc. v. Robert Bosch LLC*,
273 F. Supp. 3d 986 (N.D. Ill. 2017) ...................................................7

*In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*,
491 F.3d 638 (7th Cir. 2007) ...........................................................36

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)................................................................7, 15

*In re Opana ER Antitrust Litig.*,
162 F. Supp. 3d 704 (N.D. Ill. 2016) ..............................................29, 34

*In re Opana ER Antitrust Litig.*,
2016 WL 4245516 (N.D. Ill. Aug. 11, 2016) ...........................................31

*Outboard Marine Corp. v. Superior Court*,
52 Cal. App. 3d 30 (1975) .............................................................40

*Owens v. DRS Auto. Fantomworks, Inc.*,
764 S.E.2d 256 (2014) ................................................................38

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*,
428 F.3d 504 (3d Cir. 2005)...........................................................23

*Pable v. Chicago Transit Authority*,
615 F. Supp. 3d 842 (N.D. Ill. 2022) .................................................22

*Padilla v. Costco Wholesale Corp.*,
2012 WL 2397012 (N.D. Ill. June 21, 2012) ...........................................27

*Par v. Wolfe Clinic, P.C.*,
2022 WL 2187858 (S.D. Iowa May 10, 2022) ...........................................32

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*,
866 F.2d 228 (7th Cir. 1988) ..........................................................13

*Parziale v. HP, Inc. (Parziale I)*,
445 F. Supp. 3d 435 (N.D. Cal. 2020) .....................................2, 10, 24, 36

*Parziale v. HP, Inc (Parziale II)*,
2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ..........................................36

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) ....................................................25, 26, 28

*Pearson v. Target Corp.*,
  2012 WL 7761986 (N.D. Ill. Nov. 9, 2012) .........................................................27

*Photovest Corp. v. Fotomat Corp.*,
  606 F.2d 704 (7th Cir. 1979) ...............................................................................18

*Princess Cruise Lines, Ltd. v. Superior Court*,
  179 Cal. App. 4th 36 (Ct. App. 2009).................................................................37

*PSI Repair Servs., Inc. v. Honeywell, Inc.*,
  104 F.3d 811 (6th Cir. 1997) ...................................................................10, 11, 12

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
  615 F.3d 412 (5th Cir. 2010) ...........................................................................2, 8

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997)..............................................................................7, 8

*Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.*,
  2009 WL 3150984 (D.S.D. Sept. 28, 2009).........................................................38

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*,
  87 F. Supp. 3d 874 (N.D. Ill. 2015) ..................................................................2, 8

*Robinson-Bock Distrib. Co. v. Pioneer/Eclipse Corp.*,
  1993 WL 326365 (7th Cir. Aug. 25, 1993)............................................................8

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
  661 F. Supp. 2d 218 (E.D.N.Y. 2009) .................................................................32

*Sandee's Catering v. Agri Stats, Inc.*,
  2020 WL 6273477 (N.D. Ill. Oct. 26, 2020).......................................................29

*Santagate v. Tower*,
  833 N.E.2d 171 (Mass. App. Ct. 2005) ...............................................................30

*In re Sears, Roebuck & Co.*,
  2006 WL 3754823 (N.D. Ill. Dec. 18, 2006).......................................................29

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
  950 F.3d 911 (7th Cir. 2020) ...............................................................7, 14, 16

*Siva v. Am. Bd. Of Radiology*,
  38 F.4th 569 (7th Cir. 2022) ................................................................................15

*Smith Mach. Corp. v. Hesston, Inc.*,
  694 P.2d 501 (1985)..............................................................................................32

*Smith-Brown v. Ulta Beauty, Inc.*,
  2019 WL 932022 (N.D. Ill. Feb. 26, 2019) .........................................................27

*SMS Sys. Maint. Servs. v. Digital Equip.*,
  188 F.3d 11 (1st Cir. 1999)....................................................................................8

*Sonner v. Premier Nutrition Corp.*,
　971 F.3d 834 (9th Cir. 2020) ............................................................................40

*Spectrum Sports, Inc. v. McQuillan*,
　506 U.S. 447 (1993) ..........................................................................................19

*Spinner Consulting LLC v. Stone Point Cap. LLC*,
　843 F. App'x 411 (2d Cir. 2021) ......................................................................32

*In re Tamoxifen Citrate Antitrust Litig.*,
　277 F. Supp. 2d 121 (E.D.N.Y. 2003), *aff'd*, 466 F.3d 187 (2d Cir. 2006)............38

*Tiismann v. Linda Martin Homes Corp.*,
　637 S.E.2d 14 (Ga. 2006) ..................................................................................37

*TMT Mgmt. Grp., LLC v. U.S. Bank Nat'l Ass'n*,
　940 N.W.2d 239 (Minn. Ct. App. 2020) ...........................................................32

*Toulon v. Cont'l Cas. Co.*,
　2016 WL 561909 (N.D. 111. Feb. 12, 2016) ....................................................30

*United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*,
　390 F. Supp. 3d 892 (N.D. Ill. 2019) ..................................................................7

*United States v. Czubinski*,
　106 F.3d 1069 (1st Cir. 1997) ...........................................................................23

*United States v. Furando*,
　40 F.4th 567 (7th Cir. 2022) ........................................................................25, 26

*United States v. Microsoft Corp.*,
　253 F.3d 34 (D.C. Cir. 2001) ............................................................................16

*Valencia v. Volkswagen Grp. of Am. Inc.*,
　119 F. Supp. 3d 1130 (N.D. Cal. 2015) ............................................................37

*Van Buren v. United States*,
　141 S. Ct. 1648 (2021) ..........................................................................3, 21, 22

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
　540 U.S. 398 (2004) ..........................................................................................20

*Viamedia, Inc. v. Comcast Corp.*,
　951 F.3d 429 (7th Cir. 2020) ......................................................................19, 20

*Weaver v. Champion Petfoods USA Inc.*,
　3 F.4th 927 (7th Cir. 2021) ...............................................................................28

*WHIC LLC v. NextGen Labs., Inc.*,
　2019 WL 2717769 (D. Haw. June 28, 2019) ....................................................32

*Will v. Comprehensive Acct. Corp.*,
　776 F.2d 665 (7th Cir. 1985) ............................................................................17

*Willard v. Tropicana Mfg. Co., Inc.*,
  577 F. Supp. 3d 814 (N.D. Ill. 2021) .................................................................28

*Wilson Area Sch. Dist. v. Skepton*,
  895 A.2d 1250 (Pa. 2006) .................................................................................30

*Xerox Corp. v. Media Scis., Inc.*,
  660 F. Supp. 2d 535 (S.D.N.Y. 2009) ..............................................................13

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
  854 A.2d 425 (Pa. 2004) ...................................................................................38

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ..............................................................38

**Statutes**

15 U.S.C. § 2 .........................................................................................................19

18 U.S.C. § 1030(a)(2)(C) .....................................................................................21

18 U.S.C. § 1030(a)(4) ...........................................................................................21

18 U.S.C. § 1030(c)(4)(A)(i)(I) ..............................................................................24

18 U.S.C. § 1030(g) ................................................................................................24

Ark. Code § 4-88-113(f)(1)(2) ...............................................................................37

Ga. Code § 10-1-399(b) ..........................................................................................39

Ind. Code § 24-5-0.5-3(b)(17) ................................................................................35

Ind. Code § 24-5-0.5-4(a) .......................................................................................37

Ind. Code § 24-5-0.5-5 ............................................................................................39

Iowa Code Ann. § 714.16(7) ..................................................................................37

Mass. Gen. Laws ch. 93A, § 9(3) ..........................................................................39

Me. Rev. Stat. Ann. tit. 5 § 213(1-A) .....................................................................39

Mich. Stat. § 445.903(1)(s) .....................................................................................37

Minn. Stat. § 325F.44 .............................................................................................35

Miss. Code § 75-24-15(2) .......................................................................................39

Tex. Bus. & Com. Code § 17.505 ...........................................................................39

Texas Bus. & Com. Code § 17.50(a)(1)(B) ...........................................................38

Vt. Stat. Ann. tit. 9, § 2461 ....................................................................................38

Wyo. Stat. Ann. § 40-12-108 ........................................................................................38

Wyo. Stat. Ann. § 40-12-109 ........................................................................................39

**Other Authorities**

1 McLaughlin on Class Actions § 4:28 (18th ed.) .........................................................26

*Hardcopy peripherals vendor market share worldwide*, Statista (April 25, 2023),
    http://tinyurl.com/29y9sa74 ....................................................................................17

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
    Principles and Their Applications* (2023)
    ........................................................................................10, 11, 13, 14, 18, 21

## I.     INTRODUCTION

The central premise of Plaintiffs' case is that HP failed to disclose to consumers that their printers were equipped with "dynamic security" measures designed to prevent the use of third-party printer cartridges that copy HP's security chips (i.e., cloned or counterfeit cartridges). Plaintiffs allege that HP's failure to disclose these measures caused consumers to be locked into an "aftermarket" for HP replacement ink cartridges, which resulted in consumers incurring some form of overcharge.  The reality is that many third-party cartridges are not affected by dynamic security.  HP does not block cartridges that reuse HP security chips, and there are many such options available for sale.  Nor does HP conceal its use of dynamic security.  To the contrary, HP goes to great lengths to disclose that its printers are intended to work only with cartridges that have an HP chip, and that they may not work with third-party cartridges that do not have an HP chip. This information is displayed in clear terms on the printer box, on HP's website, and in many other materials.  But even ignoring these facts and accepting Plaintiffs' allegations as true, Plaintiffs' claims fail out of the gate because they do not plausibly allege the existence of a relevant aftermarket for purposes of their antitrust claims, and their vague allegations do not state a claim under any of the myriad laws in their pleading.

Nowhere in Plaintiffs' 648-paragraph complaint do they allege HP ever represented that its printers would work with cartridges with non-HP chips.  Nor do they allege that HP does *not* in fact disclose that cartridges with non-HP chips may not function in HP printers.  Instead, Plaintiffs offer vague allegations about what HP did or did not disclose in specified places.  *See* Compl. ¶ 90. The "obvious alternative explanation" for Plaintiffs' failure to allege in any direct way that HP does not disclose to consumers its use of dynamic security measures is that HP does in fact make such disclosures.  *Hughes v. Northwestern Univ.*, 63 F.4th 615, 628-30 (7th Cir. 2023).  As one court has found, HP's disclosures about dynamic security are "sufficient to allow a reasonable

consumer to anticipate any impending harm caused by a printer with limited compatibility with non-HP cartridges." *Parziale v. HP, Inc. (Parziale I)*, 445 F. Supp. 3d 435, 447 (N.D. Cal. 2020). Plaintiffs' failure to allege that HP does not disclose that HP printers are not intended to work with cartridges using non-HP chips renders their allegations implausible across all their claims.

For this and numerous other reasons, the Court should dismiss all 79 causes of action.

***Plaintiffs' antitrust claims should be dismissed.*** Plaintiffs' antitrust claims should be dismissed because Plaintiffs have not plausibly alleged the existence of a relevant aftermarket for ink cartridges for HP printers. A single brand may constitute a relevant market only in "rare circumstances." *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 887 (N.D. Ill. 2015) (quoting *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010)). To sufficiently plead an aftermarket, Plaintiffs must allege that HP locked consumers in to buying HP cartridges. Specifically, they must allege that (1) consumers' alleged inability to use cartridges with non-HP chips was "not generally known" when they bought their printers; (2) "significant" information costs prevented consumers from being able to calculate the "life-cycle" cost of HP printers and cartridges; (3) there are "significant" costs to switch from HP printers to those of another brand; and (4) there is a relevant market for printers in the United States in which HP has market power, and cartridges for HP printers in that so-called market are reasonably interchangeable with each other. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 962 (N.D. Ill. 2018) (construing *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992)); *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023). Plaintiffs have not plausibly alleged any of these elements—which dooms all of their antitrust claims.

Plaintiffs' antitrust claims should be dismissed for other reasons as well. Plaintiffs allege that HP "tied" its cartridges to its printers in a purported "U.S. market for printers." Compl. ¶ 19.

But they do not state a tying claim because they do not plausibly allege that the "U.S. market for printers" is a relevant market; that there is a relevant aftermarket for ink cartridges for use in HP printers; that HP required customers to refrain from buying non-HP cartridges in order to buy an HP printer; or that Plaintiffs agreed to do so. *See Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 207 (7th Cir. 1985). Nor do Plaintiffs plausibly allege that HP otherwise had a duty to make its printers compatible with all third-party cartridges. And Plaintiffs do not have standing to seek damages under federal antitrust law because they do not allege that they purchased cartridges directly from HP, as they must.

   ***Plaintiffs' hacking claims should be dismissed.*** Plaintiffs bring a claim under the Consumer Fraud and Abuse Act ("CFAA")—a statute "aimed at preventing the typical consequences of hacking." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021). This statute is inapposite—by no stretch of the imagination can a firmware update that Plaintiffs granted HP permission to install, Compl. ¶¶ 24, 31, be classified as computer hacking. Plaintiffs do not plausibly allege, as they must to state a CFAA claim, that they did not authorize the alleged firmware updates, that HP took data from their printers, or that each supposed "hack"—that is, each firmware update—caused each Plaintiff a $5,000 loss.

   ***Plaintiffs lack Article III standing as to a number of their claims.*** Plaintiffs' claims should also be dismissed under Rules 12(b)(1) and 12(b)(6) because they lack Article III standing to bring claims under the laws of 43 states in which they do not live and to which they allege no connection. Plaintiffs also purport to bring claims related to 36 printer models they did not purchase. Compl. ¶¶ 6–16, 44. Plaintiffs have "no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products" as well. *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021).

***Plaintiffs' state-law claims should be dismissed for a number of other reasons.*** Plaintiffs' unjust enrichment claim should be dismissed because they do not even allege which state's laws they bring that claim under; they do not allege that HP provided them with any direct benefit or that they purchased cartridges directly from HP; Plaintiffs formed contracts with HP that govern the same alleged conduct as their unjust enrichment claim; and Plaintiffs have an adequate remedy at law. And Plaintiffs' claims under state consumer-protection statutes fail Rule 12(b)(6) scrutiny because they are pled in a conclusory manner. To the extent these claims are premised on purported misrepresentations, they should be dismissed because Plaintiffs do not allege an actionable omission or reliance. To the extent these claims are premised on the same conduct as Plaintiffs' antitrust claims, they should be dismissed for the same reasons as those claims. Moreover, Plaintiffs do not allege that they provided pre-suit notice to HP, as required by a number of their state-law claims, or that Plaintiffs lack an adequate remedy at law.

The Court should grant this motion in full and dismiss Plaintiffs' complaint.

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs are 11 individuals in nine different states who purchased HP printers between 2016 and 2023. Compl. ¶¶ 6–16. They allege that, in 2022 and 2023, HP "distributed updates to many of its registered customers" that "disabled the printer if the customer replaced the existing cartridge with a non-HP cartridge." *Id.* ¶ 27. After these updates, "many" Plaintiffs "purchased replacement cartridges" that were "not HP-branded." *Id.* ¶ 28. When they attempted to print, their printers allegedly did not work. They received a message that "[t]he indicated cartridges have been blocked by the printer firmware because they contain a non-HP chip" and that "[t]his printer is intended to work only with new or reused cartridges that have a new or reused HP chip." *Id.*

Plaintiffs maintain that, prior to viewing this error message, they did not see any disclosure by HP about the compatibility of cartridges with non-HP chips with their printers. They allege

4

that they did not receive "any warning at the time of the firmware update or at the time of the purchase of a printer" that they "might lose the ability to use non-HP replacement ink cartridges." Compl. ¶ 31. Elsewhere, they similarly allege that HP "did not inform them of its intent to use firmware updates to disable third-party ink cartridges, either in its packaging, its End User License Agreement, or its Limited Warranty." *Id.* ¶ 90. But while Plaintiffs state that they did not receive or view warnings, they never clearly allege that HP did not disclose that cartridges with chips not manufactured by HP may not work in HP printers.

Plaintiffs also do not allege that they did not authorize firmware updates in their printers. To the contrary, they allege that they entered into software licensing agreements with HP through which they agreed to receive updates released "for the purposes of improving printer performance and security." Compl. ¶ 24. They further allege that the complained-of practices are longstanding—HP "ha[s] a long history of using software to prevent owners of its printers from using competitors' ink cartridges." *Id.* ¶ 20. They allege that HP "used software it called 'Dynamic Security' that functionally prevented the use o[f] any non-HP replacement ink cartridge in some printer models" from 2010 through 2015, before temporarily "discontinu[ing]" the practice. *Id.* ¶¶ 20, 27. Many Plaintiffs also allege that they purchased HP-branded ink cartridges after receiving the software or firmware updates, and that their printers began to again function properly. *Id.* ¶¶ 6–16. But while two Plaintiffs allege that they purchased ink cartridges directly from HP at some time, *id.* ¶¶ 9, 12, none alleges that they purchased ink cartridges directly from HP after the non-HP cartridges they were using stopped working in their printer, *see id.* ¶¶ 6–16.

Plaintiffs bring 79 causes of action. Compl. pp. 16–109.[1] These include a claim under the CFAA; claims under the Sherman Antitrust Act for tying and monopolization; a claim for unjust

---

[1] The complaint lists 80 counts, but there is no count 67.

enrichment; and 75 claims under various state statutes. *Id.* They purport to bring these claims on behalf of two putative classes. *Id.* ¶ 44. The first, an "HP Ink Purchaser Class," is composed of persons who purchased an "HP-branded replacement ink cartridge" for any one of 43 different printer models between September 2022 and the present. *Id.* The second, a "Firmware Update Class," is composed of persons who purchased a "*non* HP-branded replacement ink cartridge" for the same printer models over the same time period, and who were "unable to use [those models] because of the effects of the series of firmware update[s]." *Id.* (emphasis added).

## III.   LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) if it lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is not plausible where there is an "obvious alternative explanation" for the alleged conduct that the complaint fails to rule out. *Hughes*, 63 F.4th 615, at 628–30. Although a facially plausible claim need not provide "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.   ARGUMENT

The Court should dismiss all 79 of Plaintiffs' causes of action, including their antitrust claims, CFAA claim, and state unjust enrichment and consumer protection claims.

**A.    Plaintiffs' Antitrust Claims Should Be Dismissed For Failure To Plausibly Plead The Existence Of A Relevant Aftermarket.**

To state a claim under Section 1 or Section 2 of the Sherman Act, a plaintiff must define a

relevant antitrust market and allege that the defendant has power in that market. *Fishman v. Est. of Wirtz*, 807 F.2d 520, 531 (7th Cir. 1986). Market definition is an essential predicate because "without a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition." *Ohio v. Am. Express Co*. ("*Amex*"), 585 U.S. 529, 543 (2018) (alterations omitted). Because Plaintiffs have failed to adequately plead the existence of a relevant "aftermarket for Replacement Ink cartridges that will work in HP Printers in the United States," Compl. ¶ 40, their federal antitrust claims should be dismissed. The Court should dismiss Plaintiffs' state-law antitrust claims for the same reason. *See infra* Part F.1.

**1.      Legal Standard For Pleading The Existence Of A Single-brand Aftermarket.**

A relevant market "is comprised of the 'commodities reasonably interchangeable by consumers for the same purposes.'" *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916–17 (7th Cir. 2020). Although market definition is "a deeply fact-intensive inquiry," "failure to offer a plausible relevant market is a proper ground for dismissing an antitrust claim" on the pleadings. *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1011–12 (N.D. Ill. 2017); *see Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 2020 WL 5642941, *6–7 (N.D. Ill. Sept. 22, 2020) (Pacold, J.), *aff'd*, 15 F.4th 831 (7th Cir. 2021) (dismissing antitrust claim where plaintiff failed to plead a relevant market that "plausibly correspond[ed] to . . . commercial realities"). Where the plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products," the market "is legally insufficient and a motion to dismiss may be granted." *United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 908 (N.D. Ill. 2019) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430, 436 (3d Cir. 1997)).

According to Plaintiffs, the relevant market that HP allegedly monopolized and in which it allegedly restrained trade is the "aftermarket for Replacement Ink cartridges that will work in HP Printers in the United States." Compl. ¶¶ 40, 64, 76. That is, Plaintiffs allege that replacement ink cartridges for HP printers themselves constitute a relevant market—that HP has an "aftermarket for its own brand." *SMS Sys. Maint. Servs. v. Digital Equip.*, 188 F.3d 11, 17 (1st Cir. 1999). Plaintiffs therefore allege what is known as a "single brand" market. *Id.* But it is only in "rare circumstances" not present here that "a single brand of a product or service can constitute a relevant market for antitrust purposes." *Right Field Rooftops*, 87 F. Supp. 3d at 887 (quoting *Leegin*, 615 F.3d at 418). Such markets are generally "without merit as a matter of law." *Robinson-Bock Distrib. Co. v. Pioneer/Eclipse Corp.*, 1993 WL 326365 (7th Cir. Aug. 25, 1993).

A single-brand market is legally cognizable only in "situations in which consumers are 'locked in' to a specific brand by the nature of the product." *Leegin*, 615 F.3d at 418; *see also In re Dealer Mgmt. Sys.*, 313 F. Supp. 3d at 963 (discussing lock-in issues). This "lock in" can occur when a manufacturer changes a policy regarding secondary or "aftermarket" products after selling the primary (or "foremarket") product. For instance, a manufacturer of copiers may sell parts to third parties to allow them to service its copiers when the copiers are sold, but later change its policy to refuse to sell parts to third-party servicers, thus requiring customers to obtain services only from the manufacturer. *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996) (summarizing facts of *Kodak*, 504 U.S. 451).

If "competition in the primary market" is sufficient to "discipline anti-competitive conduct in the aftermarket," then there is no customer lock-in, and no relevant antitrust aftermarket. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1047 (9th Cir. 2008) (citing *Queen City Pizza*, 124 F.3d at 440). Courts have developed a stringent test to determine whether competition in the

primary market can check anticompetitive conduct in a purported aftermarket—and thus whether there is a relevant aftermarket at all for antitrust purposes. The plaintiff must show that "(1) the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant' monetary or non-monetary switching costs exist [in the foremarket]; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Epic*, 67 F.4th at 977 (quoting *Kodak*, 504 U.S. at 475, 477 n.24); *see also In re Dealer Mgmt. Sys.*, 313 F. Supp. 3d at 962 (adopting similar construction of *Kodak*).

Courts apply this standard to the pleadings—and frequently dismiss antitrust claims where the plaintiff fails to plausibly allege the existence of a relevant aftermarket. For instance, in *Coronavirus Reporter v. Apple Inc.*, the Ninth Circuit affirmed dismissal of antitrust claims based on a purported iPhone App Store aftermarket where the plaintiffs did not allege either that iPhone customers "lacked awareness" of the alleged constraints or that significant switching costs were present. 85 F.4th 948, 956–57 (9th Cir. 2023). Another court rejected a proposed relevant aftermarket for Tesla-compatible parts and repair services where the plaintiffs did not plausibly allege that Tesla's aftermarket policies were not "generally known" and did not explain why "consumers [could not] switch between" Tesla vehicles and those of other manufacturers. *Lambrix v. Tesla, Inc.*, 2023 WL 8265916, at *6–7 (N.D. Cal. Nov. 17, 2023). The Sixth Circuit similarly held that dismissal of aftermarket claims was appropriate where the plaintiff made no "factual allegations . . . that the defendant either changed its rules after the initial sale was made or concealed its rules from its customers." *Mich. Division-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 737 (6th Cir. 2008).

## 2. Plaintiffs Have Not Plausibly Alleged A Relevant Aftermarket.

Plaintiffs have not alleged *any* of the four factors described above. Accordingly, they have

failed to plausibly allege the existence of a relevant aftermarket.

> **a.** **Plaintiffs have not plausibly alleged that HP's practices and policies regarding cartridges with non-HP chips were "not generally known."**

Plaintiffs fail to allege that the challenged cartridge restrictions are not "generally known." This element is "crucial," placing "the burden on a plaintiff to rebut the economic presumption that customers make a knowing choice to restrict their aftermarket options." *Epic Games*, 67 F.4th at 979 (cleaned up). The standard is an "objective" one. Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Applications* ¶ 1740d3 (2023) (citing *Kodak*, 504 U.S. 451). Courts analyze whether customers could "reasonably anticipate later 'exploitation' when they bought the machine," *id.*, because antitrust laws protect competition by "considering what the reasonable consumer would know, or could know if it made economic sense to do more research," *Little Caesar Enters., Inc. v. Smith*, 34 F. Supp. 2d 459, 485 (E.D. Mich. 1998) (citing *PSI Repair Servs., Inc. v. Honeywell, Inc*., 104 F.3d 811, 820 (6th Cir. 1997)).

Plaintiffs allege that they themselves were not aware of HP's policies and practices regarding cartridges with non-HP chips—i.e., that they had no subjective awareness of those policies and practices. *See* Compl. ¶ 38. They allege that HP "did not inform *them* of its intent to use firmware updates to disable third-party ink cartridges, either in its packaging, its End User License Agreement, or its Limited Warranty." *Id.* ¶ 90 (emphasis added). But they do not allege that those policies and practices are "not generally known"—i.e., that the "objective 'reasonable buyer'" did not know that cartridges with non-HP chips may not work in their printers. Areeda & Hovenkamp, *supra*, ¶ 1740d3. Nor could they make such an allegation. As one court found in 2020—well before the time period at issue here—HP informed consumers that its firmware updates "include[ ] dynamic security measures, which may prevent supplies with non-HP chips or circuitry from working now or in the future." *Parziale I*, 445 F. Supp. 3d at 440. As the same

10

court found, these disclosures are "sufficient to allow a reasonable consumer to anticipate any impending harm caused by a printer with limited compatibility with non-HP cartridges." *Id.* at 447. Thus, under the objective standard governing Plaintiffs' antitrust claims, the challenged cartridge practices *are* generally known—and Plaintiffs have not alleged otherwise.

Indeed, Plaintiffs' allegations about HP's "long history" of implementing dynamic security updates show that the reasonable consumer knew or should have known about the complained-of effects here. Compl. ¶ 20. Plaintiffs allege that HP used dynamic security to "functionally prevent[ ] the use o[f] any non-HP replacement ink cartridge in some printer models" from 2010 through 2015, before temporarily "discontinu[ing]" the practice. *Id.* ¶¶ 20, 27. Taking these allegations as true, customers at a minimum should have been able to "reasonably anticipate" that HP would continue these practices in the future. Areeda & Hovenkamp, *supra*, ¶ 1740d3. According to Plaintiffs' own allegations, then, a "reasonable consumer" would have been aware that cartridges with non-HP chips may not work in HP printers.

### b. Plaintiffs have not plausibly alleged that HP's actions prevented them from calculating the cost of owning an HP printer.

Plaintiffs also do not plausibly allege that there are "significant" information costs that prevent purchasers from accurately calculating the life-cycle costs of purchasing a printer and cartridges from HP. *See In re Dealer Mgmt. Sys.*, 313 F. Supp. 3d at 962 (citing *Kodak*, 504 U.S. at 473). Significant information costs arise only when the defendant's "own actions" serve to "increase[ ] its customers' information costs." *PSI*, 104 F.3d at 820.

The paradigmatic example of conduct that increases information costs is a manufacturer's decision to change its policy regarding aftermarket parts after selling its product—for example, the situation discussed above in which a copier manufacturer sells parts to third parties to service the manufacturer's copiers when the copiers are sold, but later changes its policy to force customers

to obtain parts and services from only the manufacturer. *Digital Equip. Corp.*, 73 F.3d at 763. The closest Plaintiffs come to alleging that HP changed its policies around cartridges with non-HP chips is their allegation that, "in late 2022, HP reinstated a feature that had the same functionality" as its dynamic security features "in many of its printer models." Compl. ¶ 23. But Plaintiffs make this allegation in the vaguest possible terms, without specifying either the precise nature of the feature or the group of printer models in which it was allegedly implemented. Plaintiffs also do not allege that HP actually *changed* any policy. To the contrary, they allege that HP has "a long history of using software to prevent owners of its printers from using competitors' ink cartridges." *Id.* ¶ 20. Plaintiffs do not allege that HP *ever* had a policy of *allowing* cartridges with non-HP chips to interconnect with its printers. In attempting to calculate how much a printer will cost after accounting for the cost of cartridges, a "reasonable consumer" would do his or her research and consider HP's consistent policy and practice of not designing its printers to interconnect with cartridges with non-HP chips. *Little Caesar Enters., Inc.*, 34 F. Supp. 2d at 485.

Nor do Plaintiffs allege that HP otherwise "increased its customers' information costs" through its "own actions" by misrepresenting the ability of cartridges with non-HP chips to work in its printers. *PSI*, 104 F.3d at 820. They do not allege that HP ever represented that customers could use cartridges with non-HP chips. They cite HP's printer warranty, in which HP allegedly represented that "[t]he use of a non-HP or refilled cartridge does not affect" either HP's warranty or "any HP support contract . . . for the printer." Compl. ¶¶ 32, 39. But whether a customer's attempt to print with a cartridge manufactured by a brand other than HP voids his or her warranty over the printer, such that HP will no longer provide the customer with support, is entirely separate from the question of whether and to what extent HP printers will function with cartridges with non-HP chips. The language quoted in the complaint reflects a promise by HP to continue

12

servicing its printers, as required by the warranty, despite installation of a third-party cartridge—not a promise that a cartridge made by an unknown third party will work in its printers.

### c. Plaintiffs have not plausibly alleged that consumers face significant costs to switch to a different printer brand.

Plaintiffs also fail to allege significant switching costs. "Switching costs" refer to "unrecoverable investments that would be lost when shifting to an alternative supplier." Areeda & Hovenkamp, *supra*, ¶ 1740c8. These costs must be "substantial" for "a significant share of the defendant's customers" to be "substantially locked in." *Id.* Otherwise, an increase in the cost of parts would cause reasonable consumers to buy a competitor's machine in the foremarket and use the competitor's parts instead. *Id.* In addition, "the plaintiff must prove"—and accordingly must allege—"that a substantial number of customers are substantially locked in," because otherwise "significant exploitation is not likely." *Id.* Customers who have not purchased the product would buy a competitor's machine "as soon as word [gets] out" about the defendant's policy. *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 236 (7th Cir. 1988) (Posner, J., dissenting).

Plaintiffs do nothing to turn their conclusory allegation that it is "not practical or economically rational to purchase a new printer in order to avoid purchasing HP replacement ink cartridges," Compl. ¶ 41, into a plausible allegation that the costs of switching from an HP printer to that of another brand are "significant," *Epic*, 67 F.4th at 977. They allege that "printers cost several hundred dollars," and that "a full HP-branded replacement set may cost of $100." Compl. ¶¶ 18, 41. But they do not allege which of the 43 printer models listed in the complaint these estimates relate to, and they do not state how many times over the course of a printer's life a cartridge must be replaced. *See id.* ¶ 44. One court has held that switching costs of $3,000 over the "three-year useful life" of a printer were not sufficiently high to lock customers in to a printer brand. *Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535, 548 (S.D.N.Y. 2009). Plaintiffs do

not allege that the cost of switching from any given HP printer to another printer brand is that high. Nor do they allege that a substantial number of customers are already "locked in" to HP printers, such that HP would be able to "significant[ly] exploit[ ] . . . customers" by concealing the life-cycle costs of owning an HP printer. Areeda & Hovenkamp, *supra*, ¶ 1740c8.

### d. Plaintiffs have not plausibly alleged that cartridges for all U.S. HP printers are reasonably interchangeable.

Finally, Plaintiffs fail to plausibly allege that "general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand" aftermarket. *Epic*, 67 F.4th 977. As with any other relevant market, a plaintiff must establish that all products in a purported aftermarket are reasonably interchangeable. *See id.* Here, this means that Plaintiffs must plausibly allege that all cartridges in the purported market for "Replacement Ink cartridges that will work in HP Printers in the United States" are "reasonably interchangeable by consumers for the same purposes," and are not reasonably interchangeable with any cartridges outside of that market. *Sharif*, 950 F.3d at 916. Plaintiffs have made no allegations regarding that key question. Their list of putative class printers includes both LaserJet and inkjet printers, specialized photo printers, and printers with copiers and scanners, among other variations. *See* Compl. ¶ 44 (listing relevant printer models). Plaintiffs have done nothing to allege that cartridges in these various types of printers are reasonably interchangeable. In addition, Plaintiffs have not plausibly alleged that HP has power in the primary market for printers, *infra* Part B.1, so it is not plausible that HP also has power in a market for cartridges. As the leading antitrust treatise notes, it is extremely unlikely that a defendant that lacks power in the primary market has power in an aftermarket. Areeda & Hovenkamp, *supra*, ¶ 1740d3.

The Court should dismiss Plaintiffs' antitrust claims for failure to plead a relevant market.

**B.** **Plaintiffs' Antitrust Claims Should Be Dismissed For Numerous Additional Reasons.**

There are additional, independent reasons to dismiss Plaintiffs' antitrust claims. The Court should dismiss Plaintiffs' Section 1 restraint-of-trade claim because Plaintiffs have not plausibly alleged HP has market power in a properly defined tying product market (i.e., printers); that there is a substantial danger HP will acquire market power in the tied product market; or that HP "tied" printers to ink cartridges. And the Court should dismiss Plaintiffs' Section 2 monopolization claim because, in addition to failing to plead that HP has monopoly power in an aftermarket for replacement ink cartridges, Plaintiffs have not plausibly alleged that HP engaged in any prohibited exclusionary conduct. The Court should also dismiss Plaintiffs' claim for damages for alleged overcharges under the federal antitrust laws because Plaintiffs have not plausibly alleged that they purchased cartridges directly from HP, and therefore lack standing.

**1.** **Plaintiffs Fail To Plausibly Allege Tying Under Section 1 Of The Sherman Act And Analogous State Statutes.**

Plaintiffs allege that HP engaged in unlawful tying under Section 1 of the Sherman Act and analogous state statutes by using its power in a purported "U.S. market for printers" to "unreasonably constrain consumers' choices in the aftermarket for ink cartridges." Compl. ¶¶ 19, 76. A "tie" is an agreement under which "a party . . . sell[s] one product but only on the condition that the buyer also purchases a different (or tied) product." *Siva v. Am. Bd. Of Radiology*, 38 F.4th 569, 573 (7th Cir. 2022) (quoting *N. Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958)).

Plaintiffs' tying claim fails at the outset because they allege only a "per se" violation. Compl. ¶ 72. While most restraints of trade are evaluated under the "rule of reason," certain restraints are unreasonable per se because they "always or almost always tend to restrict competition and decrease output." *Amex*, 585 U.S. at 540–41. But "technological tie[s]," to the extent Plaintiffs are attempting to allege one here, "are not within the ambit of the *per se*

prohibitions of the Sherman Act." *Condesa Del Mar, Inc. v. White Way Sign & Maint. Co.*, 1987 WL 17474, at *2 (N.D. Ill. Sept. 24, 1987) (citing *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 541 (9th Cir. 1983)). The D.C. Circuit has specifically held that a tying claim based on the "integration of additional software functionality into an [operating system]" must be evaluated under the rule of reason. *United States v. Microsoft Corp.*, 253 F.3d 34, 89 (D.C. Cir. 2001); *accord Epic*, 67 F.4th at 997. A party's failure to properly plead a claim under the rule of reason warrants dismissal. *Appraisers Coal. v. Appraisal Inst.*, 845 F. Supp. 592, 606 (N.D. Ill. 1994). Because Plaintiffs do not allege a tie under the rule of reason, the Court should dismiss Plaintiffs' Section 1 tying claim.

Regardless, Plaintiffs fail to plausibly allege a Section 1 tying violation even under the narrower per se rule. To state a claim for per se tying, a plaintiff must allege (1) the existence of a "tying arrangement . . . between two distinct products or services," (2) that the defendant "has sufficient economic power in the tying market to appreciably restrain free competition in the market for the tied product," and (3) that a "not insubstantial amount of interstate commerce is affected." *Sandburg*, 758 F.2d at 207. To allege that the defendant can "appreciably restrain free competition in the market for the tied product," the plaintiff must allege that there is a "substantial danger that the tying seller will acquire market power in the tied product market." *Id.* at 207, 210.

Plaintiffs have failed to plausibly allege a per se tying claim for four reasons.

*First*, they do not plausibly allege that HP has market power in the tying-product market. *Sandburg*, 758 F.2d at 207. Plaintiffs define that product market as the "U.S. market for printers." Compl. ¶ 19. But their basis for asserting that this is a relevant antitrust market is anyone's guess: they make no allegation that printers in a "U.S. market for printers" are "reasonably interchangeable by consumers for the same purposes." *Sharif*, 950 F.3d at 916. They do not

16

explain, for instance, why commercial and consumer printers, LaserJet and inkjet printers, or standalone printers and printers with copiers and scanners are reasonably interchangeable. Plaintiffs' silence on this point warrants dismissal. *See id.* at 918 (claim properly dismissed where plaintiff did not "plead[] facts sufficient to support an inference that defendants have the requisite market power within a viable product market").

Even if Plaintiffs had properly defined a relevant market, they have not plausibly alleged that HP has power in that market. Plaintiffs' sole allegation to support HP's market power in a U.S. printer market is that HP has "about 34.7%" of the global market share for printers, Compl. ¶ 19. This bare allegation does not plausibly establish market power. "[T]oday's sales do not always indicate power over sales and price tomorrow." *Ball Mem. Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1336–37 (7th Cir. 1986); *see also Will v. Comprehensive Acct. Corp.*, 776 F.2d 665, 672 (7th Cir. 1985) (where defendant has only "a market share of 30%," plaintiff "must establish more than just a substantial share of all sales" in tying product market).

Plaintiffs' allegation that HP has "about 34.7%" of the U.S. printer market is conclusory in any event. The source Plaintiffs rely on provides *global* data, rather than U.S.-only data, and does not purport to provide data on a market for all printers. For instance, it also includes copiers. *Hardcopy peripherals vendor market share worldwide*, Statista (April 25, 2023), http://tinyurl.com/29y9sa74 (cited at Compl. ¶ 19 n.3). Moreover, Plaintiffs allege that this global figure approximates HP's share of the *U.S.* printer market based only on counsel's recollection of unidentified "sources no longer publicly available without a subscription." Compl. ¶ 19. This is an unsupported assertion, not a plausible allegation.

*Second*, Plaintiffs do not plausibly allege that there is a "substantial danger" that HP will acquire market power in the "tied product market" for "Replacement Ink cartridges that will work

in HP Printers in the United States," Compl. ¶ 40, because this is not a cognizable market, *see supra* Part A. *Sandburg*, 758 F.2d at 210; *see also A.O. Smith Corp. v. Lewis, Overbeck & Furman*, 979 F.2d 546, 549 (7th Cir. 1992) ("market power in the tied product market" is "an essential element in an antitrust claim of tying" under Section 1).

*Third*, Plaintiffs have not plausibly alleged that HP conditioned the sale of its printers on the purchase of its cartridges, as they must to establish a tying condition. A tying arrangement is "an agreement by one party to sell a product (the tying product) to another on the condition that the buyer also purchase a different product (the tied product)." *Sandburg*, 758 F.2d at 207. Here, Plaintiffs do not allege anywhere that, to purchase a printer from HP, they were required to also purchase HP cartridges. To the contrary, Plaintiffs apparently were able to purchase their HP printers without purchasing HP ink cartridges, and to use third-party cartridges with those printers for some undefined period of time. Compl. ¶¶ 6–16.

*Fourth*, even assuming for the sake of argument that Plaintiffs have plausibly alleged that HP conditioned purchase of its printers on the purchase of its ink cartridges, they have not plausibly alleged that customers *agreed* to that condition. There is no liability under Section 1 of the Sherman Act without an agreement. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 349 (7th Cir. 2022). Section 1 is "ordinarily inapt" in addressing a unilateral design change that makes a product incompatible with that of a rival manufacturer. Areeda & Hovenkamp, *supra*, ¶ 776a. In that circumstance, "there is no contract or agreement requiring the firm to take the two products together," and no "contractual 'condition or understanding' that they do so." *Id.* A plaintiff cannot "prove[ ] that it was coerced" if it is "totally unaware that the tying product was conditioned on" taking the tied product. *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 724 n.29 (7th Cir. 1979). Plaintiffs expressly allege that they were "[u]naware" of HP's policies and

practices with respect to the use of third-party cartridges in their printers. Compl. ¶ 28. They accordingly have not pled the existence of a relevant agreement.

For all these reasons, the Court should dismiss Plaintiffs' claim under Section 1 of the Sherman Act and analogous state statutes.

### 2. Plaintiffs Fail To Plead Exclusionary Conduct Under Section 2 Of The Sherman Act And Analogous State Statutes.

Section 2 of the Sherman Act prohibits "monopoliz[ing], or attempt[ing] to monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2. To state a claim under Section 2, a plaintiff must allege that the defendant (1) has "monopoly power in [a] relevant market," and (2) acquired or maintained that power through exclusionary conduct—not "as a consequence of a superior product, business acumen, or historic accident." *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 396–97 (7th Cir. 2000) (quoting *Kodak*, 504 U.S. at 481). Plaintiffs allege that HP violated Section 2 by "creating and maintaining a monopoly in the HP replacement ink cartridge aftermarket." Compl. ¶ 65. But they fail to state a monopolization claim because they have not plausibly alleged, as they must, that there is a relevant aftermarket for "HP replacement ink cartridge[s]." *Supra* Part A; Compl. ¶ 65; *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455 (1993) (Section 2 plaintiff must define a relevant market).

In addition, Plaintiffs do not plausibly allege that HP engaged in prohibited exclusionary conduct. *See Goldwasser*, 222 F.3d 390, 396–97. Courts have "develop[ed] … specific rules for common forms of alleged misconduct" under Section 2. *Novell v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (Gorsuch, J.,); *see also Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 452–53 (7th Cir. 2020) ("Courts recognize various types of conduct that have the potential to harm competition."). Here, the only specific conduct that Plaintiffs appear to allege is exclusionary is the same "illegal tying scheme" they challenge under Section 1. Compl. ¶ 70. That claim fares

no better under Section 2. A Section 2 plaintiff must allege market power in the tying product, as well as "the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product." *Viamedia*, 951 F.3d at 466. But Plaintiffs have not adequately alleged that HP possesses market power in the "tying" product market for printers, that it possesses market power in the "tied" product market for cartridges, or that it conditioned the purchase of its printers on the purchase of its cartridges. *Sandburg*, 758 F.2d at 207; *see supra* Part B.1 (points one through three).

Nor have Plaintiffs plausibly alleged that HP engaged in any other form of exclusionary conduct. Plaintiffs allege that HP violated Section 2 by "impair[ing] the ability of [HP] printers to accept third-party replacement ink cartridges." Compl. ¶ 70. But a monopolist generally has "no duty to aid [its] competitors," at least absent the "unilateral termination of a voluntary (and thus presumably profitable) course of dealing." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409–11 (2004); *see Viamedia*, 951 F.3d at 454–60 ("limited circumstances" in which unilateral refusal to deal is actionable). HP has no duty to design its printers to function with all third-party cartridges, and it has had no duty to deal with third-party cartridge manufacturers. This is particularly so given that Plaintiffs do not allege that HP ever engaged in a past course of dealing with manufacturers of cartridges with non-HP chips.

The Court should dismiss Plaintiffs' claims under Section 2 of the Sherman Act and analogous state statutes for failure to plausibly plead that HP engaged in exclusionary conduct.

### 3. Plaintiffs Cannot Recover Damages For Alleged Overcharges Under The Federal Antitrust Laws Because They Are Not Direct Purchasers.

Finally, Plaintiffs may not claim overcharge damages under the federal antitrust laws. A consumer who has purchased a product from an intermediary can sue the manufacturer for injunctive relief under those laws. But that consumer cannot sue the manufacturer to recover

damages resulting from an alleged overcharge. *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)). Tying claims by indirect purchasers seeking damages are "clearly bar[red]." *Link v. Mercedes-Benz of North America, Inc.*, 788 F.2d 918, 931 (3d Cir. 1986). "[A]lthough tied buyers will seldom obtain damages for an overcharge by the defendant supplier, their customers—so-called indirect purchasers from the defendant— presumptively never do." Areeda & Hovenkamp, *supra*, ¶ 1769f. None of the named Plaintiffs allege that they purchased printer ink directly from HP after receiving a dynamic security firmware update. The Court should dismiss Plaintiffs' claims for damages under the federal antitrust laws.

**C.      Plaintiffs' CFAA Claim Should Be Dismissed For Failure To State A Claim.**

The CFAA is "aimed at preventing the typical consequences of hacking." *Van Buren*, 141 S. Ct. at 1660. The provisions under which Plaintiffs bring their claims require the defendant to have accessed a "protected computer" either "without authorization" or by "exceed[ing] authorized access," and to have obtained something ("information" under one provision, "anything of value" under the other) by means of hacking. 18 U.S.C. §§ 1030(a)(2)(C), (a)(4). Both also require a loss of $5,000 each time a protected computer is accessed. Plaintiffs do not plausibly allege any of these requirements, and thus have failed to state a claim under the CFAA. The CFAA does not come into play every time a consumer is dissatisfied with a software update.

**1.      Plaintiffs Have Not Plausibly Alleged That HP Acted "Without Authorization" Or "Exceed[ed] Authorized Access."**

To plausibly allege that HP accessed their printers "without authorization" or "exceed[ed] authorized access" under Sections 1030(a)(2)(C) and (a)(4) of the CFAA, Plaintiffs must allege that HP "ha[d] not received permission to use [their printers] *for any purpose*." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (emphasis added). The Supreme Court recently clarified that a defendant does not access a "protected computer" without "authorization"

within the meaning of the CFAA when it has permission to access a computer but uses that access for an "improper purpose." *Van Buren*, 141 S. Ct. at 1661–62. That is, the focus is on the areas of the system the defendant accessed, not what the defendant did there. The CFAA takes a "gates-up-or-down approach" to access: "one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* at 1658–59. A party "exceeds authorized access" under the CFAA only when it "accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits." *Id.* at 1662.

For instance, the Supreme Court in *Van Buren* held that the defendant did not violate the CFAA by taking a bribe to run searches in a law enforcement database because he was authorized to access the database. 141 S. Ct. at 1653–54. Applying *Van Buren*, the court in *Pable v. Chicago Transit Authority* similarly held that the Chicago Transit Authority did not plausibly allege that an employee "exceed[ed] authorized access" to its computer system within the meaning of the CFAA when he altered information on a computer without permission after having been granted access to the system. 615 F. Supp. 3d 842, 845 (N.D. Ill. 2022).

Plaintiffs concede that they granted HP permission to install firmware updates on their printers by "enter[ing] into software licensing agreements" with HP, and allege that they "register[ed] their printers to receive regular updates." Compl. ¶¶ 24, 31. What HP was not authorized to do, Plaintiffs contend, was "degrade performance of printers." *Id.* ¶ 60. But this is just like the claims in *Van Buren* and *Pable*, where the plaintiffs alleged that the defendants had authorized access to a system but did something they weren't allowed to once they got there. A claim that a defendant "misused his authorized access for an improper purpose" is "outside the CFAA's scope." *Pable*, 615 F. Supp. 3d at 845 (citing *Van Buren*, 141 S. Ct. at 1662). A court

22

recently dismissed a similar claim against HP under Section 1030(a)(2)(C) where the plaintiffs alleged that HP "has the exclusive ability to install firmware updates to the printers it sells," but that they did not consent to HP's use of dynamic security features in those firmware updates. *Mobile Emergency Hous. Corp. v. HP, Inc.*, 2021 WL 9867952, at *8 (N.D. Cal. Oct. 15, 2021). The Court should likewise dismiss Plaintiffs' CFAA claims in their entirety for failure to plausibly allege that HP accessed their printers "without authorization" or "exceed[ed] authorized access."

### 2. Plaintiffs Have Not Plausibly Alleged That HP Obtained Information From Their Printers.

The CFAA provisions at issue do not prohibit the mere act of accessing a protected computer without authorization. Section 1030(a)(2)(C) prohibits only "obtain[ing] . . . information" through unauthorized access. Similarly, Section 1030(a)(4) prohibits only "obtain[ing] anything of value" through unauthorized access of a protected computer. Courts interpret "anything of value" in Section 1030(a)(4) to mean data or information. The First Circuit has noted that "Congress intended Section 1030(a)(4) to punish attempts to steal valuable data." *United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997). And the Third Circuit affirmed the denial of a preliminary injunction under Section 1030(a)(4) where the plaintiffs "d[id] not know, ha[d] not shown, and [could not] show, what information, if any, was taken" by a former employee who accessed a computer without authorization. *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 509 (3d Cir. 2005).

Plaintiffs recite the statutory language in alleging that HP obtained information from their printers, Compl. ¶ 60, but do not allege what information HP obtained. This conclusory allegation is insufficient to state a claim under the CFAA—a plaintiff "must provide more than mere labels and conclusions or a formulaic recitation of the elements." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Another court dismissed a claim alleging that HP violated Section

1030(a)(2)(C) by sending firmware updates for just this reason—the plaintiff did "not state what information HP allegedly obtained." *Parziale I,* 445 F. Supp. 3d at 449. The Court should dismiss Plaintiffs' CFAA claim under Sections 1030(a)(2)(C) and (a)(4) for the same reason here.

### 3. Plaintiffs Have Not Plausibly Alleged A Loss Of $5,000 Or More.

To state a CFAA claim, Plaintiffs must also allege that the relevant violation caused:

> loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value.

18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also* 18 U.S.C. § 1030(g). In civil cases, the CFAA's loss requirement allows economic damages to be aggregated across only "a single act" and a single device. *Halperin v. Int'l Web Servs., LLC,* 70 F. Supp. 3d 893, 900 (N.D. Ill. 2014); *see also Jensen v. Cablevision Sys. Corp.*, 2017 WL 4325829, at *14 (E.D.N.Y. Sept. 27, 2017) (similar). For instance, "the damages suffered by all family members who share an infected computer . . . could be aggregated." *Halperin*, 70 F. Supp. 3d at 900–01. What the CFAA "does not allow," however, is "aggregating damages suffered by absent class members resulting from disparate acts." *Id.* at 900. This distinction follows from the statutory language: the CFAA provides for criminal penalties as well as civil ones, and the aggregation of losses from "a related course of conduct affecting 1 or more other protected computers" is reserved for "proceeding[s] brought by the United States only." 18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *9 n.4 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32 (2d Cir. 2017) (noting that this language "suggests losses may not be aggregated among multiple computers for purposes of the $5,000 threshold in private suits"). As the court in *Halperin* noted, "when Congress wants the claims of absent class members to be aggregated, it says so explicitly"—but the CFAA "does not mention class actions at all in its civil remedy provision." 70 F. Supp. 3d at

900.  To the extent that the statute is ambiguous on this point, the ambiguity must be resolved in favor of defendants, because the CFAA is "primarily a criminal statute" to which the rule of lenity applies—even in civil actions.  *Brekka*, 581 F.3d at 1134.

Plaintiffs do not allege that they each suffered a $5,000 loss from any firmware update; no named Plaintiff quantifies his or her loss.  *See* Compl. ¶¶ 6–16, 61.  Even crediting Plaintiffs' theory of harm and their vague allegations that "replacement ink cartridges cost about $30-50" and a "full HP-branded replacement set" of cartridges "may cost" $100, *id.* ¶¶ 18, 41, it is not plausible that any given printer owner paid $5,000 as a result of a single firmware update to a single device.

The Court should dismiss Plaintiffs' CFAA claims with prejudice.

**D.     Plaintiffs' Claims Under The Laws Of States In Which They Do Not Live And For Printer Models They Did Not Purchase Should Be Dismissed For Lack Of Standing.**

To have Article III standing, a plaintiff must have suffered an injury in fact caused by the complained-of conduct.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is claim specific:  it "must be demonstrated for each claim the claimants seek to press and for each form of relief that is sought."  *United States v. Furando*, 40 F.4th 567, 575 (7th Cir. 2022) (cleaned up).  Standing is also plaintiff specific.  A named plaintiff in a class action "cannot acquire standing to sue by bringing his action on behalf of others who suffered injury" because "a person cannot predicate standing on injury which he does not share."  *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002).  Instead, named plaintiffs "must possess the same interest and suffer the same injury shared by all members of the class they represent."  *Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022).

Plaintiffs allege 76 different claims under state statutes, under the laws of all 50 states and the District of Columbia.  Compl. ¶¶ 88–648.  Yet no Plaintiff alleges any connection with 42 of

these jurisdictions.[2]  Plaintiffs also bring claims related to the purchase of 43 different models of HP printers, but Plaintiffs themselves did not purchase 36 of those models—and some of the printers listed are not even manufactured by HP.[3]  The Court should dismiss for lack of standing Plaintiffs' claims for violations of laws of states to which they have no alleged connection, and for printer models they did not purchase.

### 1. Plaintiffs Lack Standing To Bring Claims Under The Laws Of States To Which They Have No Connection.

Given that standing must be alleged separately for each claim, *Furando*, 40 F.4th at 575, and that a plaintiff "cannot predicate standing on injury which he does not share*," Payton*, 308 F.3d at 682, named plaintiffs in a putative class action "lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no injury," *Brown*, 2022 WL 2442548, at *3 (quoting 1 McLaughlin on Class Actions § 4:28 (18th ed.)).  And because standing is "'an antecedent legal issue' to be resolved before class certification," courts in this district "routinely dismiss or strike class claims where named plaintiffs seek to represent proposed class members from other states."  *Brown*, 2022 WL 2442548, at *2 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,

---

[2] Plaintiffs do not allege any connection between themselves and any of the following jurisdictions: Alabama; Alaska; Arizona; Arkansas; California; Colorado; Connecticut; Delaware; Florida; Georgia; Hawaii; Idaho; Indiana; Iowa; Kansas; Kentucky; Louisiana; Maine; Maryland; Minnesota; Mississippi; Montana; Nebraska; New Hampshire; New Mexico; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; Washington; West Virginia; Wisconsin; Wyoming; and the District of Columbia.  *See* Compl. ¶¶ 6–16.

[3] Plaintiffs do not allege that they purchased any of the following models of printers:  XP 310; PageWide 377dw; OfficeJet 6000; LaserJet Pro M4040DN; LaserJet Pro M404DW; LaserJet Pro M404N; LaserJet Pro MFP M438DW; LaserJet Pro MFP M428FDN; LaserJet Pro MFP M428FDW; LaserJet Enterprise M406DN; LaserJet M430F; DeskJet 2700; LaserJet Pro MFP 4101dw; DeskJet 4133e; OfficeJet 5200; OfficeJet 6950; OfficeJet Pro 6960; OfficeJet Pro 6970; OfficeJet Pro 6979; OfficeJet 6979; Envy Photo 7855; OfficeJet 7600; OfficeJetPro 7740; OfficeJet 8020; OfficeJetPro 8020; OfficeJetPro 8025; OfficeJet 8030; OfficeJetPro 8034E; OfficeJetPro 8035e; OfficeJet 8500; OfficeJet 8620; OfficeJet 9600 Pro Plus; OfficeJet 8710; OfficeJetPro 8710; OfficeJet Pro 9015; and OfficeJet 161600.  *See* Compl. ¶¶ 6–16.

2013 WL 4506000, at *7–8 (N.D. Ill. Aug. 23, 2013) (dismissing claims brought under laws of states in which named plaintiffs did not reside); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *6 (N.D. Ill. Feb. 26, 2019) (same); *Lantz v. Am. Honda Motor Co.*, 2007 WL 1424614, at *6 (N.D. Ill. May 14, 2007) (same).

Plaintiffs bring 63 of their 79 causes of action under the laws of jurisdictions in which they do not reside and in which they suffered no alleged injury. The Court should dismiss these causes of action.[4] It would be "inappropriate to engage in wide-ranging discovery premised on" Plaintiffs' ability "to assert causes of action created by other states for the benefit of other individuals injured in those other states." *Smith-Brown*, 2019 WL 932022, at *6.

### 2. Plaintiffs Lack Standing To Represent Purchasers Of Printer Models They Did Not Purchase.

A similar analysis applies to Plaintiffs' claims as to printer models they themselves did not purchase. A plaintiff has "no injury-in-fact caused by products that [he or she] did not buy, and therefore lack[s] standing with respect to those products." *Bakopoulos*, 2021 WL 2915215, at *3. While some courts in this district have held that named plaintiffs have standing to bring claims on behalf of absent class members who purchased "substantially similar" products, Article III has no "'substantially similar' exception so as to allow [a] Plaintiff to maintain claims when she has no 'injury in fact' that [is] traceable to representations made" on products that he or she "did not purchase." *Jackson v. Dole Packaged Foods, LLC*, 648 F. Supp. 3d 1039, 1044 (S.D. Ill. 2022). The substantial similarity test "mix[es] up the concept of standing with Rule 23 class representation." *Pearson v. Target Corp.*, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012); *see also Padilla v. Costco Wholesale Corp.*, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012)

---

[4] The Court should dismiss the following causes of action for lack of standing: Counts VI–XXXV; Counts XXXIX–XLII; Counts XLIV–XLVI; Counts XLVIII–XLIX; Counts LI–LII; Counts LV–LXII; Counts LXIV–LXVI; Counts LXVIII–LXIX; and Counts LXXII–LXXX.

(whether plaintiff has standing to sue over product is separate from question of whether plaintiff's claims "are common and typical of purchasers" of other products); *Bakopoulos*, 2021 WL 2915215, at *3 (whether plaintiffs "may be adequate class representatives for absent class members injured by similar products is a different question than" standing).

Although the Seventh Circuit "has not spoken directly on the substantial similarity test," its position that plaintiffs "cannot 'piggy-back on the injuries of the unnamed class members' in order to acquire standing 'through the back door of a class action'" suggests that it would not endorse the test. *Cowen v. Lenny & Larry's, Inc*., 2017 WL 4572201, at *3 (N.D. Ill. Oct. 12, 2017) (quoting *Payton*, 308 F.3d at 682); *accord Padilla*, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012); *Brodsky v. Aldi Inc*., 2021 WL 4439304, at *3 (N.D. Ill. Sept. 28, 2021). A court in this district recently took this view, based on a case in which the Seventh Circuit held that a plaintiff "lacked standing in a class action consumer products case where he alleged injury relating to products that he did not buy that were similar to those he had bought." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (citing *Weaver v. Champion Petfoods USA Inc*., 3 F.4th 927, 936 (7th Cir. 2021)).

Because Plaintiffs do not allege that they purchased 36 of the printers for which they purport to bring claims, they lack standing to bring claims related to those printers. Moreover, even if the Court were to apply an exception to Article III's requirements for "substantially similar" products (and it should not), Plaintiffs have not "alleged facts suggesting that" the printers they did not purchase "are substantially similar to the . . . products that [they] purchased." *Flaherty v. Clinique Labs. LLC*, 2021 WL 5299773, at *4 (N.D. Ill. Nov. 15, 2021).

The Court should dismiss for lack of standing all causes of action predicated on the laws of states to which the named Plaintiffs allege no connection. It should also dismiss all claims to

28

the extent they are predicated on injuries related to printers the named Plaintiffs did not purchase.

**E.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.**

The law of unjust enrichment varies significantly from state to state. *In re Aqua Dots Prod. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) (citing cases). "[U]njust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states." *In re Sears, Roebuck & Co.*, 2006 WL 3754823, at *1 n. 3 (N.D. Ill. Dec. 18, 2006). Accordingly, a plaintiff must "plead the required factual basis of an unjust enrichment claim on a state by state basis." *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009). For instance, in *Sandee's Catering v. Agri Stats, Inc.*, the court dismissed an unjust enrichment claim where it was "exceedingly difficult for the Court and the Defendants to know under which jurisdictions Plaintiff would like to proceed, let alone what Plaintiff needs to allege . . . under the state-specific unjust enrichment laws." 2020 WL 6273477, at *12 (N.D. Ill. Oct. 26, 2020).

Plaintiffs do not identify which state's law applies to their unjust enrichment claim, so their vaguely pled claim creates the same problem as in *Sandee's Catering*. Compl. ¶¶ 82–87. Their claim does not "account for any consequential differences that may exist" among states. *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 726 (N.D. Ill. 2016). Plaintiffs also do not identify which of the 11 named Plaintiffs is bringing the claim, stating only that they bring it on behalf of "Plaintiff and the Class." Compl. ¶¶ 82, 87. Because it is impossible to determine which named Plaintiffs bring the claim and under which state's law, the Court should dismiss it.

An examination of Plaintiffs' unjust enrichment claim under the laws of various jurisdictions highlights the problem—and shows why Plaintiffs could not plausibly allege such a claim under any jurisdiction's laws, in any event. For instance, Plaintiffs allege that HP's licensing agreement governs its ability to issue the firmware updates that form the basis of this claim. Compl.

¶¶ 24, 86. But an unjust enrichment claim is generally "unavailable where a specific contract governs the relationship of the parties." *Aqua Dots*, 270 F.R.D. at 386 (applying Illinois law); *see also, e.g.*, *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1255 (Pa. 2006) (Pennsylvania law). Such a claim should be dismissed where the plaintiff alleges an express contract. *Cardin v. NewRez LLC*, 637 F. Supp. 3d 581, 591 (N.D. Ill. 2022); *see also Toulon v. Cont'l Cas. Co.*, 2016 WL 561909 at *5 (N.D. 111. Feb. 12, 2016), *aff'd*, 877 F.3d 725 (7th Cir. 2017) (similar).

Plaintiffs also cannot state a claim for unjust enrichment under the laws of multiple states because they have an adequate remedy at law, given that their unjust enrichment claim is based on the same course of conduct as their antitrust and consumer-protection claims. For instance, Illinois follows the rule that unjust enrichment "is only available" when there is "no adequate remedy at law," because "it is an equitable remedy." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). The same is true, for example, under the laws of Massachusetts, *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005), and Tennessee, *Furlough v. Spherion Atl. Workforce LLC*, 397 S.W.3d 114, 134 (Tenn. 2013). And in some states unjust enrichment is only an equitable remedy, rather than a standalone cause of action. California, for example, "does not recognize a cause of action for unjust enrichment." *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020). Plaintiffs have no unjust enrichment claim in such states.

A number of states also require a plaintiff to "allege a relationship with [the] [d]efendant[ ] leading to a direct benefit" in order to state a claim for unjust enrichment. *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 382–83 (D.R.I. 2019) (citing laws of 10 states). Otherwise, a plaintiff has provided nothing of value to the defendant, and the defendant has not been unjustly enriched. *See id.* Courts accordingly dismiss claims where a plaintiff purchased a product from an intermediary, rather than from the defendant itself. *Id.* at 384. Because Plaintiffs have not pled

that they are direct purchasers of HP cartridges, *see supra* Part B.3, they have not plausibly alleged a claim for unjust enrichment under state laws that require a direct benefit.

Similarly, Plaintiffs have failed to allege an unjust enrichment claim under the laws of states that follow the rule of *Illinois Brick* because their claim is based on the same theory of liability as their antitrust claims, and they have not plausibly alleged that they are direct purchasers. *See supra* Part B.3. "[M]ost courts do not allow indirect purchasers to use an unjust enrichment claim as an end-run around *Illinois Brick*'s damages bar unless the relevant state's antitrust law permits indirect purchasers to sue for damages." *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 312 (N.D. Ill. 2022); *see also In re Broiler Chicken Antitrust Litig.*, 2020 WL 4032932, at *4 (N.D. Ill. July 15, 2020) (similar). Plaintiffs "cannot avoid *Illinois Brick* simply by characterizing their unjust enrichment claims as alternative forms of relief" where those claims "seek[] damages attributable to [d]efendants' alleged antitrust conduct." *In re Opana ER Antitrust Litig.*, 2016 WL 4245516, at *2 (N.D. Ill. Aug. 11, 2016).

## F.     Plaintiffs Have Not Stated A Claim Under Any Of The 75 State Statutes Asserted In Their Complaint.

Plaintiffs bring causes of action under 75 separate state statutes. But they fail to state a claim under any of those statutes. They do not plausibly allege a claim under the 26 state antitrust statutes at issue for the same reasons they fail to state a Sherman Act claim. And Plaintiffs' 49 consumer-protection claims are pled in such conclusory fashion that Plaintiffs have not adequately put HP on notice of the basis for their allegations. Plaintiffs have failed to state a claim under any consumer-protection statute for several other reasons, as well.

### 1.     Plaintiffs Have Not Plausibly Alleged a Violation Of Any State Antitrust Laws.

The state laws under which Plaintiffs assert antitrust claims apply the same standards as federal courts apply under the Sherman Act, with the exception that they do not require plaintiffs

to be direct purchasers to recover damages (*see* Part B.3).[5]  The Court should accordingly dismiss

---

[5] *City of Tuscaloosa v. Harcros Chems. Inc.*, 158 F.3d 548, 555 n.8 (11th Cir. 1998) (federal antitrust law "prescribes the terms of unlawful monopolies and restraints of trade" under Alabama law); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 4 F. Supp. 3d 1123, 1144 (D. Ariz. 2014), *aff'd*, 836 F.3d 1171 (9th Cir. 2016) ("Arizona courts follow[ ] federal [antitrust] law."); *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 (9th Cir. 2015) ("[T]he analysis under [California's] Cartwright Act . . . is identical to that under the Sherman Act."); *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1104 n.3 (D. Colo. 2016) (analyzing federal and Colorado antitrust claims together because "federal antitrust law principles apply to both"); *Spinner Consulting LLC v. Stone Point Cap. LLC*, 843 F. App'x 411, 412 (2d Cir. 2021) (applying Sherman Act analysis to dismiss Connecticut antitrust claim); *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 588, n.2 (D.D.C. 1995), *aff'd*, 82 F.3d 484 (D.C. Cir. 1996) ("If the complaint fails to state a claim under the Sherman Antitrust Act, it also fails to state a claim under the District of Columbia Unfair Trade Practices Act."); *WHIC LLC v. NextGen Labs., Inc.*, 2019 WL 2717769, at *5 (D. Haw. June 28, 2019) (Hawaii statute requires courts to "apply federal authority as a guide in interpreting HRS ch. 480"); *Par v. Wolfe Clinic, P.C.*, 2022 WL 2187858, at *11 (S.D. Iowa May 10, 2022), *aff'd*, 70 F.4th 441 (8th Cir. 2023) ("Iowa antitrust laws are construed in accordance with federal antitrust laws."); *In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727, at *40 (S.D.N.Y June 11, 2021) (Kansas's antitrust law must be construed "conterminously with federal antitrust statutes"); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 149 (1st Cir. 2000) ("Maine antitrust statutes parallel the Sherman Act."); *Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 379 (4th Cir. 1992), *as amended* (July 21, 1992) (federal antitrust law "should guide the interpretation of the Maryland antitrust laws"); *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 619 n.4 (6th Cir. 1999) ("[O]ur reasoning regarding the federal antitrust claims applies equally to the [Michigan] antitrust claims."); *TMT Mgmt. Grp., LLC v. U.S. Bank Nat'l Ass'n*, 940 N.W.2d 239, 246 (Minn. Ct. App. 2020) ("Minnesota's antitrust laws are generally interpreted consistently with federal courts' construction of federal antitrust laws."); *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 828 N.W.2d 147, 151 (Neb. 2013) (Nebraska courts follow federal law in construing state antitrust statute); *Boulware v. State of Nev., Dep't of Hum. Res.*, 960 F.2d 793, 800 (9th Cir. 1992) (Nevada statute "adopts by reference the case law applicable to the federal antitrust laws"); *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 837 (N.H. 2002) (New Hampshire antitrust statute construed with reference to federal antitrust law); *Smith Mach. Corp. v. Hesston, Inc.*, 694 P.2d 501, 505 (1985) (New Mexico's antitrust act "is to be construed in harmony with judicial interpretations of the federal antitrust laws"); *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 233–34 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 59 (2d Cir. 2010) (New York's Donnelly Act "should generally be construed in light of Federal precedent"); *N.C. Steel, Inc. v. Nat'l Council on Comp. Ins.*, 472 S.E.2d 578, 582–83 (N.C. Ct. App. 1996), *aff'd in part, rev'd in part on other grounds*, 347 N.C. 627 (1998) (discussing North Carolina history of reliance on interpretations of federal antitrust law); *In re Elec. Books Antitrust Litig.*, 2014 WL 2535112, at *15 (S.D.N.Y. June 5, 2014) ("North Dakota courts look to federal antitrust law in interpreting the NDUSSA."); *Jones v. City of McMinnville*, 244 Fed. App'x 755, 759 (9th Cir. 2007) (Oregon and federal antitrust statutes are "almost identical," and that Oregon courts look to federal decisions as "persuasive"); *Auburn News Co. v. Providence J. Co.*, 659 F.2d 273, 278 (1st Cir. 1981) ("Rhode Island law provides that its antitrust statutes be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable."); *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985) ("great weight should be given to the federal cases interpreting" antitrust law in interpreting South Dakota antitrust statute); *State ex rel. Leech v. Levi Strauss & Co.*, 1980 WL 4696, at *2 n.2 (Tenn. Ch. Sept. 25, 1980) (Sherman Act is one of

those claims for the reasons provided in Parts A, B.1, and B.2.[6]  In addition, four of the states under which Plaintiffs bring antitrust claims do not provide for liability for unilateral conduct—that is, they do not include an analogue to Section 2 of the Sherman Act.  Thus, if the Court dismisses Plaintiffs' Section 1 claim but not their Section 2 claim, it should dismiss in full the causes of action Plaintiffs bring under those state statutes.[7]

### 2. Plaintiffs Have Not Plausibly Alleged That HP Violated Consumer Protection Statutes.

Plaintiffs plead their claims under various consumer-protection statutes in a conclusory fashion, without explaining what conduct they are challenging or stating whether they are challenging that conduct as deceptive, unfair, unconscionable, or unlawful.  To the extent Plaintiffs purport to bring misrepresentation claims, Plaintiffs fail to plausibly allege misrepresentation because they do not plead an actionable omission or reasonable reliance.  To the extent Plaintiffs purport to bring claims for allegedly unfair or unconscionable conduct, their claims fail for the same reasons as their antitrust claims, given that the claims appear to be based on the same conduct.  Plaintiffs also fail to state a claim under certain state statutes that require notice and an adequate remedy at law because they do not plead that they provided HP with notice of their claims, and do not plausibly allege that they lack an adequate remedy at law.

---

the "most persuasive" authorities on interpretation of Tennessee antitrust statute); *Kerns v. Range Res.—Appalachia, LLC*, 2011 WL 3753117, at *5 (N.D.W. Va. Aug. 23, 2011) ("[T]he adequacy of the plaintiff's WVATA claim rises or falls on the viability of its federal antitrust claim."); *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959, 970 (E.D. Wis. 1998) ("[F]ederal court decisions construing the Sherman Act control application of Wisconsin antitrust law.").

[6] The Court should dismiss Counts VI, VIII, XI, XIV, XVI, XIX, XXIII, XXVI, XXVIII, XXXII, XXXIV, XXXVIII, XXXIX, XLV, XLVII, XLVIII, LI, LIII, LV, LVI, LXII, LXIV, LXVIII, LXX, LXXVII, and LXXIX.

[7] Those statutes are as follows: California Cartwright Act (Count XI); Nevada Unfair Trade Practices Act (Count XLVII); North Carolina Antitrust Act (Count LV); and Tennessee Code §§ 47-25-101, et. seq. (Count LXX).

### a.   Plaintiffs' complaint does not contain sufficient detail to put HP on notice of what their consumer protection claims are.

A plaintiff "must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate" under Rule 8. *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  Otherwise, a complaint does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Plaintiffs plead all 49 of their consumer-protection claims in conclusory, pro forma fashion, failing to explain how HP violated any of those statues. Those claims should accordingly be dismissed.   These pleading deficiencies are particularly problematic to the extent that Plaintiffs purport to bring claims for fraudulent or deceptive practices, which are subject to the heightened pleading requirements of Rule 9(b). *See, e.g.*, *Ibarolla v. Nutrex Research., Inc*., 2013 WL 672508, at \*4 (N.D. Ill. Feb. 25, 2013) (applying Rule 9(b) to claims under Illinois Consumer Fraud and Deceptive Business Practices Act).

"[M]erely listing [state consumer protection] statutes that could provide possible causes of action without explaining even the broadest contours of how those statutes were violated is insufficient to state a claim," particularly where "there is considerable variation in the elements of the state consumer protection statutes under which plaintiffs seek relief." *In re Aluminum Warehousing Antitrust Litig*., 2014 WL 4743425, at \*1 (S.D.N.Y. Sept. 15, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016).  For instance, in *Opana*, the court dismissed consumer protection claims where the plaintiff "pleaded antitrust claims and the factual foundation for them" and then "merely alleged that those claims are also actionable under state consumer protection laws and as unjust enrichment." 162 F. Supp. 3d at 726.  Another court similarly dismissed a bevy of state law claims where the plaintiffs "fail[ed] not only to account for any consequential differences that may exist among the undifferentiated state-law claims," but also relied on the "bald assertion that [the]

alleged antitrust conduct violates dozens of non-antitrust laws" without explaining why they were entitled to recovery. *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255–56 (D. Conn. 2015). That is essentially what Plaintiffs have done here. Many of the consumer-protection statutes under which Plaintiffs bring claims impose liability for a variety of types of practices. These include, depending on the statute, deceptive practices, unfair practices, unconscionable practices, and unlawful practices. But Plaintiffs do not explain which prong of each consumer protection statute they are alleging HP violated. They do not say whether HP's alleged practices are deceptive, unfair, unconscionable, or unlawful. (To the extent Plaintiffs allege that HP's practices are unlawful, they have failed to state a claim because they do not plausibly allege that those practices violated any law, as described throughout this brief.)

For example, the Arkansas Deceptive Trade Practices Act, under which Plaintiffs bring Count X, bars deceptive and unconscionable trade practices. *See* Compl. ¶¶ 124–29. But Count X merely discusses the supposed "effects" of HP's "illegal acts," without explaining what alleged conduct violated the statute; whether that conduct was deceptive, unconscionable, or both; or what made it deceptive or unconscionable. As another example, Plaintiffs bring a claim for violation of New Hampshire's Consumer Protection Act, but cite New Hampshire's *antitrust* law—leaving it especially unclear what they are trying to allege. *Id.* ¶¶ 418–26.

Some of Plaintiffs' allegations are simply nonsensical. For instance, Count XXV cites a subsection of Indiana's Deceptive Consumer Sales Act that refers to laws "concerning cigarettes for import or export." Compl. ¶ 228 (citing Ind. Code § 24-5-0.5-3(b)(17)). Similarly, Count XL cites a section of Minnesota's Uniform Deceptive Trade Practices Act concerning imitation Indian-made goods, along with nonexistent subsections. *Id.* ¶ 351 (citing Minn. Stat. § 325F.44).

The Court should dismiss Plaintiffs' consumer protection claims.[8]

> **b.** **Plaintiffs' misrepresentation claims should be dismissed because they neither identify actionable omissions nor allege reliance.**

While it is impossible to discern the basis for any of Plaintiffs' consumer-protection claims, Plaintiffs may purport to bring some of those claims under theories of misrepresentation, deception, or fraudulent conduct. Claims based on misrepresentation by omission, like any misrepresentation claims, are subject to the heightened pleading standard of Rule 9(b). *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 601 (7th Cir. 2019). Rule 9(b) requires a plaintiff to "set forth the date and content of the statements or omissions that it claim[s] to be fraudulent." *Midwest Com. Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993); *see also In re Ocwen Loan Servicing, LLC Mortg. Serv. Litig.*, 491 F.3d 638, 648 (7th Cir. 2007) (similar).

But Plaintiffs do not actually state that HP failed to disclose that its printers may not work with cartridges that do not have HP chips. They allege that HP did not make this disclosure on "its packaging, its End User License Agreement, or its Limited Warranty," Compl. ¶ 90, but do not allege that HP did not disclose that fact in *any* of its materials. Nor could they. As the court in *Parziale* found, HP in fact issued disclosures that put consumers "on notice that . . . dynamic security might render certain non-HP cartridges incompatible with the printer in the future." *Parziale v. HP, Inc (Parziale II)*, 2020 WL 5798274, at *6 (N.D. Cal. Sept. 29, 2020). Those disclosures were "sufficient to counter any potential misconception" about firmware updates issued by HP that included dynamic security features. *Parziale I*, 445 F. Supp. 3d at 445.

Plaintiffs also do not plausibly allege omission-based misrepresentation claims under the

---

[8] The Court should dismiss Counts V, VII, IX, X, XII, XIII, XV, XVII, XVIII, XX–XXII, XXIV, XXV, XXVII, XXIX–XXXI, XXXIII, XXXV–XXXVII, XL–XLIV, XLVI, XLIX, L, LII, LIV, LVII–LXI, LXIII, LXV–LXIX, LXXI–LXXVI, LXXVIII, and LXXX.

laws of a number of states because they do not allege that HP had any duty to disclose the ability

of cartridges with non-HP chips to function in HP printers. *See, e.g.*, *Valencia v. Volkswagen Grp.*

*of Am. Inc.*, 119 F. Supp. 3d 1130, 1135 (N.D. Cal. 2015) ("To state an actionable claim under the

CLRA or the UCL arising out of an omission, Plaintiffs must sufficiently plead that the defendant

had a duty to disclose the information omitted."); *Graphic Commc'ns Loc. 1B Health & Welfare*

*Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014) (An "omission-based

consumer fraud claim is actionable under the [Minnesota] CFA when special circumstances exist

that trigger a legal or equitable duty to disclose the omitted facts.").  Plaintiffs have not alleged

that HP made any partial misrepresentations that required it to disclose allegedly omitted facts, or

that HP otherwise had a duty to disclose any allegedly omitted facts.

In addition, to the extent that Plaintiffs purport to bring misrepresentation claims, many of

the consumer-protection statutes under which they allege causes of action require them to establish

that they relied on a misrepresentation.[9]  But Plaintiffs do not allege that they relied on

_____

[9] Plaintiffs must plead reliance for claims brought under the Arizona Consumer Fraud Act, *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) ("[R]eliance is a required element under Arizona's consumer fraud statute."); Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-113(f)(1)(2) (claimant must prove "actual financial loss proximately caused by his or her reliance"); California Consumer Legal Remedies Act, *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 46 (Ct. App. 2009) ("[R]eliance is required for CLRA actions."); California Unfair Competition Law, *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) (plaintiff basing UCL claim on misrepresentation "must demonstrate actual reliance on the allegedly deceptive or misleading statements"); Georgia Fair Business Practices Act, *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 18 (Ga. 2006) (a plaintiff must prove reliance on an alleged misrepresentation); Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-4(a) (reliance required for claim of deceptive act); Iowa Consumer Frauds Act, Iowa Code Ann. § 714.16(7) (reliance required for omission claims); Kansas Consumer Protection Act, *Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 691 (Kan. 1993) (plaintiffs who did not rely on false statement could not maintain cause of action under Kansas Consumer Protection Act); Maryland Consumer Protection Act, *Hoffman v. Stamper*, 843 A.2d 153, 191 (Md. Ct. Spec. App. 2004), *rev'd in part on other grounds*, 867 A.2d 276 (Md. 2005) ("showing of reasonable reliance" required under Maryland Consumer Protection Act); Michigan Consumer Protection Act, *Evans v. Ameriquest Mortg. Co.*, 2003 WL 734169, at *3 (Mich. Ct. App. Mar. 4, 2003) (omission claim under Mich. Stat. § 445.903(1)(s) requires reliance); Mississippi Consumer Protection Act, *Mayberry v. Bristol-Myers Squibb Co.*, 2009 WL 5216968, at *9 (D.N.J. Dec. 30, 2009) (dismissing MCPA claim where plaintiff failed to plead they "relied upon [defendants'] misrepresentation"); Montana Unfair Trade Practices and Consumer Protection Act, *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp.

misrepresentations by HP—the words "relied" and "reliance" don't appear in their 648-paragraph complaint. Plaintiffs certainly do not meet the heightened pleading requirement of Rule 9(b) on this point. Accordingly, the Court should dismiss their claims under statutes that require reliance.[10]

### c. Plaintiffs' unfairness and unconscionability claims should be dismissed for the same reasons as their antitrust claims.

Plaintiffs' complaint does not provide enough detail for HP to determine the basis for their consumer protection claims. However, to the extent that Plaintiffs purport to bring claims for unfair or unconscionable conduct under certain state statutes, those claims should be dismissed for the same reasons as their antitrust claims, because they are based on the same alleged conduct. Courts widely hold that, where a plaintiff has failed to state an antitrust claim, it has necessarily also failed to state a claim for unfair conduct. *See, e.g.*, *Aluminum Warehousing*, 2014 WL 4743425, at *1 (dismissing 29 consumer protection, unfair competition, and unfair trade practices claims that relied on same allegations as deficient antitrust claims); *In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003), *aff'd*, 466 F.3d 187 (2d Cir. 2006) (dismissing 21 state-law consumer protection and unfair competition claims that tracked

---

3d 625, 788 (C.D. Cal. 2022) (under the Montana CPA, "reliance on a defendant's unfair or deceptive acts is required to state a claim"); Oregon Unfair Trade Practices Law, *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 708 (2000) (requiring reliance for misrepresentation claims); Pennsylvania Unfair Trade Practices and Consumer Protection Law, *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) (requiring reliance for UTPCPL claims); South Dakota Deceptive Trade Practices and Consumer Protection Statute, South Dakota, *Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.*, 2009 WL 3150984, at *7 (D.S.D. Sept. 28, 2009) ("[T]o recover in an action under the South Dakota Deceptive Trade Practices Act, a plaintiff must have relied on the alleged misrepresentation."); Texas Deceptive Trade Practices and Consumer Protection Law, Texas Bus. & Com. Code § 17.50(a)(1)(B) (requiring reliance for claims enumerated in § 17.46(b)); Vermont Consumer Protection Act, Vt. Stat. Ann. tit. 9, § 2461 (requiring a showing of reliance); Virginia Consumer Protection Act, *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (2014) (VCPA "requires proof, in misrepresentation cases, of the elements of reliance and damages"); and Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-108 (requiring reliance).

[10] The Court should dismiss Counts IX, X, XII, XIII, XXII, XXV, XXVII, XXIX, XXXI, XXXV, XXXVII, XLII, XLIV, XLVI, LX, LXI, LXIII, LXVI, LXIX, LXXII, LXXIV, LXXV, and LXXX.

allegations underlying deficient federal antitrust claims).

Moreover, in states that follow the rule of *Illinois Brick*, Plaintiffs lack standing to bring claims for damages under consumer protection laws, to the extent that they purport to allege unfair or unconscionable conduct that is premised on the same alleged facts as their antitrust claims. Plaintiffs cannot recover damages by "seeking a prohibited antitrust recovery under the masquerade of a consumer protection statute." *Abbot Labs., Inc. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503, 507 (Tex. 1995); *see also, e.g.*, *In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *4 (D. Conn. Aug. 9, 2016) (damages claims brought by indirect purchasers barred under Louisiana consumer protection statute); *Major v. Microsoft Corp.*, 60 P.3d 511, 517 (Okla. Civ. App. 2002) (plaintiff "should not be permitted under the law to avoid" *Illinois Brick* "by recasting his claims of anticompetitive conduct as a Consumer Protection Act claim"); *Arnold v. Microsoft Corp.*, 2001 WL 1835377, at *7 (Ky. Ct. App. Nov. 21, 2001) (similar). The Court should dismiss Plaintiffs' claims for damages under the laws of those states.[11]

### d. Plaintiffs have not alleged that they provided pre-suit notice.

Many of the consumer protection statutes under which Plaintiffs bring claims require the provision of pre-suit notice to the defendant.[12] But Plaintiffs do not allege that they provided HP with notice of their claims. Instead, they state that they should be excused from providing notice

---

[11] The Court should dismiss Counts V, VII, X, XVIII, XXI, XXII, XXIV, XXX, XXXI, XLIV, L, LIX, LXIII, LXVI, LXXII, LXXV, LXXVI, and LXXX.

[12] Pre-suit notice is required for consumer fraud and/or protection claims brought under the California Consumer Legal Remedies Act, Cal. Civil Code § 1782; Georgia Fair Business Practices Act, Ga. Code § 10-1-399(b); Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-5; Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 5 § 213(1-A); Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A, § 9(3); Mississippi Consumer Protection Act, Miss. Code § 75-24-15(2) (requires pre-suit participation in "an informal dispute settlement program approved by the Attorney General"); Texas Deceptive Trade Practices and Consumer Protection Law, Tex. Bus. & Com. Code § 17.505; and Wyoming, Wyo. Stat. Ann. § 40-12-109.

because HP allegedly did not offer remedies to other consumers who experienced printing issues similar to the ones the named Plaintiffs say they experienced.  Compl. ¶ 53.  But statutes that require pre-suit notice do not excuse notice where it would be futile.  To the contrary, courts consistently dismiss claims where no actual pre-suit notice is alleged.  For instance, in *Outboard Marine Corp. v. Superior Court*, the California Court of Appeal rejected a contention that a prior lawsuit concerning similar conduct obviated the need for pre-suit notice under California's Consumer Legal Remedies Act because the "clear purpose" of the statute "may only be accomplished by a literal application of the notice provisions."  52 Cal. App. 3d 30, 41 (1975).  Because Plaintiffs did not provide HP with pre-suit notice, their claims arising under statutes requiring notice should be dismissed.[13]

        **e.**     **Plaintiffs fail to state a UCL claim because they do not allege that they lack an adequate remedy at law.**

Finally, Plaintiffs bring a claim for equitable relief for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  *See* Compl. ¶¶ 147–50.  To prevail on this claim, Plaintiffs must establish that they lack an adequate remedy at law.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of UCL claim where plaintiff failed to allege lack of adequate remedy at law).  But Plaintiffs have not pled that they lack an adequate remedy at law—they bring claims for damages under California's Cartwright Act and Consumer Legal Remedies Act.  Their UCL claim (Count XII) should be dismissed.

**V.**     **CONCLUSION**

For all these reasons, the Court should dismiss the complaint in its entirety with prejudice.

---

[13] The Court should dismiss Counts XII, XXII, XXV, XXXIII, XXXVI, XLII, LXXII, and LXXX.

Dated:   March 11, 2024                    Respectfully submitted,

                                           */s/ Vanessa G. Jacobsen*

                                           Vanessa G. Jacobsen
                                           John K. Adams
                                           EIMER STAHL LLP
                                           224 South Michigan Avenue, Suite 1100
                                           Chicago, IL 60604
                                           Telephone: 312.660.7600
                                           Facsimile: 312.692.1718
                                           vjacobsen@eimerstahl.com
                                           jadams@eimerstahl.com

                                           */s/ Samuel Liversidge*

                                           Samuel Liversidge, *pro hac vice*
                                           Ilissa Samplin, *pro hac vice*
                                           GIBSON, DUNN & CRUTCHER LLP
                                           333 South Grand Avenue
                                           Los Angeles, CA 90071-3197
                                           Telephone: 213.229.7000
                                           Facsimile: 213.229.7520
                                           sliversidge@gibsondunn.com
                                           isamplin@gibsondunn.com

                                           Rachel S. Brass, *pro hac vice*
                                           Sean F. Howell, *pro hac vice*
                                           GIBSON, DUNN & CRUTCHER LLP
                                           One Embarcadero Center, Suite 2600
                                           San Francisco, CA 94111
                                           Telephone: 415.393.8200
                                           Facsimile: 415.393.8306
                                           rbrass@gibsondunn.com
                                           showell@gibsondunn.com

                                           *Counsel for Defendant HP Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 11, 2024, I electronically filed a copy of the foregoing through the Court's CM/ECF system, which will send notifications of the filing to all counsel of record.

Dated:  March 11, 2024  */s/ Vanessa G. Jacobsen*

Vanessa G. Jacobsen