**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RENEE ROBINSON, et al., | ) |
|     Plaintiffs, | ) Case No. 24 C 164 |
| | ) |
| | ) District Judge: Martha M. Pacold |
| v. | ) |
| | ) Magistrate Judge: Gabriel A. Fuentes |
| HP, Inc., | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

This matter coming before the Court on referral for discovery supervision (D.E. 30), Defendant HP, Inc. ("HP") has moved ("Motion to Stay"; D.E. 26) to stay oral discovery pending the district court's ruling on its motion to dismiss the Complaint for failure to state a claim ("Motion to Dismiss"; D.E. 24). The Court has reviewed the parties' briefing on the Motion to Stay (D.E. 27, 33, 35, 37) and has considered the oral argument presented by the parties at a motion hearing held on May 2, 2024 (D.E. 44). The Court also reviewed briefing on the Motion to Dismiss, not to try to decide that motion or to predict its outcome, but to understand the parties' arguments on that motion, particularly as they concern whether the Motion to Dismiss presents the kind of threshold issue that might justify a discovery stay, within the parameters of the multifactorial approach that courts have adopted in deciding motion to stay in this judicial district. *See New England Carpenters Health and Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at *2-3 (N.D. Ill. Feb. 20, 2013) (discussing need for a threshold issue and not simply an argument that a dispositive motion will resolve the entire case); *Rodriguez v. Ford Motor Co.*, No. 21 C 2553, 2022 WL 704780, at *1 (N.D. Ill. Mar. 9, 2022) (granting stay after applying the three

doctrinal factors used to analyze stay motions and noting the district court's broad discretion in deciding these motions). The Court decides the Motion to Stay here within the broad discretion afforded to magistrate judges to manage discovery, and as part of the Court's effort to promote the just, speedy and inexpensive determination of the matter. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); Fed. R. Civ. P. 1.

**INTRODUCTION**

Plaintiff Renee Robinson is one of 11 putative class members in this civil antitrust suit against HP over how HP sells printer cartridges, allegedly in a manner designed to prevent consumers from buying the cartridges from third parties and forcing them into a replacement ink cartridge "aftermarket" consisting only of HP cartridges. Plaintiffs bring 79 causes of action. Compl. (D.E. 1) at 14-109. These include a claim under the Computer Fraud and Abuse Act; claims under the Sherman Act for tying and monopolization; a claim for unjust enrichment; and 76 claims under various state statutes. *Id*. Plaintiffs purport to bring these claims on behalf of two putative classes. *Id*. at 12-14. The first, an "HP Ink Purchaser Class," is composed of persons who purchased an "HP-branded replacement ink cartridge" for any one of 43 different printer models between September 2022 and the present. *Id.* The second, a "Firmware Update Class," is composed of persons who purchased a "non HP-branded replacement ink cartridge" for the same printer models over the same time period, and who were "unable to use [those models] because of the effects of the series of firmware update[s]." *Id.* (emphasis added). HP says is too costly and burdensome to be allowed to proceed now with so much of the case called into question by the Motion to Dismiss. The Motion to Stay focuses on two dismissal arguments that HP characterizes as attacking Plaintiffs' standing to bring their claims: (1) that plaintiffs' 79-some claims include 63 arising under the laws of states in which plaintiffs do not live; and (2) the claims relate to 36

2

printer models that plaintiffs did not purchase. HP Memorandum of Law in Support of Motion to Stay Discovery ("HP Mem."; D.E. 27) at 3. HP explained further, and at oral argument, that a total of 43 printer models are at issue, so that HP's standing argument applies to claims concerning 36 of those models, and that if HP's motion is granted in full, 80 percent (63 of 79) of plaintiffs' claims will be out of the case. HP Reply Memorandum (D.E. 37) at 3. HP argues that therefore, a district court acceptance of HP's standing arguments "would eliminate the need for discovery" concerning 80 percent of the claims, but that 16 causes of action would remain, concerning seven printer models. *Id.*

## ANALYSIS

District courts have broad discretion in managing discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). In accordance with Federal Rule of Civil Procedure 26, a court may, for good cause, limit the scope of discovery or control its sequence to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see Crawford-El*, 523 U.S. at 599; *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *1 (N.D. Ill. Nov. 17, 2010). It is the movant's burden to show that good cause exists for a stay. *Harper v. Cent. Wire,* Inc., No. 19 CV 50287, 2020 WL 5230746, at *1 (N.D. Ill. Sept. 2, 2020). In determining whether good cause exists to stay discovery during the pendency of a motion to dismiss, courts consider the following factors: (1) whether a stay will prejudice the non-moving party; (2) whether a stay will simplify the issues in the case; and (3) whether a stay will reduce the burden of litigation for the parties or the court. *Id.; Liggins v. Reicks,* No. 19 C 50303, 2021 WL 2853359, at *1 (N.D. Ill. July 8, 2021).

The mere filing of a motion to dismiss does not automatically stay discovery. *SK Hand Tool Corp. v. Dresser Indus.,* 852 F.2d 936, 945 (7th Cir.1988). Nor does filing a motion to stay mean that a court will automatically grant it. *DSM Desotech Inc. v. 3D sys. Corp.*, No. 08 C 1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008). In most cases the existence of a dispositive motion is not the sole reason for granting the stay. *Syngenta Seeds, Inc. v. BTA Branded, Inc.,* No. 05 C 6673, 2007 WL 3256848, at *1 (N.D. Ill. Nov. 1, 2007). Instead, a stay of discovery is generally appropriate only when a party raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing, *see U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 79-80 (1988), or pending resolution of qualified immunity claims, *see Landstrom v. Illinois Dep't of Children & Family Servs.,* 892 F.2d 670, 674 (7th Cir. 1990) and *Liggins*, 2021 WL 2853359, at *2-3. Accordingly, courts have denied discovery stays where the movant's primary argument is that the motion to dismiss has a high likelihood of success, because if that somewhat speculative rationale were enough, discovery arguably ought to be stayed every time a defendant files a dismissal motion it considers meritorious. *New England Carpenters Health and Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at *2-3 (N.D. Ill. Feb. 20, 2013).

The Court's March 19, 2024, briefing order (D.E. 32) sought to focus HP on the "threshold" analysis of *New England Carpenters*, and the Court appreciates HP's do-over of its opening brief in compliance with that order. Oral argument by the less-experienced attorneys (who, at the Court's suggestion but not requirement, were allowed by the parties and counsel to argue the Motion to Stay at the May 2 motion hearing),[1] made clear that the parties have a significant

---

[1] The performances at oral argument by plaintiffs' counsel Austin Michael Krtausch and HP's counsel Courtney L. Spears were splendid. The Court has found that when parties and their senior counsel have permitted associates or less-experienced attorneys to stand up and argue clients' positions in court, the arguing attorneys have seized their opportunities by being exceedingly prepared, knowledgeable about the

disagreement as to whether the foregoing two aspects of the Motion to Dismiss are truly standing arguments (as HP contends) or are questions directed at the adequacy of the named plaintiffs and putative class representatives) to serve as class representatives (as plaintiffs contend). In deciding the Motion to Stay based on the three factors courts normally consider on these motions, the Court will not weigh in on whether the two Motion to Dismiss arguments relied on by HP for its Motion to Stay are or are not "standing" arguments. The magistrate judge believes the parties should present this disagreement to the district court for resolution, and the magistrate judge is making no determinations concerning the merits of the Motion to Dismiss. The attacks on the plaintiffs' purported lack of state citizenship as to some claims and on their ability to make class claims based on printers they have not alleged that they purchased may well be a standing issue that could qualify as a "threshold" issue triggering a stay under *New England Carpenters*, but in considering the three factors, the magistrate judge looks also at HP's admission that not all of the case would fall away if the Motion to Dismiss is granted in full.

HP does not explain how the remaining 16 claims (assuming the Motion to Dismiss is granted) would differ substantially from the other 63 to a degree that would make discovery concerning the 16 claims somehow outside the broad scope of discovery under Federal Rule of

---

case and the relief requested, and nimble in responding to the Court's questions. The Court's practice of encouraging parties and their senior counsel to decide – and it is their decision, not the Court's – to offer less-experienced attorneys these opportunities is not a new one, as it arose from the magistrate judge's observations of district judges across the country while in private practice. In not one instance has any party been underserved by this Court's practice. In not one instance has the Court's path to the legally or factually correct result been obstructed or diverted. In all instances, the Court has permitted broad supervision by senior counsel, who may chime in as they wish – but they rarely do. To the extent courts can develop a measured, fair, and lawful means of promoting greater professional development of less-experienced attorneys or attorneys whose backgrounds or experiences indicate they have overcome adversity, courts need not shy away from doing so in our world of the vanishing trial and of fewer in-court appearances after the 2020 pandemic onset. The legal profession, the courts, and litigants benefit by allowing these attorneys to hone their skills. Nothing hones oral argument skills like arguing instead of carrying the briefcase. And if the parties or their senior counsel would rather that the less-experienced attorneys be seen and not heard at motion hearings or trials, that is up to them, and they are free to oversee the professional development of these attorneys as they see fit.

Civil Procedure 26(b)(1). HP does not explain how discovery on the 16 claims would be somehow unduly cumulative or disproportionate to the needs of the case. Meanwhile, plaintiffs would be denied all discovery if the Motion to Stay is granted (as HP has moved to stay "all discovery" during the pendency of the Motion to Dismiss, *see* Motion to Stay at 1), including discovery into claims that HP agrees would continue to be viable no matter how the Motion to Dismiss is decided. Accordingly, the Court cannot conclude that the requested full discovery stay would cause plaintiffs no prejudice, under the first factor. Moreover, as noted above, with the Court not persuaded that discovery as to the 16 claims would differ so radically from discovery of the full 79 claims, the Court was not persuaded that the requested stay would streamline or simplify the issues in the case (the second factor) or would reduce the burden of discovery on the parties or the Court to a degree that would justify the requested stay (the third factor). HP relies on *Calderon v. Procter & Gamble Co.*, No. 22-cv-3326, 2022 WL 20742696 (N.D. Ill. Oct. 6, 2022), in which the district court stayed discovery in a nationwide class action involving consumer protection and fraud claims, reasoning that the pending motion to dismiss (as the basis for a stay) "additionally raises a threshold issue of whether Plaintiff possesses standing to maintain certain claims." *Id.* at *2. But arguments for a stay pending a dispositive motion are fact-dependent matters for the Court's discretion, and the argument in *Calderon* was more persuasive than HP's argument here. In *Calderon*, in addition to making "standing" arguments, the motion to dismiss in question argued that federal law pre-empted all of the plaintiff's claims. *Id.* And again, this Court is exercising its discretion to steer clear of characterizing HP's arguments on the Motion to Dismiss as presenting "standing" questions, though they may well be. Even if those arguments do resemble or constitute standing arguments, they do not dispose of the entire case, as the dismissal arguments would have in *Calderon.*

6

The Court does not disagree with the general proposition articulated by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-59 (2007), that complex antitrust cases warrant the careful review of district courts before they should be allowed to proceed past the pleading stage. HP focuses on the Supreme Court's comments that the "costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery," HP Mem. at 5, quoting *Twombly*, 550 U.S. at 558, and citing *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008). Yet the context for the *Twombly* quote was the Supreme Court's concern about specificity and plausibility of the pleaded allegations, and the *Limestone* court's reference to not putting defendants "to the expense of big-case discovery on the basis of a threadbare claim" came in a civil RICO and civil rights action brought under 42 U.S.C. § 1983, and not the antitrust laws. In any event, the Court is not considering plaintiffs' claims to be "threadbare" at this stage of the case, at least for purposes of analyzing the Motion to Stay. Whether 63 of the 79 claims are "threadbare" is yet to be determined, and that fact that the Motion to Dismiss might establish that they are "threadbare" is not in itself a reason to stay discovery. In addition, with 16 claims remaining if HP prevails in full on the Motion to Dismiss, and with no reason for the Court to conclude that those claims differ substantially, for discovery purposes, from those HP asks the district court to dismiss, this Court cannot conclude that the full scope of plaintiffs' claims in this case is so "threadbare" that discovery ought to be stopped in its tracks until the Motion to Dismiss is decided.

## CONCLUSION

For the foregoing reasons, the Court denies the Motion to Stay within its broad discretion to manage discovery.

**SO ORDERED.**

                                      **ENTER:**

                                      _____
                                      **GABRIEL A. FUENTES**
                                      **United States Magistrate Judge**

**DATED: May 9, 2024**