**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RENEE ROBINSON, RICHARD MYERS,
ANNETTE FIRST, CASEY GADDY,
STEVEN GOUISIE, ROBERT PLUNKETT,
FRANCOIS STEIGER, JAMES ULRICH,
GABRIEL VOILES, JOHN WAUDBY, and
LAKESHA WELLS, on behalf of themselves
and all others similarly situated,

      *Plaintiffs*,

     v.

HP INC., a Delaware corporation,

      *Defendant*.

Case No. 1:24-cv-00164

Judge Martha M. Pacold

**HP'S REPLY MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A.    The Court Should Again Dismiss Plaintiffs' Misrepresentation Claims. ............... 1

        1.  Plaintiffs Do Not Plausibly Allege HP Had A Duty To Disclose ..................... 2

        2.  HP Put Consumers on Notice of Dynamic Security. ....................................... 4

        3.  Plaintiffs Do Not Plausibly Allege That HP Caused Them Harm. .................... 9

    B.    The Court Should Dismiss Plaintiffs' Antitrust Claims For Failure To Plead An Unlawful Tie Or Exclusionary Conduct. ............................................................. 11

        1.  Plaintiffs Have Not Plausibly Alleged Tying Under § 1. ............................... 11

        2.  Plaintiffs Have Not Plausibly Alleged Exclusionary Conduct Under § 2. ..... 13

    C.    Plaintiffs Have Not Plausibly Alleged A Relevant Aftermarket. ......................... 15

        1.  Plaintiffs Have Not Plausibly Alleged That HP's Practices And Policies Regarding Cartridges With Non-HP Chips Were "Not Generally Known." .. 16

        2.  Plaintiffs Have Not Plausibly Alleged That HP's Actions Prevented Them From Calculating The Cost Of Owning An HP Printer. ................................ 17

        3.  Plaintiffs Have Not Plausibly Alleged Significant Switching Costs. ............. 18

        4.  Plaintiffs Have Not Plausibly Alleged That Cartridges For Dynamic-Security-Enabled HP Printers Are Reasonably Interchangeable. .................................. 18

    D.    The Court Should Dismiss Plaintiffs' State Antitrust Claims For Additional Reasons. .......................................................................................................... 20

    E.    The Court Should Dismiss Plaintiffs' Consumer-Protection Claims For Additional Reasons. .......................................................................................................... 20

III. CONCLUSION ............................................................................................ 20

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alioto v. Town of Lisbon*,
651 F.3d 715 (7th Cir. 2011) ....................................................................................12, 13

*Am. Needle, Inc. v. New Orleans Louisiana Saints*,
385 F. Supp. 2d 687 (N.D. Ill. 2005) .............................................................................19

*Angus v. Flagstar Bank, FSB*,
2025 WL 937760 (E.D. Mich. Mar. 27, 2025) ...............................................................10

*Avaya Inc., RP v. Telecom Labs, Inc.*,
838 F.3d 354 (3d Cir. 2016)......................................................................................14, 15

*Broodie v. Target Corp.*,
2024 WL 3341342 (M.D. Fla. June 6, 2024)..................................................................11

*Buechin v. Ogden Chrysler-Plymouth, Inc.*,
511 N.E.2d 1330 (Ill. App. Ct. 1987) ..............................................................................3

*Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.*,
758 F.2d 203 (7th Cir. 1985) ..........................................................................................12

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ........................................................................................11

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993)............................................................................................9

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021)...............................................................................9

*Connick v. Suzuki Motor Co.*,
675 N.E.2d 584 (Ill. 1996)................................................................................................3

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009)............................................................................................3, 4

*Delgado v. Ocwen Loan Servicing, LLC*,
2014 WL 4773991 (E.D.N.Y. Sep. 24, 2014)...................................................................7

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.*,
73 F.3d 756 (7th Cir. 1996) ......................................................................................14, 15

*DJ Lincoln Enters., Inc. v. Google LLC*,
2022 WL 203365 (11th Cir. Jan. 24, 2022) ......................................................................4

i

*DSM Desotech Inc. v. 3D Sys. Corp.*,
749 F.3d 1332 (Fed. Cir. 2014) ........................................................................................... 13

*Dugan v. TGI Fridays, Inc.*,
171 A.3d 620 (N.J. 2017) ..................................................................................................... 10

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ................................................................................... 12, 13, 14, 15

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ...................................................................... 14, 15, 16, 18

*Estate of Pilgrim v. Gen. Motors LLC*,
344 F.R.D. 381 (E.D. Mich. 2023) ...................................................................................... 10

*F.T.C. v. Willms*,
2011 WL 4103542 (W.D. Wash. Sept. 13, 2011) ....................................................................... 8

*Fraser Eng'g Co. v. Desmond*,
524 N.E.2d 110 (Mass. App. Ct. 1988) ................................................................................. 10

*Guajardo v. Skechers USA, Inc.*,
503 F. Supp. 3d 746 (C.D. Ill. 2020) ...................................................................................... 3

*Gurrola v. Ford Motor Co.*,
774 F. Supp. 3d 959 (N.D. Ill. 2025) ...................................................................................... 10

*Henry v. Campbell Soup Co.*,
2023 WL 2734778 (E.D.N.Y. Mar. 31, 2023) ...................................................................... 7

*Hickory Farms, Inc. v. Snackmasters, Inc.*,
500 F. Supp. 2d 789 (N.D. Ill. 2007) ...................................................................................... 2

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ............................................................................................. 19

*Illinois Cent. Gulf R. Co. v. Dep't of Local Gov't Affairs*,
523 N.E.2d 1048 (Ill. App. Ct. 1988) ...................................................................................... 4

*In re Asacol Antitrust Litig.*,
2016 WL 4083333 (D. Mass. July 20, 2016) ...................................................................... 20

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
313 F. Supp. 3d 931 (N.D. Ill. 2018) ............................................................................ 17, 18

*In re Deere & Co. Repair Serv. Antitrust Litig.*,
703 F. Supp. 3d 862 (N.D. Ill. 2023) ...................................................................................... 12

*In re Effexor Antitrust Litig.*,
357 F. Supp. 3d 363 (D.N.J. 2018) ...................................................................................... 20

*In re Folgers Coffee Mktg.*,
159 F.4th 1151 (8th Cir. 2025) ...................................................................................... 10

ii

*In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*,
    151 F.4th 922 (7th Cir. 2025) ...........................................................................16

*In re Lipitor Antitrust Litig.*,
    336 F. Supp. 3d 395 (D.N.J. 2018) ...................................................................20

*In re Loestrin 24 FE Antitrust Litig.*,
    410 F. Supp. 3d 352 (D.R.I. 2019) ...................................................................20

*In re Prudential Secs. Inc. Ltd.*,
    930 F. Supp. 68 (S.D.N.Y. 1996) ...................................................................6, 7

*In re Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg.*,
    2023 WL 9064606 (W.D. Mo. Dec. 13, 2023) .................................................10

*In re St. Jude Med., Inc.*,
    522 F.3d 836 (8th Cir. 2008) ..............................................................................9

*In re Subaru Battery Drain Prods. Liab. Litig.*,
    2021 WL 1207791 (D.N.J. Mar. 31, 2021) .........................................................4

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014) .................................................................7

*Lazaroff v. Paraco Gas Corp.*,
    2011 WL 9962089 (N.Y. Sup. Ct. Feb. 25, 2011) ..............................................3

*Litster Frost Inj. Lawyers v. Idaho Inj. L. Grp.*,
    518 P.3d 1 (Idaho 2022) ...................................................................................11

*Lonner v. Simon Property Grp., Inc.*,
    57 A.D.3d 100 (N.Y.2d 2008) ............................................................................7

*Maple v. Costco Wholesale Corp.*,
    649 Fed. App'x 570 (9th Cir. 2016) .................................................................10

*Mausner v. Marketbyte LLC*,
    2013 WL 12073832 (S.D. Cal. Jan. 4, 2013) .....................................................6

*Menzies v. Seyfarth Shaw LLP*,
    943 F.3d 328 (7th Cir. 2019) ..............................................................................2

*MLW Media LLC v. World Wrestling Ent., Inc.*,
    655 F. Supp. 3d 946 (N.D. Cal. 2023) ..............................................................19

*Mobile Emergency Housing Corp. v. HP, Inc.*,
    2021 WL 9867952 (N.D. Cal. Oct. 15, 2021) ....................................................7

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ..........................................................................19

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ........................................................................14

*O'Neill v. Standard Homeopathic Co.*,
346 F. Supp. 3d 511 (S.D.N.Y. 2018)..................................................................................10

*Parziale v. HP, Inc.* (*Parziale I*),
445 F. Supp. 3d 435 (N.D. Cal. 2020) .................................................................................6

*Parziale v. HP, Inc.* (*Parziale II*),
2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ...............................................................6, 16

*PSI Repair Servs., Inc. v. Honeywell, Inc.*,
104 F.3d 811 (6th Cir. 1997) ..........................................................................................14, 17

*Richman v. Goldman Sachs Grp., Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012)..................................................................................6

*Robinson v. Gen. Motors LLC*,
2021 WL 3036353 (D. Del. July 19, 2021) ........................................................................10

*Robinson-Bock Distrib. Co., Inc. v. Pioneer/Eclipse Corp.*,
1993 WL 326365 (7th Cir. Aug. 25, 1993)..........................................................................14

*Rodriguez v. Hanesbrands Inc.*,
2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018).......................................................................8

*Rohlfing v. Manor Care, Inc.*,
172 F.R.D. 330 (N.D. Ill. 1997)...........................................................................................19

*Schor v. Abbott Labs.*,
457 F.3d 608 (7th Cir. 2006) ...............................................................................................14

*SEC v. DeFrancesco*,
699 F. Supp. 3d 228 (S.D.N.Y. 2023)................................................................................6, 7

*SEC v. Gallagher*,
2023 WL 6276688 (S.D.N.Y. Sept. 26, 2023).......................................................................6

*SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*,
188 F.3d 11 (1st Cir. 1999).................................................................................................18

*So v. HP, Inc.*,
2023 WL 4596778 (N.D. Cal. July 17, 2023)........................................................................7

*Stoltz v. Fage Dairy Processing Indus.*,
2015 WL 5579872 (E.D.N.Y. Sep. 22, 2015)........................................................................7

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966)............................................................................................................13

*United States v. Nat'l Fin. Servs., Inc.*,
98 F.3d 131 (4th Cir. 1996) ..................................................................................................9

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko*,
540 U.S. 398 (2004).............................................................................................................13

iv

*Williams v. Tissier*,
   165 N.E.3d 885 (Ill. App. 2019) ........................................................................................7

*Wilson v. Quadramed Corp.*,
   225 F.3d 350 (3d Cir. 2000)...............................................................................................9

*Xerox Corp. v. Media Scis., Inc.*,
   660 F. Supp. 2d 535 (S.D.N.Y. 2009)..............................................................................18

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
   Principles and Their Applications* (2025).........................................................................16

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................20

## I.    INTRODUCTION

Plaintiffs seek to bring misrepresentation claims against HP without alleging a misrepresentation.  Their case is premised on the argument that HP didn't *sufficiently disclose* that there were potential incompatibilities between its printers and cartridges with non-HP chips.  The problem with this theory is that HP did just that, in plain language on the front of its printer boxes, *from 2016 on*.  Plaintiffs have twisted themselves into knots trying to get around this problem, first ignoring HP's disclosure, then (when that didn't work) misleadingly quoting only a portion of it.  Their latest gambit is to argue that the names of certain HP printer lines were misleading because consumers had come to believe they would be able to use non-HP cartridges with those printers, despite HP's repeated warnings to the contrary.  But if a company's legal liability depends on a Rorschach-like exploration of the associations consumers form with products, or on what consumers (however unreasonably) have come to "expect" from a product, then the simplest of branding choices would become a minefield.  Fortunately, that's not how it works.  Plaintiffs' ceaseless maneuvering cannot turn their complaint into the basis of a viable lawsuit.

## II.    ARGUMENT

**A.    The Court Should Again Dismiss Plaintiffs' Misrepresentation Claims.**

HP disclosed precisely what Plaintiffs say it should have: that its printers were "dynamic security enabled," that they were "[o]nly intended to be used with cartridges using an HP original chip," and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future."  Sutherland Decl. ¶ 4 & Ex. A.[1]  Plaintiffs do not plausibly allege that HP

---

[1] The Court may consider this disclosure because the amended complaint incorporates it by reference—a fact Plaintiffs do not dispute.  *See* Mot. at 11–12.  HP made disclosures about dynamic security in many other places, too—on web pages to which its on-box disclosures directed consumers and in pop-up messages that accompanied firmware updates, among other places—which HP mentions only for context; the Court need not consider HP's other disclosures  to grant its motion to dismiss.

1

had a duty to disclose more, or that HP's alleged misrepresentation caused them harm.

### 1. Plaintiffs Do Not Plausibly Allege HP Had A Duty To Disclose.

Plaintiffs have twice changed their misrepresentation theory. In their original complaint, they alleged HP failed to disclose that its printers may not work with cartridges that do not have HP chips. Dkt. 1 ¶ 90. In their amended complaint, they acknowledged that, since 2016, HP has disclosed on its printer boxes that "non-HP ink 'may not work,'" but alleged this was misleading because HP "did not disclose that HP intended to employ computer code to remotely disable the printers' ability to use cheaper, non-HP ink." FAC ¶¶ 67–69. Plaintiffs now argue a third theory for the first time in their opposition brief: that HP's packaging is misleading because the "OfficeJet, DeskJet, and DesignJet" product line names "ha[ve] become synonymous with open choice in the replacement ink market." Opp. at 2.

The Court should reject this new theory because it is unpleaded. Plaintiffs contend they alleged it by including "an image" of a printer box. Opp. at 6. But a photograph cannot plausibly put HP on notice of a theory that its product names themselves are deceptive, and it does not come close to satisfying Rule 9(b)'s requirement to plead the "who, what, when, where, and how" of the alleged fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019).

In any event, the theory fails on the merits. There is no support for Plaintiffs' theory that an ordinary product name—without any affirmative representation—can be actionable as a misrepresentation. Their argument appears to import trademark concepts about consumer associations into fraud law. But while the fact that "[c]ertain terms may connote more than the sum of their parts" is highly relevant to determining whether the terms are generic in the trademark context, *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 795 (N.D. Ill. 2007), the ideas customers associate with certain terms have no bearing on the law of misrepresentation, at least where the terms don't convey any kind of representation. Under Plaintiffs' logic, any

2

established brand name could become actionable if a product later changes. That is not the law.

The cases Plaintiffs cite are inapposite. In *Lazaroff v. Paraco Gas Corp.*, 2011 WL 9962089 (N.Y. Sup. Ct. Feb. 25, 2011), the court declined to dismiss a misrepresentation claim where the defendant filled a 20-pound propane tank with only 15 pounds of propane and labeled it "full." *Id.* at *1. A disclosure stating that the tank only contained 15 pounds was ineffective because it was not visible to the buyer at the time of purchase. *Id.* at *5. And in *Buechin v. Ogden Chrysler-Plymouth, Inc.*, 511 N.E.2d 1330 (Ill. App. Ct. 1987), the defendant falsely advertised a vehicle as "new" though the car had been driven 650 miles. *Id.* at 1332–34. These are straightforward misrepresentation cases: the defendants made misleading statements and failed to make curative clarifications. These cases do not say that consumers' "past experience" with a product bears on whether the product's label is misleading, as Plaintiffs insist. *See* Opp. at 7. Regardless, there is no misrepresentation here. HP did not state, or even imply, that its printers were intended to be used with third-party cartridges using non-HP chips; it said the opposite.

In the alternative, Plaintiffs insist HP had a duty to disclose its "plan to deploy firmware updates" because it had "exclusive knowledge" of this plan, which was a "material fact[] not known to consumers." Opp. at 8–9, 11. But Plaintiffs misstate the duty-to-disclose standard. They cite a California case (Opp. at 11–12), but they do not bring California-law claims (and they misstate the California standard in any event, as this Court previously held, Dkt. 96 at 25–26). Plaintiffs also cite two Illinois cases for this proposed standard. Opp. at 12. But under Illinois law, "a plaintiff must allege an omission from a communication, not a general failure to disclose." *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 754 (C.D. Ill. 2020) (citing *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009)). The Illinois Supreme Court has explained that one of the cases Plaintiffs rely on, *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996), confirms there

3

can be no claim for an omission in the absence of a misleading statement, noting that the plaintiff in *Connick* challenged "direct statements . . . that contained both misleading statements and material omissions." *De Bouse*, 922 N.E.2d at 316. In Plaintiffs' other Illinois case, the court noted that the seller of a house has a duty to disclose "facts materially affecting the value or desirability of the home," *Illinois Cent. Gulf R. Co. v. Dep't of Local Gov't Affairs*, 523 N.E.2d 1048, 1052 (Ill. App. Ct. 1988)—a rule not at issue here. Other states hold that a duty to disclose only arises where there is a "confidential, contractual, or fiduciary relationship," *DJ Lincoln Enters., Inc. v. Google LLC*, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022), and that a duty does *not* arise where one party has "merely . . . superior knowledge in an arm's-length transaction," *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *25 (D.N.J. Mar. 31, 2021).

Even if Plaintiffs are correct that a defendant has a duty to disclose material information of which it has exclusive knowledge, they have not plausibly alleged that HP had exclusive knowledge of its dynamic-security firmware updates because they allege that HP has been releasing these updates *since 2016*. FAC ¶ 40.

### 2. HP Put Consumers on Notice of Dynamic Security.

Even assuming for the sake of argument that HP had a duty to disclose *even more* facts about the incompatibility of its printers with cartridges with non-HP chips, the Court should still dismiss Plaintiffs' misrepresentation claims because HP disclosed the additional information Plaintiffs say it should have. Plaintiffs insist HP omitted that "HP's intent to block cartridges made it a virtual certainty that impacted cartridges would not work." Opp. at 14. There seem to be two arguments here: that HP's disclosure was misleading because HP (1) failed to disclose that cartridges with non-HP chips would not work to a "virtual certainty," and (2) failed to disclose its "intent to block cartridges" through firmware updates. Plaintiffs are wrong on both counts. And their additional arguments about font size, HP's warnings about the quality of non-HP cartridges,

4

and consumer reviews do not provide any reason to allow their claims to proceed.

### a. Plaintiffs concede that some non-HP cartridges work in HP printers.

Plaintiffs insist HP should have disclosed that cartridges with non-HP chips would not work in HP printers, but Plaintiffs themselves allege that this fact isn't certain. They concede that HP's firmware updates only applied to "*registered*" users. FAC ¶¶ 1, 59, 167 (emphasis added). That means they do not allege HP can exercise "control over all its printers." Dkt. 96 at 15–16. Plaintiffs also allege that HP's firmware updates blocked only "certain" non-HP cartridges, FAC ¶¶ 1–2, or "many, if not most, non-HP ink cartridges," *id.* ¶ 113. This is true: not all HP printer owners agree to accept firmware updates, and even those who do accept firmware updates may still use non-HP-original cartridges, including (1) the many cloned cartridges whose manufacturers have successfully defeated dynamic-security updates, (2) cartridges that have been refilled, or (3) remanufactured cartridges with a recycled HP chip. So, according to Plaintiffs' own factual allegations, the statement that cartridges with non-HP chips "may not work" was truthful.

### b. HP disclosed its intent.

As for HP's "intent to block cartridges," HP disclosed that Plaintiffs' printers were "[o]nly *intended* to be used with cartridges using an HP original chip." Sutherland Decl. ¶ 4 & Ex. A (emphasis added). In other words, HP disclosed just what Plaintiffs say it should have. Plaintiffs argue that HP concealed its plan to "cause previously-compatible cartridges to stop working" (Opp. at 8–9), but HP in fact disclosed that "[c]artridges using a non-HP chip may not work, and *those that work today may not work in the future*." Sutherland Decl. ¶ 4 & Ex. A (emphasis added). HP's disclosure did not discuss the role of firmware updates in causing cartridges to stop working, but the fact that HP didn't disclose the mechanism doesn't change the fact that it disclosed the information that would be material to a reasonable consumer. No reasonable consumer would interpret this statement as a promise that non-HP cartridges would work in their printers and

5

continue to work in the future. That is the opposite of what the disclosure says.

This case is on all fours with *Parziale v. HP, Inc.* (*Parziale II*), 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020), in which the court held that the statement "[t]his Firmware includes dynamic security measures, which may prevent supplies with non-HP chips or circuitry from working now or in the future" put consumers "on notice that . . . dynamic security might render certain non-HP cartridges incompatible with the printer in the future." *Id.* at *5–6. Plaintiffs contend *Parziale* is inapposite (Opp. at 14–15), but the plaintiff in that case "argue[d] that HP failed to disclose its 'ability to lock out third-party cartridges or refilled cartridges with its firmware updates,'" *Parziale v. HP, Inc.* (*Parziale I*), 445 F. Supp. 3d 435, 443 (N.D. Cal. 2020). Plaintiffs' theory is the same.

Plaintiffs try to fit their allegations to five securities-fraud cases that involved either pump-and-dump schemes (*SEC v. Gallagher*, 2023 WL 6276688, at *1–2, 9 (S.D.N.Y. Sept. 26, 2023); *Mausner v. Marketbyte LLC*, 2013 WL 12073832, at *7–8 (S.D. Cal. Jan. 4, 2013)); statements that a company's investments aligned with investors' incentives when in fact the defendant held "substantial" equity in positions contrary to those incentives (*Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 278–79 (S.D.N.Y. 2012)); or allegations that the defendants disclosed generic risks while concealing specific risks that had already come to pass or were certain to do so (*SEC v. DeFrancesco*, 699 F. Supp. 3d 228, 235–36, 239–41 (S.D.N.Y. 2023); *In re Prudential Secs. Inc. Ltd.*, 930 F. Supp. 68, 72, 74–75 (S.D.N.Y. 1996)). *Gallagher*, *Mausner*, and *Richman* are inapposite because Plaintiffs do not allege that HP ever touted the use of cartridges with non-HP chips while secretly working to undermine its printers' compatibility with those cartridges. *DeFrancesco* and *Prudential* are inapposite because HP did not understate the risk that cartridges with non-HP chips would not work. To the contrary, it told consumers that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future." Sutherland

Decl. ¶ 4 & Ex. A. Plaintiffs' complaint is that HP did not disclose *why* those cartridges may not work—not that it did not disclose the *extent* of the risk (the issue in *DeFrancesco* and *Prudential*).

Plaintiffs also argue that the Court should follow the reasoning of *So v. HP, Inc.*, 2023 WL 4596778 (N.D. Cal. July 17, 2023), and *Mobile Emergency Housing Corp. v. HP, Inc.*, 2021 WL 9867952 (N.D. Cal. Oct. 15, 2021). Opp. at 14. But this Court already explained why these cases are inapposite. Dkt. 96 at 24–25.

### c. None of Plaintiffs' additional allegations make HP's clear disclosure misleading.

Plaintiffs contend they have nevertheless done enough to survive a motion to dismiss on their misrepresentation claims because they have alleged that (1) HP's disclosure was printed in a small font, (2) HP warned of the poor quality of non-HP cartridges starting in 2010, and (3) some consumers did not read or understand HP's disclosure. Plaintiffs are wrong on all counts.

*First*, Plaintiffs argue that HP's dynamic-security disclosure did not cure its "misleading" printer names because it was in a smaller font. Opp. at 7–8. But the printer names were not misleading, and the fact that a clarifying disclosure is in a smaller font does not make it inadequate. The disclosures in the cases Plaintiffs rely on were inadequate for other reasons. They were concealed on the backs of checks or buried in documents (*Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *1–2, *9 (E.D.N.Y. Sep. 24, 2014), *Lonner v. Simon Property Grp., Inc.*, 57 A.D.3d 100, 102–05 (N.Y.2d 2008), *Williams v. Tissier*, 165 N.E.3d 885, 889–90 (Ill. App. 2019)); were "materially" smaller than required by statute (*Lonner*, 57 A.D.3d at 104); were confusing (*Williams*, 165 N.E.3d at 890); contradicted a different disclosure (*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014)); or were not proximate to language they were meant to clarify, *Stoltz v. Fage Dairy Processing Indus.*, 2015 WL 5579872, at *4, *16 (E.D.N.Y. Sep. 22, 2015). HP's disclosure has no such defects. *See Henry v. Campbell Soup Co.*,

2023 WL 2734778, at *1, *3–5 (E.D.N.Y. Mar. 31, 2023) (distinguishing *Koenig* and *Stoltz*).

*Second*, Plaintiffs contend HP's disclosure was "ripe for misunderstanding based on history" because HP previously stated that non-HP cartridges were of poor quality. Opp. at 5. But even a reasonable consumer who read first the vague alleged prior statements, then HP's on-box disclosure would not interpret the disclosure to mean that cartridges using a non-HP chip may not work because they are of poor quality. Mot. at 17. The disclosure says nothing about cartridge quality, and emphasizes that even cartridges that "work today may not work in the future." Sutherland Decl. ¶ 4 & Ex. A. Plaintiffs' allegations about previous statements also flunk the requirements of Rule 9(b) and are inconsistent with their assertion that they are only challenging disclosures made at the point of sale. Mot. at 16–17. Plaintiffs argue that these earlier statements are not "independent fraud allegations" but rather only provide background (Opp. at 16–17), but that is not how misrepresentation law works. If Plaintiffs wanted to argue that prior statements made a truthful disclosure misleading, they needed to allege it with specificity. Mot. at 16.

*Third*, Plaintiffs contend they have sufficiently alleged HP's disclosure was misleading because it purportedly led to "confusion," "dissatisfaction," and "misunderstandings." Opp. at 11. But absent any coherent explanation of how HP's disclosure would confuse a *reasonable* consumer or any explanation of what part of the disclosure consumers found misleading, these allegations do not turn an implausible misrepresentation claim into a plausible one. The cases Plaintiffs cite are inapposite because the plaintiffs developed clear theories of why the at-issue statements or omissions were misleading—the defendants charged for "free or risk-free trials" (*F.T.C. v. Willms*, 2011 WL 4103542, at *5 (W.D. Wash. Sept. 13, 2011)), and advertised hosiery as "run resistant" when it was not (*Rodriguez v. Hanesbrands Inc.*, 2018 WL 2078116, at *1, *4 (E.D.N.Y. Feb. 20, 2018), *R. & R. adopted*, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018)). Courts presume that the

8

"reasonable consumer" has "a basic level of understanding and willingness to read with care." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)); *see also Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (similar). If buyers of HP printers were confused or dissatisfied, that could only result from their (unreasonable) failure to read or properly interpret HP's clear disclosure.

A reasonable consumer would understand HP's disclosure to mean what it said.

### 3. Plaintiffs Do Not Plausibly Allege That HP Caused Them Harm.

The Court should dismiss Plaintiffs' misrepresentation claims for the independent reason that Plaintiffs do not plausibly allege HP caused them harm. Plaintiffs acknowledge that they "do not plead the magic words that they 'saw' HP's misstatements." Opp. at 17. They nevertheless argue that they have plausibly alleged causation by stating that, "but for HP's failure to disclose its existing intent to limit the printers' functionality, Plaintiffs either (1) would not have purchased the printers, (2) would have paid less for them, or (3) would not have spent money on third-party ink cartridges rendered unusable by HP's conduct." *Id.* But this does not make sense. Putting aside the fact that HP *did* disclose its intent regarding the compatibility of its printers with non-HP cartridges, Plaintiffs did not read the disclosure, as a reasonable consumer would have done. So their behavior would have been the same regardless of what the disclosure said.

Plaintiffs argue that they may plead causation under a "price premium" theory without pleading reliance. Opp. at 18–19. But many of the cases they cite held that the plaintiff pleaded causation *because she pleaded reliance on a misrepresentation*:

- **Minn:** *In re St. Jude Med., Inc.*, 522 F.3d 836 (8th Cir. 2008): where a plaintiff alleges injury caused by a misrepresentation, "as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate these statutes," *id.* at 839;

- **N.Y.:** *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021): plaintiff adequately alleged causation because he alleged "that he purchased the

9

Product *in reliance on* the alleged misrepresentation," *id.* at 575 (emphasis added);

- **N.Y.:** *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511 (S.D.N.Y. 2018): plaintiffs alleged that they "saw the [misrepresentations]" and were "thus deceived into purchasing the products in question," *id.* at 531;

- **Mass.:** *Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110 (Mass. App. Ct. 1988): plaintiff pleaded causation by alleging he relied on promise to pay, *id.* at 112;

- **Ala.:** *Robinson v. Gen. Motors LLC*, 2021 WL 3036353 (D. Del. July 19, 2021): court held that plaintiffs pleaded causation under Alabama law by alleging reliance, without deciding whether Alabama's statute requires reliance, *id.* at *9–10.

And the cases Plaintiffs cite for the proposition that a plaintiff need not establish reliance under Michigan and Missouri law only apply to *absent class members*. *Estate of Pilgrim v. Gen. Motors LLC*, 344 F.R.D. 381, 408 (E.D. Mich. 2023); *In re Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg.*, 2023 WL 9064606, at *17 (W.D. Mo. Dec. 13, 2023). Michigan's statute requires *named plaintiffs* to "plausibly plead that they relied on [alleged] misrepresentations." *Angus v. Flagstar Bank, FSB*, 2025 WL 937760, at *6 (E.D. Mich. Mar. 27, 2025). And a plaintiff cannot use a "price-inflation theory" to show she was injured by a misrepresentation under Missouri law. *In re Folgers Coffee Mktg.*, 159 F.4th 1151, 1157–58 (8th Cir. 2025).

Nor do the remaining state laws allow plaintiffs to establish that a misrepresentation caused them injury in the absence of reliance. Plaintiffs do not dispute that the Illinois Consumer Fraud and Deceptive Business Practices Act requires them to allege that they read HP's disclosure. *See Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 981 (N.D. Ill. 2025); Opp. at 18. Washington's Consumer Protection Act similarly requires a plaintiff to "allege that he read those parts of the label" he claims were misleading. *Maple v. Costco Wholesale Corp.*, 649 Fed. App'x 570, 572 (9th Cir. 2016). Plaintiffs argue that the New Jersey Consumer Fraud Act does not necessarily require reliance, but the New Jersey Supreme Court has "consistently rejected 'price-inflation' theories . . . as a substitute for proof of ascertainable loss or causation." *Dugan v. TGI Fridays,*

10

*Inc.*, 171 A.3d 620, 639 (N.J. 2017). Plaintiffs also argue that Idaho's statute does not strictly require reliance, Opp. at 19, but that statute still requires plaintiffs to allege that they suffered an "ascertainable loss" caused by the allegedly deceptive conduct, *Litster Frost Inj. Lawyers v. Idaho Inj. L. Grp.*, 518 P.3d 1, 11–13 (Idaho 2022)—and Plaintiffs cite no Idaho case for the proposition that the required showing can be made through a "price premium" theory. Finally, the case Plaintiffs cite construing Florida law did permit a "price premium" theory of causation. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016). But subsequent cases have noted that the facts of that case were unique because it involved safety ratings on cars, and have refused to extend its holding to cases that involve run-of-the-mill product labels. *See Broodie v. Target Corp.*, 2024 WL 3341342, at *7 (M.D. Fla. June 6, 2024).

The Court should dismiss Plaintiffs' misrepresentation claims with prejudice.

**B.     The Court Should Dismiss Plaintiffs' Antitrust Claims For Failure To Plead An Unlawful Tie Or Exclusionary Conduct.**

The Court dismissed Plaintiffs' antitrust claims because they did not plausibly allege HP tied printers to cartridges (in violation of Sherman Act § 1), or that it engaged in exclusionary conduct (in violation of § 2). Dkt. 96 at 6–16. Plaintiffs' opposition doubles down on the same theories the Court previously rejected. The Court should again dismiss Plaintiffs' antitrust claims.

**1.     Plaintiffs Have Not Plausibly Alleged Tying Under § 1.**

HP argued that Plaintiffs have not plausibly alleged tying for four reasons: (1) they do not allege HP conditioned the purchase of printers or printer services on an agreement to purchase HP cartridges; (2) they do not plausibly allege a distinct market for printers or printer services in which HP has power; (3) they do not plausibly allege a market for cartridges in which HP has power; and (4) they do not allege antitrust injury. Mot. at 19–24. Plaintiffs respond either by ignoring these arguments or contending they should not be bound by established pleading requirements.

11

*First*, Plaintiffs do not plausibly allege "an agreement by a party to sell one product . . . only on the condition that the buyer also purchases a different (or tied) product." Dkt. 96 at 10 n.8 (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992)). As this Court held, "the condition in a tying arrangement must exist at the time the consumer purchases the tying product or service." *Id.* Plaintiffs concede that they have not pleaded a tying claim under this standard. Opp. at 37–39. Instead, they simply disagree with the standard. *Id.* at 39. According to Plaintiffs, *Kodak* held that the defendant tied copiers to either replacement parts or services even though the tie was not in place when the copiers were sold. *Id.* at 38–39. But the copier market was *not* the tying market in *Kodak*. Instead, Kodak "conditioned the sale of its [*replacement parts*] on an agreement to only purchase *repair services* from Kodak." Dkt. 96 at 8 (citing *Kodak*, 504 U.S. at 458–59) (emphasis added). Plaintiffs cite no case in which a defendant sold the alleged tying and tied products at different times. And they do not respond to HP's argument that they have not pleaded an alternative tie between HP "services" and cartridges. *See* Mot. at 19–22. They have therefore waived that argument. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("a person waives an argument by failing to make it before the district court").

*Second*, Plaintiffs do not allege a relevant tying-product market in which HP has power. Plaintiffs say *Kodak* relieves them of that requirement (Opp. at 39), but in fact *Kodak* confirmed a tie violates § 1 only if "the seller has appreciable economic power in the tying product market," 504 U.S. at 461–62—a rule the Seventh Circuit has reiterated. *Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 207 (7th Cir. 1985). Plaintiffs note "Kodak lacked market power in the primary equipment market," Opp. at 39, but it was again replacement parts— not copiers—that constituted the tying product in *Kodak*, 504 U.S. at 458–59. The other cases Plaintiffs cite for the proposition that a plaintiff need not plead market power in the tying product

12

in fact refute that proposition. *See In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 908–10 (N.D. Ill. 2023) (plaintiff must show "sufficient economic power in the tying market"); *DSM Desotech Inc. v. 3D Sys. Corp.*, 749 F.3d 1332, 1337 (Fed. Cir. 2014) (similar).

Plaintiffs suggest that, even if they have to plead that HP has power in a relevant printer market, they do not need to plead that all printers in that market are reasonably interchangeable because this is an aftermarket case, so the relevant consideration is "whether the buyer can turn elsewhere for the tying product as a practical matter." Opp. at 40. But they cite nothing for the proposition that the presence of switching costs determines the boundaries of the primary market. Switching costs are instead relevant to whether there is an *aftermarket*. *See Kodak*, 504 U.S. at 476. And Plaintiffs offer no response to HP's arguments that they have not pleaded HP has power in a "U.S. market for printers" because their allegation that HP has "about 34.7%" of that market relies on *global* data and counsel's recollection of unidentified sources. *See* Mot. at 22–23.

*Third*, Plaintiffs have not plausibly alleged there is a "substantial danger" HP will acquire market power in a "tied product market" for "Replacement Ink cartridges that will work in the Class Printers" because that is not a cognizable market. Mot. at 23, 26–36; *see infra* Part II.C.

*Fourth*, Plaintiffs do not respond to HP's argument that they cannot recover damages for alleged overcharges under federal antitrust law (Mot. at 23–24), and have accordingly waived their opposition to HP's motion to dismiss on that basis, *see Alioto*, 651 F.3d at 721.

The Court should dismiss Plaintiffs' tying claim under § 1 and state antitrust statutes.

### 2. Plaintiffs Have Not Plausibly Alleged Exclusionary Conduct Under § 2.

The Court should dismiss Plaintiffs' § 2 claim because they do not plead exclusionary conduct. Monopolization requires *both* "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). "The mere possession of monopoly power . . . is not only

13

not unlawful; it is an important element of the free-market system." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko*, 540 U.S. 398, 407 (2004). And allegations of exclusionary conduct must be tied to specific categories of conduct. *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (Gorsuch, J.). Courts dismiss § 2 claims that fail to "allege any of the normal exclusionary practices." *Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006).

Plaintiffs concede they "do not premise their Section 2 claim on a duty-to-deal theory." Opp. at 25. Instead, they insist that *Kodak* only requires them to plead the existence of a relevant aftermarket in which HP has power. *Id.* at 21. They again misread *Kodak*. The Court's discussion of the factors Plaintiffs list came as part of its lengthy examination of whether Kodak had "appreciable economic power in the tying market," *after* it determined there was "sufficient evidence of a tying arrangement"—i.e., of exclusionary conduct. *Kodak*, 504 U.S. at 464–79. Numerous courts have correctly interpreted the factors Plaintiffs list as relevant to whether the plaintiff has "establish[ed] a single-brand aftermarket," not whether the plaintiff has established exclusionary conduct. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023); *see also Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 762–63 (7th Cir. 1996) (similar). As the Sixth Circuit held, even a plaintiff who has alleged "monopoly power in the market for its equipment . . . must satisfy the second part of the § 2 analysis," i.e., allege exclusionary conduct. *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 817–22 (6th Cir. 1997). If Plaintiffs were correct that, where the relevant market happens to be an aftermarket, there is no required showing of exclusionary conduct, that would paradoxically elevate such markets to a favored place in antitrust law, notwithstanding that they are generally "without merit as a matter of law." *Robinson-Bock Distrib. Co., Inc. v. Pioneer/Eclipse Corp.*, 1993 WL 326365, at *4 (7th Cir. Aug. 25, 1993).

The Third Circuit alone has suggested that, if a plaintiff pleads the existence of a relevant

14

aftermarket, she need not plead exclusionary conduct. *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 407 (3d Cir. 2016). But this conclusion rests on a misreading of *Kodak*. The court based its conclusion on its belief that *Kodak* "merely incorporated its prior analysis of market separation" when holding that the plaintiffs had presented sufficient evidence of exclusionary conduct to withstand summary judgment. *Avaya*, 838 F.3d at 407. In support, *Avaya* quoted the following passage from *Kodak*: "As recounted at length above, respondents have presented evidence that Kodak took exclusionary action to maintain its parts monopoly and used its control over *parts* to strengthen its monopoly share of the Kodak *service* market." *Id.* (quoting *Kodak*, 504 U.S. at 483) (emphasis added). But this clearly refers to the Court's *tying analysis*—not its aftermarket discussion, which solely concerned whether the purported markets for parts and services were cognizable at all. *See Kodak*, 504 U.S. at 464–79. As this Court noted, tying was the § 2 exclusionary conduct the Court analyzed in *Kodak*; it "concluded that there was a genuine issue of fact as to whether Kodak engaged in an illegal tying arrangement under Sections 1 *and 2* of the Sherman Act." Dkt. 96 at 8 (emphasis added). The Third Circuit's interpretation of *Kodak* is incorrect, non-binding, and contrary to the Seventh Circuit's interpretation of the *Kodak* factors. *See Digital Equip. Corp.*, 73 F.3d at 762–63. This Court should not follow it, and should dismiss Plaintiffs' monopolization claim.

## C. Plaintiffs Have Not Plausibly Alleged A Relevant Aftermarket.

The Court should also dismiss Plaintiffs' antitrust claims because they do not plausibly allege a relevant single-brand aftermarket. Plaintiffs purport to plead a *Kodak*-style single-brand aftermarket for "replacement cartridges compatible with the Class Printers" that is premised on alleged post-purchase "lock-in." Opp. at 33. This requires them to allege that (1) the alleged aftermarket restriction is not generally known, (2) high information costs prevent accurate life-cycle pricing, (3) there are significant switching costs, and (4) the purported aftermarket is

15

consistent with general market-definition principles. *See Epic*, 67 F.4th at 977; Mot. at 26–36. Plaintiffs have not plausibly alleged any of these factors.

### 1. Plaintiffs Have Not Plausibly Alleged That HP's Practices And Policies Regarding Cartridges With Non-HP Chips Were "Not Generally Known."

Plaintiffs do not dispute that the printers they purchased came with a disclosure stating that they were "[o]nly intended to be used with cartridges using an HP original chip," and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future." Sutherland Decl. ¶ 4 & Ex. A; *see* Opp. at 27–28. Plaintiffs nonetheless contend this disclosure did not put reasonable consumers on notice of HP's policies regarding the use of cartridges with non-HP chips. Opp. at 27. But HP's disclosure was entirely accurate, *see supra* Part II.A.2, and gave consumers the information they needed to "factor[] the costs" of the restriction on cartridges with non-HP chips into their purchasing decision, *In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 151 F.4th 922, 936 (7th Cir. 2025). "[A] reasonable consumer could have anticipated that any cartridges with non-HP chips" might "become incompatible with the printer in the future." *Parziale II*, 2020 WL 5798274, at *6.

Plaintiffs contend some consumers ignored and/or misunderstood HP's disclosures, but the standard for whether a defendant's policy is "generally known" is an "objective one." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Applications* ¶ 1740d3 (citing *Kodak*, 504 U.S. at 451). There is an "economic presumption that consumers make a knowing choice to restrict their aftermarket options when they decide in the initial (competitive) market to enter a contract," regardless of actual consumer behavior. *Epic*, 67 F.4th at 978 (cleaned up). The question is whether consumers "*could have* factored the costs of any alleged [restriction] into [their] purchasing decision[s]," *Harley-Davidson*, 151 F.4th at 936 (emphasis added)—not whether they actually did so. So Plaintiffs are incorrect that determining

16

whether HP's policy was "generally known" is "fact-bound," and their contention that "25% of all printer customers and 30% of inkjet customers purchased non-HP replacement ink prior to the firmware updates" and that this "market would not have existed if consumers 'generally knew' HP would later block third-party cartridges" is irrelevant. Opp. at 27.[2]

> ### 2. Plaintiffs Have Not Plausibly Alleged That HP's Actions Prevented Them From Calculating The Cost Of Owning An HP Printer.

Plaintiffs also have not plausibly alleged that HP's "own actions" served to "increase[] . . . customers' information costs," as they must to allege that there are "significant" information costs that prevent purchasers from calculating the life-cycle costs of an HP printer and cartridges. *PSI*, 104 F.3d at 819–20. To plead that the defendant prevented her from calculating life-cycle costs, a plaintiff must allege that the defendant "publicly and loudly took" a policy, then reversed the policy *after* the plaintiff purchased her equipment. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 963 (N.D. Ill. 2018). But Plaintiffs do not dispute that HP consistently disclosed that cartridges with non-HP chips may not work in its printers, and that it *never* had a policy permitting the use of such cartridges. *See* Mot. at 31–33. In fact, they allege that HP has sold its printers with the dynamic security disclosure since at least 2016, FAC ¶ 67, and they acknowledge that the disclosure appeared on all of Plaintiffs' printers when they purchased them, *see* Opp. at 4. Plaintiffs argue that HP "marketed its printers as allowing consumer choice" (Opp. at 26), but that's not what they allege. Instead, they allege that HP engaged in a "years-long campaign" to warn consumers that cartridges with non-HP chips were inferior and that they should not use them. FAC ¶¶ 34–39. A campaign to dissuade consumers from attempting to use cartridges with non-

---

[2] This assertion also misstates their own allegation, which is that the 25–30% figure includes customers who "did not purchase HP's replacement ink or chose to purchase cheaper non-HP ink," FAC ¶ 109—i.e., not just customers who use cartridges with non-HP chips, but also customers who bought a printer and did not replace the installed ink cartridge after it ran out, or bought refilled or remanufactured cartridges with HP chips.

HP chips does not amount to a "public[] and loud[]" policy of allowing such cartridges to connect with HP printers. *Dealer Mgmt. Sys.*, 313 F. Supp. 3d at 963. And Plaintiffs certainly do not allege that HP changed any policy *after* they purchased their printers.

### 3. Plaintiffs Have Not Plausibly Alleged Significant Switching Costs.

To plausibly allege significant switching costs, Plaintiffs must allege both that (1) "a substantial number of preexisting customers" are "locked-in" to HP printers, and (2) the costs to switch to a different printer brand are prohibitively high. *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 21 (1st Cir. 1999); *Epic*, 67 F.4th at 977. This Court previously held that Plaintiffs did not meet the first requirement because they did not say "what proportion of HP printer models in the market were affected by the firmware update," or otherwise allege that HP could exercise "control over all its printers." Dkt. 96 at 15–16. Plaintiffs offer no response to this holding. And they misunderstand the second requirement, which focuses not on general affordability but rather on whether, "[a]ll other things being equal, an economically rational user will switch to an alternate printer in response to changes in the cost of supplies if the savings from the alternate printer's cheaper supplies outweigh the additional cost of a new equipment purchase." *Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535, 547 (S.D.N.Y. 2009). Plaintiffs plead no facts about the cost of buying an alternate printer and supplies in comparison to the cost of continuing to use HP supplies. They have not alleged substantial switching costs.

### 4. Plaintiffs Have Not Plausibly Alleged That Cartridges For Dynamic-Security-Enabled HP Printers Are Reasonably Interchangeable.

Plaintiffs also have not plausibly alleged that "general market-definition principles regarding cross-elasticity of demand do not undermine the[ir] proposed single-brand" aftermarket. *Epic*, 67 F.4th at 977. Plaintiffs do not contest that their alleged aftermarket for "Replacement Ink cartridges that will work in" over 150 printers lumps together an array of disparate HP printer

18

models—consumer and commercial, print-only and multifunction—with no unifying economic characteristics beyond the allegation that they use "dynamic security." FAC ¶¶ 2, 30, 120. Nor do they contest that "not all ink works with all printers." Opp. at 31. Instead, they propose a new, unalleged theory that there are "submarkets" of cartridges "designed to work with [a] specific HP printer family." Opp. at 36–37. But a submarket presumes a properly defined general market—it is merely "part of the general market of substitutable products," and "the general market must include all economic substitutes." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). So Plaintiffs' inability to define a general market remains fatal to their claims. In addition, they provide no explanation of what the boundaries of these alleged submarkets may be, or why they constitute relevant antitrust markets. Plaintiffs' lead case confirms that "[e]ven when a submarket is an *Eastman Kodak* submarket . . . it must bear the 'practical indicia' of an independent economic entity in order to qualify as a cognizable submarket under *Brown Shoe*" at the motion-to-dismiss stage. *Newcal*, 513 F.3d at 1051. If a plaintiff intends to plead submarkets, she must "allege facts indicating that the products in the submarket are economically distinct from the more general market of substitutable products." *See MLW Media LLC v. World Wrestling Ent., Inc.*, 655 F. Supp. 3d 946, 952 n.2 (N.D. Cal. 2023) (granting motion to dismiss).

Plaintiffs contend that they do not need to plead any relevant submarket because that inquiry involves "factual questions." Opp. at 35–37. But allowing Plaintiffs to proceed on an "incomplete or improperly circumscribed" aftermarket now—promising to sort it out later—would "effectively write the market requirement out of antitrust law." *See Am. Needle, Inc. v. New Orleans Louisiana Saints*, 385 F. Supp. 2d 687, 692–93 (N.D. Ill. 2005). Indeed, in two of the cases Plaintiffs cite, the court *dismissed* § 2 claims where the plaintiff's proposed market improperly excluded interchangeable substitutes. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121

19

(9th Cir. 2018); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill. 1997).

Plaintiffs have failed to plead a relevant aftermarket.

**D.     The Court Should Dismiss Plaintiffs' State Antitrust Claims For Additional Reasons.**

The Court should dismiss Plaintiffs' state-law antitrust claims because Plaintiffs concede that those claims rise and fall with their Sherman Act claims. Dkt. 96 at 26. Even if the Court does not dismiss Plaintiffs' Sherman Act claims, it should dismiss their claims under the antitrust laws of Alabama, California, Colorado, Hawaii, Kansas, Mississippi, Nevada, New York, North Carolina, Tennessee, Wisconsin, and Utah, because Plaintiffs do not respond to HP's arguments that those claims should be dismissed. *See* Mot. at 37–38.

**E.     The Court Should Dismiss Plaintiffs' Consumer-Protection Claims For Additional Reasons.**

Plaintiffs do not dispute that the Court must dismiss Plaintiffs' claims for unfair or unconscionable conduct under various state laws if it dismisses their antitrust and misrepresentation claims. *See* Mot. at 38–39. The Court should also dismiss Plaintiffs' claims under Alabama and Massachusetts law because Plaintiffs did not provide HP with pre-suit notice. *Id.* at 39–40. Plaintiffs contend that any pre-suit notice requirement is preempted by Rule 23 (Opp. at 20), but they are confusing pre-suit notice requirements with class-action pre-filing requirements. Courts frequently dismiss claims under laws that require notice of substantive claims because these notice provisions do not conflict with Rule 23. *E.g.*, *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 412–17 (D.N.J. 2018); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 375 (D.R.I. 2019); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *14–15 (D. Mass. July 20, 2016); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 388–90 (D.N.J. 2018).

## III.     CONCLUSION

The Court should dismiss the complaint in its entirety with prejudice.

Dated:   March 27, 2026

Respectfully submitted,

/s/ Samuel Liversidge

Samuel Liversidge, *pro hac vice*
Ilissa Samplin, *pro hac vice*
GIBSON DUNN & CRUTCHER LLP
333 S. Grand Ave.
Los Angeles, CA 90071-3197
Tel.: (213) 229-7000
sliversidge@gibsondunn.com
isamplin@gibsondunn.com

Rachel S. Brass, *pro hac vice*
Sean F. Howell, *pro hac vice*
Logan R. Freeborn, *pro hac vice*
GIBSON DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8306
rbrass@gibsondunn.com
showell@gibsondunn.com
lfreeborn@gibsondunn.com

Vanessa G. Jacobsen
Brian Y. Chang
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
Tel.: (312) 660-7600
vjacobsen@eimerstahl.com
bchang@eimerstahl.com

*Counsel for Defendant HP Inc.*

21